UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

GERVIL ST. LOUIS,

               Plaintiff,

    vs.

DOUGLAS PERLITZ, et al.

         Defendants

Civ. A. No. 3:13-cv-01132 (RNC)

**MEMORANDUM IN SUPPORT OF FATHER CARRIER'S
MOTION TO DISMISS COUNTS 2 AND 7 AS TO ALL CASES
AND TO DISMISS COUNT 5 AS TO SOME CASES**

Timothy P. O'Neill (phv04968)
Theodore J. Folkman (phv04969)
Amanda Moger Rettig (phv04967)
MURPHY & KING, P.C.
One Beacon St.
Boston, Mass. 02108
(617) 423-0400
tpo@murphyking.com
tjf@murphyking.com
amr@murphyking.com

Gene S. Winter (ct05137)
Benjamin C. White (ct27211)
ST. ONGE STEWARD JOHNSTON & REENS LLC
986 Bedford St.
Stamford, Conn. 06905
(203) 324-6155
gwinter@ssjr.com
bwhite@ssjr.com

## TABLE OF CONTENTS

Table of Authorities ......................................................................................................... iii

Preliminary Statement ....................................................................................................... 1

Allegations ......................................................................................................................... 3

   A.   Allegations About Father Carrier ............................................................................ 3

   B.   Allegations About The Abuse of Each Plaintiff. ................................................... 7

Argument ............................................................................................................................ 8

   A.   Count Two Must Be Dismissed, Because There Is No Allegation That Father Carrier
Acted "For The Purpose Of Commercial Advantage Or Private Financial Gain" Or That He
Arranged, Induced, Procured, or Facilitated Perlitz's Travel To Haiti ...................................... 8

      1.   The Insufficiency of the Allegation of a Financial Purpose ............................................ 9

      2.   The Insufficiency of the Travel Allegations. ............................................................... 13

      3.   The Purpose of the Statute ....................................................................................... 14

   B.   Count Seven Must Be Dismissed, Because The Complaint Fails To Allege That Father
Carrier Benefitted Financially From Participation In A Venture. ........................................... 16

      1.   Under Elementary Corporate Law, Money Received By The Haiti Fund Is Not
Attributed To Its Officers Or Directors Personally .................................................... 16

      2.   There Is No Allegation That Father Carrier Received Any Money. ............................ 17

   C.   Count Five Must Be Dismissed in the Alibert, Audate, Bernadin, Emile, Faustin, Fils-
Aime, Guillaume, Dorat Jean, Frisnel Jean, Ilguens Jean, Jerome, Dmitry Joseph, Jasmin
Joseph, Gesner Lecenat, Odilbert, Felix Pierre, Robens Pierre, and St. Louis Actions, Because
The Complaints Fail To Allege A Fiduciary Relationship Between Father Carrier And Any
Plaintiffs Who Were Not PPT Students ............................................................................ 18

Conclusion .......................................................................................................................... 19

## TABLE OF AUTHORITIES

### Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................... 9

*Donahoe v. Arpaio*,
  869 F. Supp. 2d 1020 (D. Ariz. 2012) ......................................... 10, 11

*Ebron v. Lantz*,
  2006 WL 18827 (D. Conn. Jan. 4, 2006) .................................. 18

*Fink v. Golenbock*,
  238 Conn. 183 (1996) ................................................................. 17

*Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*,
  255 Conn. 20 (2000) .................................................................. 19

*J&J Sports Productions, Inc. v. Mayreal II, LLC*,
  849 F. Supp. 2d 586 (D. Md. 2012) ...................................... 12, 18

*Jean-Charles v. Perlitz*,
  937 F. Supp. 2d 276 (D. Conn. 2013) ..................... 1, 16, 18, 19

*Leftridge v. Support Enforcement Servs.*,
  2013 WL 1947174 (D. Conn. May 3, 2013) ............................ 17

*Stapley v. Pestalozzi*,
  733 F.3d 804 (9th Cir. 2013) ..................................................... 10

*Tuckman v. Tuckman*,
  308 Conn. 194 (2013) ................................................................. 17

*United States v. Casamento*,
  887 F.2d 1141 (2d Cir. 1989) ................................................... 14

*United States v. Cefalu*,
  85 F.3d 964 (2d Cir. 1996) ....................................................... 14

*United States v. Zambrano*,
  776 F.2d 1091 (2d Cir. 1985) ................................................... 14

*Vogel v. Town of New Milford*,
  161 Conn. 490 (1971) ................................................................. 17

*Zaist v. Olson*,
  154 Conn. 563 (1967) ................................................................. 17

### Statutes

18 U.S.C. § 2 ................................................................................. 14
18 U.S.C. § 4 ................................................................................. 14
18 U.S.C. § 371 ............................................................................. 14
18 U.S.C. § 1595(a) .................................................................. 2, 16
18 U.S.C. § 1961(1) ..................................................................... 10
18 U.S.C. § 2255(a) ............................................................... 2, 8, 13
18 U.S.C. § 2423(b) ....................................................................... 8
18 U.S.C. § 2423(d) ............................................................... passim

iii

Cable Communications Policy Act of 1984 §633,
   47 U.S.C. § 553.................................................................................................. 12
PROTECT Act, Pub. L. No. 108-21, § 105,
   117 Stat. 650, 653-54 (2003) ............................................................................ 15
Ariz. Rev. Stat. § 13-2301(D)(4) ............................................................................ 10

Bills and Legislative History

Child Abduction Prevention Act, H.R. 1104, 108th Cong. § 105(a)
   (as introduced, Mar. 5, 2003)............................................................................ 15
H.R. Rep. No. 108-47 (2003)................................................................................... 15
H.R. Rep. No. 108-66 (2003),
   *reprinted in* 2003 U.S.C.C.A.N. 683 (Conf. Rep.) ......................................... 15
S. 151, 108th Cong. (2003)...................................................................................... 15
149 Cong. Rec. H2443 (daily ed. Mar. 27, 2003)................................................... 15

Other Authorities

*Black's Law Dict.* (7th ed. 1999) ............................................................................ 14

<u>PRELIMINARY STATEMENT</u>

These thirty-four cases are the second batch of cases brought by young Haitian men against their alleged sexual abuser, Douglas Perlitz ("Perlitz"), and people and institutions the plaintiffs seek to hold liable for the harm they say they suffered at Perlitz's hands. In the first batch of cases ("the *Jean-Charles* case"), the claims against the Rev. Paul E. Carrier, S.J. ("Father Carrier") were for negligent supervision, breach of fiduciary duty, *respondeat superior,* aiding and abetting Perlitz's supposed violation of a criminal statute relating to sex tourism, aiding and abetting Perlitz's supposed violation of customary international law, and direct violation of a statute on participation in an illegal venture relating to human trafficking. After lengthy motion practice, this Court dismissed the claims for *respondeat superior* liability and the aiding and abetting claims, leaving the common law claims for negligent supervision and breach of fiduciary duty and the claim for violation of the statute on participation in a trafficking venture. *See Jean-Charles v. Perlitz,* 937 F. Supp. 2d 276 (D. Conn. 2013). The *Jean-Charles* case then settled and was voluntarily dismissed with prejudice.

In these new cases ("the *St. Louis* case"), most of the basic allegations of fact are the same, though the *St. Louis* plaintiffs, with the benefit of extensive document discovery (the defendants collectively produced approximately 113,000 pages of documents to the *Jean-Charles* plaintiffs, whose lawyers are the same lawyers representing the *St. Louis* plaintiffs), have amplified their allegations in various respects. But the *St. Louis* complaints differ from the *Jean-Charles* complaints in two key respects. First, the *St. Louis* plaintiffs, in light of the Court's ruling on the motion to dismiss, have modified the legal theories behind their claim for relief. They have left out the claims that the Court previously dismissed—the claims for aiding and abetting Perlitz under federal and international law; the claim for *respondeat superior* liability—

and added a new claim of direct violation of the federal statutes, 18 U.S.C. §§ 2255(a) and 2423(d), that had previously formed the basis of their aiding and abetting claim. Second, seventeen of the *St. Louis* plaintiffs—Albert, Baptiste, Benjamin, Bernard, Bien-Aimé, Calixte, Saint Cirin, Clervil, Derice, Dorcine, Fleuridor, Jean-Pierre, Jerome, Jheempson Brismac Joseph, Geffrard Lecenat, Emmanuel Pierre, and Prévil—plausibly allege that they attended PPT. But the others do not. Two of the others—Audate and Jasmin Joseph, seem to allege that they attended *some* school, but there is no plausible allegation that they attended PPT. The others—Alibert, Bernadin, Emile, Faustin, Fils-Aime, Guillaume, Dorat Jean, Frisnel Jean, Ilguens Jean, Dmitry Joseph, Gesner Lecenat, Odilbert, Felix Pierre, Robens Pierre, and St. Louis—do not even seem to allege that they attended any school.

Counts 2 and 7 of in each of the *St. Louis* actions must be dismissed as to all plaintiffs. Each of these counts against Father Carrier fails to state a claim on which relief can be granted for the following reasons:

- Count Two alleges that Father Carrier is liable under 18 U.S.C. § 2255(a) because he violated 18 U.S.C. § 2423(d). But the claim requires an allegation that Father Carrier's *purpose* was financial gain, and the *St. Louis* plaintiffs do not and cannot make sufficient allegations on this essential point.

- Count Seven alleges that Father Carrier is liable under 18 U.S.C. § 1595(a) because he benefitted financially from his participation in PPT, which the plaintiffs characterize as an illegal venture under the trafficking statutes. This claim requires an allegation that Father Carrier *actually did* receive a financial benefit. Again, the *St. Louis* plaintiffs do not and cannot make sufficient allegations on this essential point.

- Count Five of the Complaints, which alleges breach of fiduciary duty, must also be dismissed as to those plaintiffs who do not allege that they were PPT students. The entire rationale for the fiduciary duty claim against Father Carrier rests on his alleged role at PPT. No allegations in any of the complaints tie Father Carrier to anywhere in Haiti *other* than PPT. Plaintiffs who do not even allege that they were PPT students cannot allege facts from which the Court could plausibly infer a fiduciary relationship between themselves and Father Carrier.

We are mindful of the Court's admonition about motions to dismiss at the pleadings stage. We have not repeated arguments made before, and we recognize that even if this motion is entirely successful the litigation will go on. But there is an important difference between being sued for negligence and being sued for what amount to criminal violations of federal child sex tourism and trafficking statutes or for violations of fiduciary responsibilities by young men who—as far as the complaints disclose—were not even students at the school that is at the center of this case. We do not seek any delay in these proceedings or even dismissal of any one of the actions in its entirety. Instead, we seek simply to strip away some of the sensational but baseless legal theories the plaintiffs have deployed and to reveal their real substantive allegation: that Father Carrier was negligent.

## ALLEGATIONS

A.    <u>Allegations About Father Carrier</u>

Father Carrier was a religious priest of the Society of Jesus of New England, the University Chaplain and Director of Campus Ministry and Community Service at Fairfield University, an officer and director of the Haiti Fund, Inc., and a magistral chaplain of the Order of Malta. (Compl. ¶ 19). Over a decade—from 1997 to 2006—Fairfield University paid Father

Carrier approximately $120,000, some or all of which "was spent to support Father Carrier's activities with PPT." (Compl. ¶ 40).

In approximately 1997, Perlitz, with the assistance of Father Carrier and other defendants, obtained approval, support, and funding from the Order of Malta to open a boy's school in Cap-Haitien, Haiti. (Compl. ¶ 29).[1] PPT first established an intake center, the 13th Street Intake Program. (Compl. ¶ 30). The school served boys as young as six, and many of the boys were street children. (Id.). PPT provided meals, access to running water, education, and sports activities. (Id) Perlitz employed Americans and Haitians to work at PPT. (Id.)

In approximately 1999, Father Carrier and other defendants assisted Perlitz in obtaining additional funding to expand PPT. (Compl. ¶ 31). This led to the construction of a residential facility known as the Village. (Id.). According to the complaint, Father Carrier knew that the students at the school had no home, money, or access to education or the necessities of life except at PPT. (Compl. ¶ 75). And according to the complaint, Father Carrier supervised American staff members who resided in the staff residence where Perlitz allegedly abused boys and who saw boys in circumstances that, the complaint implies, should have led them to understand that the boys were sleeping at the residence. (Compl. ¶ 82).

The complaint alleges that PPT "was set up without even minimal safeguards for the children there," and that Perlitz lacked experience running such a program. (Compl. ¶ 58). Further, the complaint alleges that none of PPT's founders, benefactors, or funders provided rules for the protection of children or structure for overseeing or evaluating PPT. (Compl. ¶ 58). Father Carrier knew that Perlitz would have "access to, authority over, and control over the boys

---

[1] The Complaint alleges, outrageously, that Perlitz and Father Carrier had a sexual relationship in the late 1980s, when Perlitz was a Fairfield freshman. (Compl. ¶ 26). We unsuccessfully moved to strike this false allegation in the *Jean-Charles* case, and we do not seek to revive our motion now.

at PPT," and that "because of Perlitz's position," the boys "would believe that they could trust Perlitz" and "would have confidence that the conduct Perlitz engaged in was to further their best interests." (Compl. ¶¶ 61-63).

The complaint alleges that Father Carrier and another defendant, Hope Carter, "became aware that Perlitz was engaged in conduct that endangered" the boys but that they "assisted and facilitated Perlitz in Perlitz's efforts to sexually abuse" the boys "and in Perlitz's efforts to conceal his sexual abuse." (Compl. ¶ 64). The alleged victims told some adults about the abuse (in particular, a psychologist and a tutor), and other staff members were aware of the abuse. (Compl. ¶ 84). But there is no allegation that any alleged victim, or any of the staff members who supposedly knew of the abuse, ever told Father Carrier of the abuse. Indeed, the complaint goes out of its way to allege that Father Carrier *failed* to speak to the boys "in a setting where the boys could feel safe about reporting what they were experiencing." (Compl. ¶ 86). Even a staff member who supposedly confronted Perlitz himself about the abuse (Compl. ¶ 87), or a nun who supposedly "was aware of problems at PPT" (Compl. ¶ 88), apparently never mentioned it to Father Carrier, at least as far as the complaint alleges.

The complaint alleges that Father Carrier "ignored warning signs." (Compl. ¶ 89). In particular, it alleges that he was present in the staff residence when boys were there and that he saw boys in Perlitz's bedroom. (The complaint fails to mention that Perlitz's bedroom doubled as the school's business office during the day). It alleges—falsely, but the falseness of the allegation is not material in the present posture of the case—that Father Carrier saw Perlitz show a student a pornographic video in Perlitz's bedroom. It alleges that Father Carrier knew that a boy was living at the residence. It alleges that Father Carrier was present when Perlitz "arranged a rendezvous" at the residence with one of the boys in the evening. It alleges that Father Carrier

was present when Perlitz hugged a student from behind. It alleges that Father Carrier was present in the house during an act of abuse, though it does not allege that Father Carrier heard or knew of that act of abuse. (Id.). And it alleges that Father Carrier knew that the staff residence was several miles from the children's residences and that there was no transportation at night to take them from the staff residence to their own residences. (Id.). Elsewhere, the complaint alleges that Father Carrier knew that an adult volunteer had an adult Haitian girlfriend who occasionally stayed the night at the staff residence. (Compl. ¶ 93).

Father Carrier was an officer and director of the Haiti Fund (Compl. ¶ 32), which was formed as a vehicle to raise money for, and to operate, PPT (Compl. ¶ 29). He traveled frequently to Haiti to check up on and supervise activities at PPT on behalf of Fairfield University, the New England Jesuit Order, and the Order of Malta. (Compl. ¶ 34). He participated in fundraisers and otherwise raised funds in the United States for the benefit of PPT. (Compl. ¶¶ 43, 54). He signed a contract for the purchase of building materials for PPT in 2005. (Compl. ¶ 44). He wrote periodic letters to "Malta Friends of PPT" soliciting gifts to support PPT. (Compl. ¶ 48, *see also* ¶ 49). The complaint alleges that Carrier and the other defendants continued to raise money for PPT despite the alleged warnings. (Compl. ¶ 92).

The complaint alleges that as an officer and director of the Haiti Fund and as Director of Campus Ministry and Community Service at Fairfield, Father Carrier was "obliged to supervise and monitor the program at PPT" and that he knew that Perlitz had used funds from the Haiti Fund and Fairfield to finance his (Perlitz's) travel to Haiti. (Compl. ¶ 55). The complaint alleges that Father Carrier, the Haiti Fund, and Fairfield University "facilitated Perlitz's travel to Haiti by providing funds for such travel and/or scheduling Perlitz's trips to Haiti." (Compl. ¶ 53).

Once the accusations against Perlitz became known, the complaint alleges that Father Carrier interfered with an investigation of Perlitz by either manipulating the Haiti Fund's investigation or allowing Perlitz to manipulate it—the complaint does not specify which—by preventing other members of the Haiti Fund board of directors from questioning unnamed independent witnesses. (Compl. ¶ 97). During a second investigation by the Haiti Fund, Father Carrier wrote to Haiti Fund donors stating his opinion that Perlitz was innocent of the charges against him. (Id.).

B.      Allegations About The Abuse of Each Plaintiff.

The *St. Louis* complaints fall into three categories. The first category, of which the *Albert* case (Civ. A. No. 3:13-CV-01640) is representative, allege that Perlitz sexually abused the plaintiff (Albert Compl. ¶ 99), that Perlitz coerced the plaintiff into performing sexual acts through implicit threats (Albert Compl. ¶ 100), and that among the implicit threats was the threat that if the plaintiff did not accede to Perlitz's wishes, he would not be able to "attend PPT, live at PPT, eat meals provided by PPT, and receive an education at PPT." (Albert Compl. ¶ 101). The complaints never squarely allege that the plaintiffs were students at PPT, but the connection of this group of plaintiffs with PPT is fair to infer from the allegations about the nature of the threats.

The second category, of which the *Audate* case (Civ. A. No. 3:13-CV-01637) is representative, allege that Perlitz sexually abused the plaintiff (Audate Compl. ¶ 99), that Perlitz coerced the plaintiff into performing sexual acts through implicit threats (Audate Compl. ¶ 100), and that Perlitz offered to trade sexual favors for "the opportunity to continue at school"—with no mention of PPT. (Audate Compl. ¶ 101). These complaints never allege that the plaintiffs were students at PPT, and there is no basis for an inference that they were PPT students. Indeed, the allegation that these plaintiffs attended PPT is conspicuous by its absence.

7

The third category, of which the *Alibert* case (Civ. A. No. 3:13-CV-01627) is representative, allege that Perlitz sexually abused the plaintiff (Alibert Compl. ¶ 99), that Perlitz coerced the plaintiff into performing sexual acts through implicit threats (Alibert Compl. ¶ 100), and that Perlitz offered to trade sexual favors for "things of value … including, among other things, money." (Alibert Compl. ¶ 101). Not only do these complaints—which include the majority of the *St. Louis* actions—fail to allege that the plaintiffs were students at PPT. They fail to allege that they were students, period.

<u>ARGUMENT</u>

A.   <u>Count Two Must Be Dismissed, Because There Is No Allegation That Father Carrier Acted "For The Purpose Of Commercial Advantage Or Private Financial Gain" Or That He Arranged, Induced, Procured, or Facilitated Perlitz's Travel To Haiti.</u>

Count Two alleges a violation of 18 U.S.C. § 2255(a), which imposes civil liability for violations of several criminal statutes, including 18 U.S.C. § 2423. The *St. Louis* plaintiffs have abandoned the claim of the *Jean-Charles* plaintiffs that Father Carrier is liable under § 2255(a) because he aided and abetted Perlitz's violations of 18 U.S.C. § 2423(b), a statute forbidding travel for the purpose of engaging in illicit sexual conduct. Instead, they now say that Father Carrier himself personally violated 18 U.S.C. § 2423(d), which provides:

> Whoever, for the purpose of commercial advantage or private financial gain, arranges, induces, procures, or facilitates the travel of a person knowing that such a person is traveling in interstate commerce or foreign commerce for the purpose of engaging in illicit sexual conduct shall be fined under this title, imprisoned not more than 30 years, or both.

They seek to ground their claim under § 2255(a) on the allegation that Father Carrier "knowingly benefitted financially from PPT in that Father Carrier was an officer of the Haiti Fund, which received large sums of money, apparently with substantial sums not accounted for." (Compl. ¶ 114). We are unaware of any reported case under § 2255(a) in which a plaintiff has made this argument.

1.    <u>The Insufficiency of the Allegation of a Financial Purpose</u>

Section 2423(d) requires proof that the defendant acted "for the purpose of commercial advantage or private financial gain." 18 U.S.C. § 2423(d). The plaintiffs have failed to make any allegation—other than a purely conclusory allegation—that Father Carrier's purpose was financial gain. Thus the plaintiffs' new theory is fatally flawed.

They allege that Father Carrier, "in order to promote PPT and receive the financial benefits from [his] involvement with PPT," facilitated Perlitz's travel to Haiti. (Compl. ¶ 116). The question is whether there are "sufficient plausible allegations to permit … an inference" that Father Carrier acted with the *purpose* of financial gain. That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must do more than create a "sheer possibility that a defendant has acted unlawfully." *Id.* While the Court must accept as true all allegations of *fact* in the complaint for purposes of a motion to dismiss, it need not accept as true the legal conclusions stated in the complaint. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Rather, the plaintiff must show that his allegations "possess enough heft" to establish an entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

To our knowledge no cases decided under the statute address the sufficiency of the allegations of financial purpose to survive a motion to dismiss. But cases decided under statutes that use either the same "purpose of commercial advantage or private financial gain" language or else that use highly similar language show that the plaintiffs' allegation is insufficient.

9

The RICO Act, for example, defines violations of specified federal statutes as "racketeering activity" if committed "for the purpose of financial gain." *See* 18 U.S.C. § 1961(1). State anti-racketeering statutes such as the Arizona Racketeering Statute, Ariz. Rev. Stat. § 13-2301(D)(4), similarly are limited in scope to activities "committed for financial gain." In *Donahoe v. Arpaio,* 869 F. Supp. 2d 1020 (D. Ariz. 2012), *aff'd sub nom. Stapley v. Pestalozzi,* 733 F.3d 804 (9th Cir. 2013), Arizona judge Gary Donhoe, Susan Schuerman (the assistant to a member of the Maricopa County Board of Supervisors), and Sandra Wilson (the deputy county manager of Maricopa County) sued sheriff Joseph Arpaio, Andrew Thomas (the county attorney), and Lisa Aubuchon (the deputy county attorney) for violations of the Arizona RICO statute. The claim was that they had tried to induce Schuerman to testify falsely against Donald Stapley, a member of the county board of supervisors, by threatening to criminally investigate and prosecute her if she did not cooperate. *Donahoe,* 869 F. Supp. 2d at 1044. The plaintiffs also claimed that the sheriff's office obstructed a Department of Justice investigation into the matter by threatening a deputy with physical harm if he cooperated with the investigation. Arpaio and the other defendants moved to dismiss on the grounds that they had not acted for the purpose of financial gain. *See id.* at 1065.

The plaintiffs' argument was that Arpaio and Thomas had formed the Maricopa County Anti-Corruption Enforcement Unit, or MACE, to target their political opponents, and that MACE was operated for financial gain. They claimed that MACE was used to permit the sheriff to raise money for the Sheriff's Command Association Fund, which financed his election campaigns; to permit him to raise money directly from private donors for political purposes; and to force the Board of Supervisors to increase his department's funding, "which was the critical factor" necessary for him to exercise political power. *See id.* at 1066.

Plainly the main facts of *Donahoe* are dissimilar from the main facts in *St. Louis,* but the allegations about the defendants' supposed commercial purpose are strikingly similar. In both cases, instead of alleging that defendants acted for their own personal gain, the plaintiffs alleged that the defendants acted for the financial gain of an entity they controlled or partly controlled. In both cases, the entity was a not-for-profit entity (a governmental entity in *Donahoe,* a charity in *St. Louis*) rather than a business. In both cases, the defendants used the entity to raise funds not for themselves, but for other organizations (the Command Association Fund in *Donahoe,* PPT in *St. Louis*)—though, notably, in *Donahoe* the sheriff also used MACE to raise money, apparently directly, from private donors for his political campaigns. If anything, the allegations about the supposed financial benefits to the sheriff were much clearer than the allegations about the supposed financial benefit to Father Carrier. The judge, who applied the *Iqbal* standard, *see Donahoe,* 869 F. Supp. 2d at 1051-52, dismissed the claim on the grounds that the allegations of the defendant's commercial purpose were insufficient:

> That there was an indirect and attenuated financial benefit of campaign fundraising from the actions taken by the MACE unit does not make the operation one that was committed for financial gain. Rather, as evidenced by the complaints themselves, Plaintiffs allege the MACE unit operated for the purpose of investigating and prosecution purported political enemies of Arpaio and Thomas, such as Plaintiffs. To allow such activity to constitute racketeering would stretch the statute beyond its plain meaning and in a way that is contrary to the rule of lenity in interpreting criminal statutes.

*Id.* at 1066-67 (footnote omitted).[2] The same reasoning applies here. It is plain on the face of the Complaint that the Haiti Fund's purpose was to raise money for PPT. It is simply implausible to say that the purpose of the Haiti Fund, let alone Father Carrier's purpose in involving himself with the Haiti Fund, was to benefit Father Carrier financially, in the absence of any allegation

---

[2] Section 2423(d), like the Arizona statute, is a criminal statute.

that Father Carrier did anything to try to obtain for himself some of the money that the Haiti Fund raised.

The Cable Communications Policy Act provides another example—indeed, the statutory language of the Act is *identical* to the language of § 2423(d). Under the statute, it is a crime to willfully intercept a communications service offered over a cable system without authorization "for purposes of commercial advantage or private financial gain." Cable Communications Policy Act of 1984 § 633, 47 U.S.C. § 553. In *J&J Sports Productions, Inc. v. Mayreal II, LLC,* 849 F. Supp. 2d 586 (D. Md. 2012), the claim was that Mayreal, which operated a restaurant in Baltimore, and Parker, one of its owners, broke the law when they showed the Mayweather/Marquez championship boxing match for the patrons of the restaurant in 2009. The allegations about Parker's supposed commercial or financial purpose, like the allegations against Father Carrier, were purely conclusory: the plaintiff alleged that the defendants violated the statute "willfully and for purposes of direct or indirect commercial advantage or private financial gain," that Parker was listed on the Mayreal's liquor license, that he was the LLC's registered agent, and that he was an "officer, director, shareholder, employee, agent, and/or other representative" of Mayreal. *See J&J,* 849 F. Supp. 2d at 592. Parker moved to dismiss, and the judge granted the motion. While he recognized that there was a split of authority—some of it quite conclusory in its own right—on whether such conclusory allegations were sufficient to state a claim under *Iqbal, see J&J,* 849 F. Supp. 2d at 590-91, he held, after a detailed discussion of *Iqbal,* that the plaintiff had failed to state a claim. The judge recognized that "some of the factual specifics that are lacking" in the complaint "may be unavailable to plaintiff in advance of discovery." *Id.* at 592. He concluded, though, that *Iqbal* did not permit him to allow an insufficient claim to proceed in the hopes that discovery would provide the necessary factual

12

underpinnings for the conclusory allegations. In this respect, the *St. Louis* plaintiffs' position is particularly weak—they have the benefit of full document discovery from the Haiti Fund.

2.      The Insufficiency of the Travel Allegations.

The plaintiffs allege that "The Haiti Fund, Father Carrier and Fairfield University facilitated Perlitz's travel to Haiti by providing funds for such travel and/or scheduling Perlitz's trips to Haiti." (Compl. ¶ 53).[3] Given the reference to more than one defendant and the "and/or," it is unclear what the plaintiffs allege Father Carrier did, but the plaintiffs give their allegation against Father Carrier more substance in a neighboring paragraph: "Father Carrier knew that Perlitz used substantial portions of funds from the Haiti Fund and from Fairfield University to finance Perlitz's frequent trips to, and extended stays in, Haiti." (Compl. ¶ 55). Thus what the plaintiffs allege is not that Father Carrier had any direct involvement in Perlitz's travel arrangements, but rather, that he knew that Perlitz was using Haiti Fund and Fairfield money in order to travel to Haiti for illicit purposes. Indeed, the allegation is that Perlitz purchased his own tickets to travel to Haiti. (Compl. ¶ 53).

These allegations are insufficient to state a claim that Father Carrier violated § 2423(d). Instead of alleging that Father Carrier did anything to arrange or facilitate Perlitz's travel to Haiti, as the statute requires, they allege that Perlitz took funds from others, namely the Haiti Fund and Fairfield, and that Father Carrier knew it. Section 2423(d) is a criminal statute. Father Carrier is liable civilly, if he is liable at all, only because § 2255(a) provides for civil liability for violations of the criminal statute. Thus the way to approach the question of what "facilitate" means is to ask whether Father Carrier could even possibly be criminally liable under § 2423(d) given what the plaintiffs have pleaded. The answer to that question is plainly "no."

_____

[3] The plaintiffs also make a purely conclusory allegation that tracks the language of the statute (Compl. ¶ 116).

13

To "facilitate" a crime is "to make the commission of a crime easier." *Black's Law Dict.* 610 (7th ed. 1999). "Facilitation," then, is "the act or an instance of aiding or helping; esp. in criminal law, the act of making it easier for another person to commit a crime." *Id.* Mere knowledge that someone else is committing a crime, without some act or agreement to act, cannot be facilitation of the crime.

Nor, of course, can mere knowledge that someone is committing a crime, without an act or an agreement to act, constitute a crime in itself. The law requires both a mens rea and an actus reus. Thus, for instance, under the law of conspiracy, 18 U.S.C. § 371, if one person commits an act to effect the object of the conspiracy, another person cannot be guilty of the offense unless he agreed to join the conspiracy. *See United States v. Casamento,* 887 F.2d 1141, 1156-57 (2d Cir. 1989).

Similarly, under the aiding and abetting statute, 18 U.S.C. § 2, it is not enough simply to know that someone else has committed a crime; the defendant must commit a voluntary act or omission with the specific intent to bring about the underlying crime. Knowledge "is not enough." *United States v. Zambrano,* 776 F.2d 1091, 1097 (2d Cir. 1985).  And under the misprision of felony statute, 18 U.S.C. § 4, mere knowledge of a felony and failure to report it is not enough: the defendant must "[take] steps to conceal the crime." *United States v. Cefalu,* 85 F.3d 964, 969 (2d Cir. 1996). In short, it is never enough just to know that someone else has committed a crime. Therefore, the allegation that Father Carrier knew that Perlitz was using Haiti Fund or Fairfield funds to travel to Haiti, without more, is insufficient.

3.    The Purpose of the Statute

The plaintiffs' inability to make a plausible allegation that Father Carrier was acting for financial or commercial purposes or that he arranged, induced, procured, or facilitated Perlitz's travel to Haiti can be no surprise in light of the purpose of the statute. Section 2423(d) was

14

enacted as part of the PROTECT Act, Pub. L. No. 108-21, § 105, 117 Stat. 650, 653-54 (2003).

The conference committee report explains that the purpose of the new statute was to

"criminalize[] the actions of sex tour operators who arrange, procure, or facilitate the travel of a

person for commercial advantage or private gain, knowing that such a person is traveling in

interstate or foreign commerce for the purpose of engaging in illicit sexual conduct." H.R. Rep.

No. 108-66, at 51 (2003), *reprinted in* 2003 U.S.C.C.A.N. 683, 686 (Conf. Rep.). Indeed, when

the provision that ultimately became § 2423(d) was first introduced, it omitted the "commercial

advantage or private gain" provision and read simply:

> Whoever arranges, induces, procures, or facilitates the travel of a person knowing
> that such a person is traveling in interstate commerce or foreign commerce for the
> purpose of engaging in illicit sexual conduct shall be fined …

Child Abduction Prevention Act, H.R. 1104, 108th Cong. § 105(a) (as introduced, Mar. 5,

2003).[4] Even this version of the bill, which *lacks* language limiting liability to those acting for

"commercial advantage or private gain," was aimed at "sex tour operators." *See* H.R. Rep.

No. 108-47, at 17 (2003).

Whatever the truth of the plaintiffs' allegations concerning Father Carrier, it is clear that

they do not allege and cannot allege that he was a sex tour operator or anything of the sort. Even

if all of the plaintiffs' allegations are true, they cannot plausibly claim that Father Carrier is

guilty of any of the conduct the statute means to prohibit.

---

[4] The Senate bill that ultimately became § 2423(d), S. 151, 108th Cong. (2003), originally lacked a provision like
§ 2423(d) altogether. After the Senate sent its bill to the House of Representatives, the House amended the Senate
bill by striking all after the enacting clause and inserting the provisions of H.R. 1104 in lieu of the Senate's
provisions. *See* 149 Cong. Rec. H2443 (daily ed. Mar. 27, 2003) (motion of Rep. Sensenbrenner). The bill, thus
amended, then passed. *Id.* This is the reason why we cite the House committee report on H.R. 1104.

B.    Count Seven Must Be Dismissed, Because The Complaint Fails To Allege That Father
      Carrier Benefitted Financially From Participation In A Venture.

Count Two requires an allegation that Father Carrier's *purpose* was financial gain. We

show above that the *St. Louis* plaintiffs have failed to make an allegation sufficient to support

that claim. Count Seven, on the other hand, requires an allegation that Father Carrier actually

"knowingly benefit[ted], financially or by receiving anything of value from participation in a

venture" that he knew or should have known engaged in illegal acts. *See* 18 U.S.C. § 1595(a).[5]

The Complaint fails to make an allegation sufficient to support a claim on this point.

The only allegation addressed to a financial benefit to Father Carrier is this:

> Father Carrier knowingly benefitted financially from PPT in that Father Carrier
> was an officer of the Haiti Fund, which received large sums of money, apparently
> with substantial sums not accounted for.

(Compl. ¶¶ 114, 149). This allegation is insufficient as a matter of law to give rise to a plausible

inference that Father Carrier received a penny. There is no dispute, for pleading purposes, that

the Haiti Fund itself raised a lot of money through charitable contributions for the purpose of

supporting PPT. (e.g., Compl. ¶ 40). But the plaintiffs suggest that that money should be

attributed to Father Carrier merely because he was an officer of the Haiti Fund, and they suggest

that the money should be attributed to Father Carrier because (allegedly) "substantial sums" of

Haiti Fund money were not accounted for. Neither suggestion has any basis in the Complaint.

1.    Under Elementary Corporate Law, Money Received By The Haiti Fund Is Not
      Attributed To Its Officers Or Directors Personally.

The Haiti Fund is a Connecticut non-stock corporation. (Compl. ¶ 10). It is thus a legal

entity separate from its officers, employees, and agents. *See Zaist v. Olson*, 154 Conn. 563, 573-

---

[5] In *Jean-Charles,* the Court held that PPT was, for pleading purposes, a "venture" covered by the statute. *Jean-Charles,* 937 F. Supp. 2d at 288. We believe that this holding was incorrect. PPT was not a criminal enterprise, but a school where—if the allegations are true—things went very wrong. But we do not seek to relitigate the point in this motion, though we reserve the right to litigate it at summary judgment or at trial.

74 (1967) (discussing specific narrow exceptions to general rule recognizing "individuality of corporate entities and the independent character of each" as a "separate legal entity"). Thus, *it*s income is not *their* income;[6] benefits it receives are not their benefits; and neither its assets nor its liabilities belong to or can be attributed to the officers, employees, or agents. *See, e.g., Zaist*, 154 Conn. at 563; *Fink v. Golenbock*, 238 Conn. 183, 209-10 (1996) (affirming claim on behalf of non-operating corporation against its sole remaining director and 50% owner for conversion of corporate assets and unjust enrichment, among other claims); *Vogel v. Town of New Milford*, 161 Conn. 490, 494 (1971) (holding no facts supported decision to disregard the corporate form).

Here, the only allegation is that the Haiti Fund received funds. If the argument is that Father Carrier benefitted from those funds just because the Haiti Fund received them, the argument flatly contradicts the relevant basic corporate law.

### 2.   There Is No Allegation That Father Carrier Received Any Money.

The complaint alleges that some Haiti Fund money was unaccounted for, but it fails to allege that Father Carrier received a penny. Simply put, to state a claim against an individual defendant, the plaintiff must plausibly allege that the individual defendant, as opposed to someone else, is liable. *See*, *e.g.*, *Leftridge v. Support Enforcement Servs.,* 2013 WL 1947174, at *5-6 (D. Conn. May 3, 2013) (granting motion to dismiss for failure to state a claim where conclusory and vague assertions of discrimination against correctional facility employees

---

[6] Even in corporations that elect to be taxed under subchapter S of chapter 1 of the Internal Revenue Code ("S Corporations"), where corporate tax liability is passed through to a corporation's *owners* (not its officers, employees or other agents) and reported as part of their individual income, the law distinguishes between what income belongs to the corporation, and what income belongs to the owners. *See, e.g., Tuckman v. Tuckman,* 308 Conn. 194, 207-14 (2013) (adopting a fact-based inquiry for determining whether an S Corporation's income is sufficiently available to a shareholder to be considered part of the shareholder's income). Because the Haiti Fund is a non-stock charitable corporation with no owners, there is even less reason to attribute its income to individuals than there is in the case of stock corporations with beneficial owners.

"failed to delineate wrong-doing of specific defendants"); *Ebron v. Lantz*, 2006 WL 18827, at *4-5 (D. Conn. Jan. 4, 2006) (dismissing retaliation claim where the only *specific* allegations of wrongdoing were against non-parties, while instructing that a pleading shall recite the "personal involvement of each defendant"); *J&J,* 849 F. Supp. 2d at 590-92 (dismissing Federal Cable Act claims against individual restaurant owner, where the "only specific factual allegations made with respect to [the individual owner]" were that he was named on the restaurant license and that he was a registered agent and officer of the LLC). Here, the plaintiffs say that the Haiti Fund received money and that some money is unaccounted for. Even if they have plausibly alleged that *someone* took the money—and they do not even squarely allege that—they have done nothing to allege that *Father Carrier* took or received the money.

Here, as in *J&J,* the allegation that Father Carrier "knowingly benefitted financially" is a textbook example of a "label[] and conclusion[]" that cannot withstand a motion to dismiss. *Id.* at 591.

C.   Count Five Must Be Dismissed In The Alibert, Audate, Bernadin, Emile, Faustin, Fils-Aime, Guillaume, Dorat Jean, Frisnel Jean, Ilguens Jean, Jerome, Dmitry Joseph, Jasmin Joseph, Gesner Lecenat, Odilbert, Felix Pierre, Robens Pierre, and St. Louis Actions, Because The Complaints Fail To Allege A Fiduciary Relationship Between Father Carrier And Any Plaintiffs Who Were Not PPT Students.

This Court previously held that the *Jean-Charles* plaintiffs had stated a claim for breach of fiduciary duty against Father Carrier. *See Jean-Charles,* 937 F. Supp. 2d at 285-86. We disagree with the holding, but we do not press the point again in this motion with respect to any plaintiff who, like the *Jean-Charles* plaintiffs, alleges he was a student at PPT. But the basis of the Court's earlier decision was that "[c]rediting the allegations of the Complaint, Perlitz ran PPT under the supervision and auspices of the defendants" and that the defendants had "assumed a fiduciary duty to protect the plaintiffs while they were in the custody of PPT." *Id.* at 286. Plaintiffs who were not at PPT could not have "reposed a high degree of trust and confidence in

the persons and entities responsible for the proper operation of PPT," *id.,* as the *Jean-Charles* plaintiffs alleged. Nor can plaintiffs who were not PPT students plausibly allege that Father Carrier or the other defendants "voluntarily took custody of the plaintiffs and undertook to provide for their most basic needs," *id.*

In short, none of the allegations that led the Court to conclude that the *Jean-Charles* plaintiffs had stated a claim for breach of fiduciary duty is present here with respect to those of the *St. Louis* plaintiffs who fail to allege that they were students at PPT. The key to a claim for breach of a fiduciary duty is a fiduciary relationship between plaintiff and defendant. A fiduciary duty exists only where there is a relationship of dependency between the fiduciary and the other party or where the fiduciary was under a specific duty to act for the benefit of the other party. *See Hi-Ho Tower, Inc. v. Com-Tronics, Inc.,* 255 Conn. 20, 38 (2000). Here Father Carrier never "undertook to act primarily for the benefit of the plaintiffs" who did not attend PPT, nor were those plaintiffs dependent on Father Carrier in any way. *Id.* at 41. Indeed, while the complaints give little or no reason to think that Father Carrier had any relationship with *any* of the plaintiffs, they give absolutely no reason to think that Father Carrier had any relationship at all with the plaintiffs who were not PPT students. As far as the complaints disclose, Father Carrier's only involvement with Haiti was his involvement with PPT. The claims for breach of fiduciary duty of any plaintiffs who were not PPT students must, therefore, be dismissed.

<u>CONCLUSION</u>

For the foregoing reasons, the Court must dismiss Counts 2 and 7 for failure to state a claim on which relief can be granted. The Court must also dismiss Count 5 in the Alibert, Audate, Bernadin, Emile, Faustin, Fils-Aime, Guillaume, Dorat Jean, Frisnel Jean, Ilguens Jean, Dmitry Joseph, Jasmin Joseph, Gesner Lecenat, Odilbert, Felix Pierre, Robens Pierre, and St. Louis actions for failure to state a claim on which relief can be granted.

Respectfully submitted,

PAUL E. CARRIER, S.J.

By his attorneys:

/s/ Theodore J. Folkman
Timothy P. O'Neill (phv04968)
Theodore J. Folkman (phv04969)
Amanda Moger Rettig (phv04967)
MURPHY & KING, P.C.
One Beacon St., 21st Fl.
Boston, Mass. 02108
(617) 423-0400
tpo@murphyking.com
tjf@murphyking.com
amr@murphyking.com

Gene S. Winter (ct05137)
Benjamin C. White (ct27211)
ST. ONGE STEWARD JOHNSTON & REENS LLC
986 Bedford St.
Stamford, Conn. 06905
(203) 324-6155
gwinter@ssjr.com
bwhite@ssjr.com

Dated: February 4, 2014

<u>CERTIFICATE OF SERVICE</u>

I certify that on February 4, 2014, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by first-class mail to all parties who are unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

I further certify that on February 4, 2014, I caused a copy of the foregoing document to be served by first-class mail, postage prepaid, on counsel for the defendant, Douglas Perlitz, who is unable to accept electronic service:

> David T. Grudberg, Esq.
> Carmody & Torrance, LLP
> 195 Church St.
> PO Box 1950
> New Haven, Conn. 06509-1950

<u>/s/ Theodore J. Folkman</u>

662929