UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERVIL ST. LOUIS, | Civ. A. No. 3:13-cv-01132-RNC |
| Plaintiff, | |
| vs. | Dated: January 20, 2015 |
| DOUGLAS PERLITZ, et al., | |
| Defendants | |

*This document relates to:*

*Michel v. Perlitz, No. 14-1530*

**MEMORANDUM IN SUPPORT OF FATHER CARRIER'S
<u>MOTION TO DISMISS COUNTS 8 AND 12</u>**

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................ iii

Preliminary Statement .................................................................................................... 1

Allegations ...................................................................................................................... 2

Argument ......................................................................................................................... 3

   A.   Count Eight Is Barred By The Statute Of Limitations. ..................................... 3

      1.   Standard of Decision. ................................................................................ 3

      2.   Michel's Claim Is Barred Unless The 2013 Amendment to the Statute of Limitations Applies. ......................................................................................... 3

      3.   The 2013 Amendment To The Statute Does Not Operate Retroactively. ....................... 5

      4.   Section 2255 Does Not Permit Tolling or Delayed Accrual. ........................................... 7

         a.   The Discovery Rule Does Not Apply. ......................................................... 7

            i   There Is No Discovery Rule Implied In § 2255. ........................................ 7

            ii.   Michel Has Not Pleaded Facts Sufficient To Justify Application Of A Discovery Rule. 9

         b.   Equitable Tolling Does Not Apply. ......................................................... 11

         c.   Equitable Estoppel Does Not Apply. ......................................................... 13

   B.   Count Twelve Fails To State A Claim On Which Relief Can Be Granted. ...................... 14

      1.   Standard of Decision ................................................................................ 14

      2.   Count Twelve Fails To State A Claim Because The Allegations Involve Conduct That Took Place Solely In Haiti, And § 1591 Does Not Reach Extraterritorial Conduct. ........... 15

         a.   The Statute Had No Extraterritorial Application .................................... 15

         b.   Michel's Allegations Could Succeed Only If § 1591 Applied Extraterritorially. .... 18

         c.   The 2008 Enactment of 18 U.S.C. § 1596 Does Not Save the Claim. .................. 19

      3.   The Complaint Does Not Allege A Violation Of The Statute, Because The Facts Alleged Do Not Involve Trafficking. ................................................................................ 21

Conclusion ..................................................................................................................... 25

TABLE OF AUTHORITIES

Cases

*Adhikari v. Daoud & Partners,* 994 F. Supp. 2d 831 (S.D. Tex. 2014) ........................................21

*Armstrong v. McAlpin,* 699 F.2d 78 (2d Cir. 1983) ......................................................13

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...................................................................14, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................15

*Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204 (1988) ...........................................5

*Caputo v. Pfizer, Inc.,* 267 F.3d 181 (2d Cir. 2001) ..................................................12

*Carrion v. Coca-Cola Bottling Co. of New Eng.,* 2006 WL 3526748 (D. Conn. Dec. 1, 2006).....7

*Cerbone v. Int'l Ladies' Garment Workers' Union,* 768 F.2d 45 (2d. Cir. 1985).........................13

*Cohen v. S.A.C. Trading Corp.,* 711 F.3d 353 (2d Cir. 2013) ........................................13

*Ditullio v. Boehm,* 662 F.3d 1091 (9th Cir. 2011) .................................................22, 23

*Doe v. Order of St. Benedict,* 836 F. Supp. 2d 872 (D. Minn. 2011) .............................12

*Ellul v. Congregation of Christian Bros.,* 2014 WL 6863587 (2d Cir. Dec. 8, 2014) .................11

*Epstein v. C.R. Bard, Inc.,* 460 F.3d 183 (1st Cir. 2006).................................................12

*European Community v. RJR Nabisco, Inc.,* 764 F.3d 129 (2d Cir. 2014) ....................................16

*Herm v. Stafford,* 663 F.2d 669 (6th Cir. 1981) ...........................................................12

*In re Enterprise Mortg. Acceptance Co. Sec. Litig.,* 391 F.3d 401 (2d Cir. 2004) ..............5, 6, 20

*Jones v. Bock,* 549 U.S. 199 (2007) ...........................................................................3

*Koch v. Christie's Int'l plc,* 699 F.3d 141 (2d Cir. 2012) ............................................12

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.,* 2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) ................................................................................6, 9

*Landgraf v. USI Film Prods.,* 511 U.S. 244 (1994) .................................................5, 20

*Love v. Associated Newspapers, Ltd.,* 611 F.3d 601 (9th Cir. 2010) ....................................16, 17

*Mitchell v. E-Z Way Towers, Inc.,* 269 F.2d 126 (5th Cir. 1959)........................................3

*Morrison v. Nat'l Australia Bank Ltd.,* 561 U.S. 247 (2010)...................................................passim

*Nelson v. United States,* 2014 WL 2048096 (N.D. Tex. May 16, 2014)........................................21

*Norex Petroleum Ltd. v. Access Indus., Inc.,* 631 F.3d 29 (2d Cir. 2010)..............................16, 17

*Price v. Forrest,* 173 U.S. 410 (1899) ..........................................................................................24

*S.M. v. Clash,* 558 Fed. App'x 44 (2d Cir. 2014).............................................................6, 10, 11

*Shovah v. Mercure,* 2014 WL 4240027 (D. Vt. Aug. 27, 2014) ......................................................9

*Singh v. Wells,* 445 Fed. App'x 373 (2d Cir. 2011) .....................................................................13

*Singleton v. City of New York,* 632 F.2d 185 (2d Cir. 1980)...........................................................7

*Singleton v. Clash,* 951 F. Supp. 2d 578 (S.D.N.Y. 2013)...................................................6, 7, 8, 9

*Summerill v. Terminix, Inc.,* 637 F.3d 877 (8th Cir. 2011) ...........................................................12

*TRW, Inc. v. Andrews,* 534 U.S. 27 (2001)...........................................................................7, 8, 9

*United States v. Bell,* 761 F.3d 900 (8th Cir. 2014) ....................................................................22

*United States v. Berrios-Berrios,* 2014 WL 3513233 (D.P.R. Jun. 13, 2014) ............................21

*United States v. Brinson,* 772 F.3d 1314 (10th Cir. 2014) .........................................................22

*United States v. Britton,* 567 Fed. App'x 158 (3d Cir. 2014).....................................................22

*United States v. Jungers,* 702 F.3d 1066 (8th Cir. 2013) ..........................................................23

*United States v. Lustig,* 3 F. Supp. 3d 808 (S.D. Cal. 2014) .......................................................22

*United States v. Maynard,* 743 F.3d 374 (2d Cir. 2014) ...........................................................20

*United States v. McVicker,* 979 F. Supp. 2d 1154 (D. Or. 2013) ................................................17

*United States v. Mozie,* 752 F.3d 1271 (11th Cir. 2014) ...........................................................22

*United States v. O'Connor,* 2011 WL 2417143 (2d Cir. Jun. 16, 2011)........................................23

*United States v. Paris,* 2007 WL 3124724 (D. Conn. Oct. 24, 2007) .........................................23

*United States v. Phea,* 755 F.3d 255 (5th Cir. 2014)..................................................................22

*United States v. Pringler,* 765 F.3d 445 (5th Cir. 2014) ...........................................................22

*United States v. Weingarten,* 632 F.3d 60 (2d Cir. 2011) .........................................................17

*United States v. Wilmer,* 2014 WL 7143387 (9th Cir. Dec. 16, 2014).........................................22

*Velez v. Sanchez,* 693 F.3d 308 (2d Cir. 2012)................................................................20

*Vernon v. Cassadaga Valley Cent. Sch. Dist.,* 49 F.3d 886 (2d Cir. 1995)...................20

## Statutes

18 U.S.C. § 1343 ............................................................................................................16

18 U.S.C. § 1591(a) ..................................................................................................14, 17

18 U.S.C. § 1591(a)(1) .............................................................................................passim

18 U.S.C. § 1591(a)(2) ...................................................................................................19

18 U.S.C. § 1591(e)(3) ....................................................................................................23

18 U.S.C. § 1595(a) .....................................................................................................1, 14

18 U.S.C. § 1952 .............................................................................................................16

18 U.S.C. § 1962(b) ........................................................................................................16

18 U.S.C. § 1962(c) ........................................................................................................16

18 U.S.C. § 2255(a) .................................................................................................passim

18 U.S.C. § 2255(b) .............................................................................................4, 6, 8, 9

18 U.S.C. § 2423 .............................................................................................................21

18 U.S.C. § 2423(b) ...........................................................................................2, 3, 4, 17

18 U.S.C. § 2520 ...............................................................................................................8

18 U.S.C. § 2520(e) ..........................................................................................................9

18 U.S.C. § 3271(a) ........................................................................................................17

18 U.S.C. § 371 ...............................................................................................................22

28 U.S.C. § 2409a..............................................................................................................9

28 U.S.C. § 2409a(g)..........................................................................................................9

Child Abuse Victims' Rights Act of 1986, Pub. L. 99-500, § 703(a), Oct. 18, 1986, 100 Stat.
   1783-75, amended, Pub. L. 99-591, § 703(a), Oct. 30, 1986, 100 Stat. 3341, 3341-75..............4

Conn. Gen. Stat. § 53a-70 ..............................................................................................21

Conn. Gen. Stat. § 53a-71 ..............................................................................................21

Conn. Gen. Stat. § 53a-83 ............................................................................................21

Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b) .............................15, 18

Securities Exchange Act of 1934, § 3(a)(17), 15 U.S.C. § 78c(17) ............................16

Trafficking Victims Protection Act of 2000, Pub. L. 106-386, § 102(3), 114 Stat. 1464, 1466...24

Trafficking Victims Protection Act of 2000, Pub. L. 106-386, § 102(4), 114 Stat. 1464, 1466...24

Trafficking Victims Protection Act of 2000, Pub. L. 106-386, § 102(5), 114 Stat. 1464, 1466...24

Trafficking Victims Protection Act of 2000, Pub. L. 106-386, § 102(8), 114 Stat. 1464, 1467...24

Trafficking Victims Protection Act of 2000, Pub. L. 106-386, § 103(9), 114 Stat. 1464, 1470...24

Trafficking Victims Protection Reauthorization Act of 2005, Pub. L. 109-164, § 2(11), 119 Stat. 3557, 3559 .........................................................................................17

Violence Against Women Reauthorization Act of 2013, Pub. L. 113-4, § 1212(a), Mar. 7, 2013, 127 Stat. 54, 143 ...................................................................................4, 6

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 223, 122 Stat. 5044, 5071....................................................20

## Rules

Fed. R. Civ. P. 9(b)..................................................................................................12

Fed. R. Civ. P. 9(f) ....................................................................................................3

## Other Authorities

10A Charles A. Wright *et al., Federal Practice & Procedure* § 2728 (3d ed. 1998) ....................3

5B Charles A. Wright *et al., Federal Practice & Procedure* § 1357 (3d ed. 2004) ......................3

Tataboline Brant, *Jury Indicts Businessman in Drug, Conspiracy Case,* Anchorage Daily News, Jan. 23, 2004, at A1 ..............................................................................................22

PRELIMINARY STATEMENT

This motion is directed to two of the statutory claims made by one of the plaintiffs, Bernard Michel. Unlike any of the other plaintiffs,[1] Michel has pleaded that Father Carrier sexually abused him. He claims that the abuse occurred between 1999 and 2005, when he was 11 to 16 years old. Michel's claims are outrageous and false, but he could not prevail on them even if they were true. Count 8, a claim under 18 U.S.C. § 2255(a), is barred by the statute of limitations on the face of the complaint. Count 12, a claim under 18 U.S.C. § 1595(a), also fails, because the conduct alleged, while it plainly would be wrongful if it had occurred, does not violate the statute.

To summarize our arguments:

1.      Prior to 2013, the statute of limitations for violations of § 2255(a) was six years. Michel's claim expired, under the old statute of limitations, no later than 2011, years before he sued. The 2013 amendment, which changed the statute of limitations to ten years from six, cannot be applied retroactively to revive Michel's stale claim. Nor can the discovery rule or any tolling doctrine save Michel's claim.

2.      18 U.S.C. § 1591(a)(1), the predicate statute underlying Michel's § 1595(a) claim, does not apply extraterritorially. The reference in the statute to foreign commerce is insufficient under Supreme Court precedent to show a congressional intent to regulate conduct abroad, and all the conduct alleged here took place abroad. A 2008 statute that vested the courts with

---

[1] Another plaintiff, Emmanuel Clervil, who previously had stated under penalty of perjury that Father Carrier had not abused him, changed his story and sought leave to amend his complaint to assert similar claims. Father Carrier, Fairfield University, and the Society of Jesus of New England opposed the motion for leave to amend on several grounds. Prior to oral argument on the motion for leave to amend, Clervil's lawyers stated their intention to dismiss his action.

extraterritorial jurisdiction over *criminal* violations of § 1591(a)(1) cannot be applied retroactively, and in any case it applies only to criminal actions, not to civil actions.

3.      Even if § 1591(a)(1) could be applied extraterritorially, the statute proscribes trafficking. In the context of this case, the statute would proscribe a transaction in which Father Carrier paid a third party—a trafficker—for Michel's sexual services. Here, the allegation is not trafficking, but rather direct transactions between Father Carrier and Michel. While these transactions, if they had occurred, would violate other statutes (e.g., 18 § 2423(b), the predicate statute underlying the § 2255(a) claim), they would not violate § 1591(a)(1).

For these reasons, Counts 8 and 12 must be dismissed for failure to state a claim on which relief can be granted.

ALLEGATIONS

Michel alleges that he was abused by Father Carrier "[f]rom approximately 1999 to 2005," when he was "approximately 11 to 16 years of age." (Compl. ¶ 105). Thus Michel is alleging that he was born in or around 1988 and that he turned eighteen years old in or around 2006. Michel commenced this action on October 17, 2014, nearly nine years after the last date in the range of the alleged abuse and nearly eight years after he became an adult.

Michel alleges that Father Carrier "coerced [him] into performing illicit sexual conduct by means of implicit threats to [him]." (Compl. ¶ 106). He alleges that Father Carrier "provided things of value to [Michel] in return for illicit sexual conduct, including, among other things, drawing supplies, clothes and food." (Compl. ¶ 107). And he alleges that he "understood that to continue to be able to attend PPT, eat meals provided by PPT, and receive an education at PPT, [Michel] had to allow Father Carrier to sexually abuse [him]." (Compl. ¶ 107). Michel alleges that Father Carrier "recruited" and "enticed" him. (Compl. ¶ 183).

2

ARGUMENT

A.    <u>Count Eight Is Barred By The Statute Of Limitations.</u>

     1.    <u>Standard of Decision.</u>

Allegations of time are material when testing the sufficiency of a pleading. Fed. R. Civ. P. 9(f). Therefore, even though the statute of limitations is an affirmative defense, a claim is "subject to dismissal for failure to state a claim" if "the allegations … show that relief is barred by the applicable statute of limitations." *Jones v. Bock,* 549 U.S. 199, 215 (2007).

Motions to dismiss for failure to state a claim differ from motions for summary judgment in an important respect. Even when a party seemingly has demonstrated that there are no genuine issues of material fact in dispute and that he is entitled to judgment as a matter of law, a court has discretion to deny a motion for summary judgment, e.g., to allow for development of a fuller factual record. *See* 10A Charles A. Wright *et al., Federal Practice & Procedure* § 2728 at n.11 (3d ed. 1998). On the other hand, where a defendant has demonstrated that the complaint has failed to state a claim on which relief can be granted, the court has no discretion to deny a motion to dismiss. *See* 5B Wright & Miller § 1357 at n.6 (3d ed. 2004). A motion to dismiss "allows of no discretion in the usual sense," because "[t]he complaint is either good or not good." *Mitchell v. E-Z Way Towers, Inc.,* 269 F.2d 126, 129 (5th Cir. 1959).

     2.    <u>Michel's Claim Is Barred Unless The 2013 Amendment to the Statute of Limitations Applies.</u>

In Count Eight, Michel accuses Father Carrier of violating § 18 U.S.C. § 2423(b), which provides:

> A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined …

18 U.S.C. § 2423(b).

3

Section 2423(b) is a criminal statute. Congress created a civil cause of action for violation of the statute in 18 U.S.C. § 2255(a), which provides:

> Any person who, while a minor, was a victim of a violation of section … 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court …

18 U.S.C. § 2255(a).

Until March 2013, the statute provided that a claim had to be brought "**within six years** after the right of action first accrues or in the case of a person under a legal disability, not later than three years after the disability." Child Abuse Victims' Rights Act of 1986, Pub. L. 99-500, § 703(a), Oct. 18, 1986, 100 Stat. 1783-75, amended, Pub. L. 99-591, § 703(a), Oct. 30, 1986, 100 Stat. 3341, 3341-75 (emphasis supplied). But in March 2013, Congress amended the statute to provide that claims have to be brought "**within 10 years** after the right of action first accrues or in the case of a person under a legal disability, not later than three years after the disability." Violence Against Women Reauthorization Act of 2013, Pub. L. 113-4, § 1212(a), Mar. 7, 2013, 127 Stat. 54, 143 ["VAWRA"], codified at 18 U.S.C. § 2255(b) (emphasis supplied).

The alleged abuse occurred in and prior to 2005, and the claim therefore accrued no later than the end of 2005.[2] So Michel's cause of action was barred by the statute of limitations no later than the end of 2011—almost three years before he sued. The question is whether the 2013 amendment to the statute breathed new life into his stale cause of action. The following timeline shows the relevant dates:

---

[2] We show in section A.4, below, that Michel cannot claim that the discovery rule delayed accrual of the cause of action or that the statute of limitations was tolled.



3.      The 2013 Amendment To The Statute Does Not Operate Retroactively.

"Congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988). If the six-year statute of limitations rather than the ten-year statute of limitations applies, then Michel's claims are plainly barred. Because the 2013 amendment of the statute does not operate retroactively, the six-year statute of limitations does apply, and therefore Count Eight must be dismissed.

Courts apply a two-step test to determine whether a statute should apply retroactively. First, has Congress "expressly prescribed the statute's proper reach," one way or the other? *Landgraf v. USI Film Prods.,* 511 U.S. 244, 280 (1994). If so, then the court should enforce the statute as written, since Congress has the power to legislate retroactively if its wishes. Second, if Congress has not been explicit, would the statute, if applied, actually have retroactive effect? If it would, then the statute cannot be applied "absent clear congressional intent" to apply it retroactively. *Id.*

The first step of the analysis requires looking at the text of the statute itself and the legislative history. *See In re Enterprise Mortg. Acceptance Co. Sec. Litig.,* 391 F.3d 401, 406-08 (2d Cir. 2004). Here, the text of the statute is silent on the retroactivity or non-retroactivity of the

amended statute of limitations. *See* VAWRA § 1212(a). Nor does any of the available legislative history address retroactivity one way or the other.

The second step of the analysis requires the court to ask whether the 2013 amendment actually has a retroactive effect, that is, "whether it would produce the kind of result that motivated the presumption against retroactive application in the first place." *Enterprise,* 391 F.3d at 408. The Second Circuit has squarely held that "the resurrection of previously time-barred claims has an impermissible retroactive effect," *id.* at 410, even if the conduct alleged in the stale claim was unlawful at the time it occurred.

Since Congress has not expressed an intent that the 2013 amendment to the statute of limitations should have retroactive effect, and since it would in fact operate retroactively if applied in this case, Michel's claim under § 2255(a) is plainly barred.

This result is not just compelled by the Second Circuit precedents; it is consistent with the few cases that have considered whether the 2013 amendment to § 2255(b) operates retroactively. In *Singleton v. Clash,* 951 F. Supp. 2d 578, 586 (S.D.N.Y. 2013), *aff'd sub nom. S.M. v. Clash,* 558 Fed. App'x 44 (2d Cir. 2014), a domestic child sex abuse case, the court, for substantially the reasons given above, dismissed a claim under § 2255(a) on the grounds that the claim had expired before the 2013 amendment to 2255(b) and that the 2013 amendment could not be applied retroactively to revive the claim.[3] The court reached the same result in *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.,* 2013 WL 6816174, at *13 (W.D. Ark. Dec. 24, 2013).

In short, the 2013 amendment to the statute of limitations in § 2255(b) cannot revive Michel's claim under § 2255(a).

---

[3] The Second Circuit's decision affirming *Singleton* focused on the allegations that would be necessary to invoke the discovery rule, an issue we discuss below.

4.      <u>Section 2255 Does Not Permit Tolling or Delayed Accrual.</u>

We expect Michel to argue that even though the six-year statute of limitations applies, it

was tolled for one reason or another, or the cause of action did not accrue, until sometime within

six years of commencement of the action. Such arguments have been squarely rejected on similar

allegations, *see Singleton v. Clash,* 951 F. Supp. 2d at 585-87, and this Court should reject them,

too.

In *Carrion v. Coca-Cola Bottling Co. of New England,* 2006 WL 3526748 (D. Conn.

Dec. 1, 2006), Judge Hall usefully disentangled the various theories plaintiffs use to seek to

avoid a limitations defense:

> Although the statute of limitations law is less than straightforward, the courts have noted
> a distinction between the law of accrual, equitable tolling, and equitable estoppel. The
> law of accrual, or the "discovery rule," states that a cause of action accrues on the date of
> discovery of the injury. Equitable tolling and equitable estoppel, on the other hand, apply
> only after a claim has accrued. According to the Second Circuit: Unlike equitable tolling,
> which is invoked in cases where the plaintiff is ignorant of his cause of action because of
> the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the
> plaintiff knew of the existence of his cause of action but the defendant's conduct caused
> him to delay in bringing his lawsuit.

*Carrion, supra* at *3 (citations and internal quotation marks omitted). While we do not know

which of these three theories, if any, Michel will try to deploy, we address all of them in this

section of the memorandum.

a.      <u>The Discovery Rule Does Not Apply.</u>

i.      <u>There Is No Discovery Rule Implied In § 2255.</u>

When the discovery rule applies, a cause of action is held not to accrue until the date the

plaintiff discovers his injury. *See Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.

1980). While some lower courts adopt the position that the discovery rule should be implied in

any federal statute that is silent on the issue, the Supreme Court has never endorsed that view.

*See TRW, Inc. v. Andrews,* 534 U.S. 27, 27-28 (2001). Indeed, the Supreme Court has recognized

the discovery rule in only two contexts—latent disease and medical malpractice—where "the cry for such a rule is loudest." *Id.*

But this Court need not consider whether or not congressional silence means that Michel should have the benefit of the discovery rule, because Congress has not been silent. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of a contrary legislative intent." *Id.* at 28 (citation and internal quotation marks omitted). Congress has expressly provided an exception to the statute of limitations under § 2255(b) for persons under a legal disability at the time the action accrues. Therefore, no other exceptions can be implied or read into the statute.

It is for this reason among others that the judge in *Singleton v. Clash,* a § 2255(a) case, rejected a plaintiff's argument for application of the discovery rule to § 2255(b). In *Singleton v. Clash,* the plaintiffs argued that their time to sue did not begin to run until the plaintiffs "allegedly became aware of the connection between their injuries and the defendant's conduct." *Singleton v. Clash,* 951 F. Supp. 2d at 585. The judge noted that far from being silent, Congress had provided for an exception to the general six-year statute of limitations "for those persons under a legal disability when the cause of action first accrues," and in particular that Congress had extended the statute "to three years after the disability ends, regardless of when the violation occurred." *Id.* at 586. The exception was "plainly crafted to afford minors at least three years after attaining the age of eighteen to contemplate whether they choose to sue for conduct committed against them while they were minors." The specificity of this exception, he reasoned, "counsels against implying [a discovery rule] into the statute." *Id.*

Section 2255(b) contrasts strongly with statutes where Congress *has* expressly provided for a discovery rule. For example, in 18 U.S.C. § 2520, which provides a civil remedy for

persons whose communications are wrongfully intercepted, Congress provided that an action

could be brought within "two years after the date on which the claimant first had a reasonable

opportunity to discover the violation." 18 U.S.C. § 2520(e). In 28 U.S.C. § 2409a, which

provides a remedy against the United States to quiet title to realty, Congress provided that an

action "is deemed to have accrued on the date the plaintiff … knew or should have known of the

claim of the United States" on the property. 28 U.S.C. § 2409a(g). In other words, Congress

knows how to create a discovery rule when it wishes. *See TRW*, 534 U.S. at 37-38 (Scalia, J.,

concurring). *Singleton v. Clash* cited these and other examples in holding that § 2255(b) has no

implied discovery rule. *Singleton v. Clash,* 951 F. Supp. 2d at 587.[4] The reasoning is sound, and

this Court should adopt it.

> ii.  <u>Michel Has Not Pleaded Facts Sufficient To Justify Application Of A Discovery Rule.</u>

Although for the reasons just given § 2255(b) does not have a discovery rule, Michael has

not alleged the facts necessary to invoke a discovery rule in any event. The only relevant

allegations in the complaint are as follows:

> At all times material hereto, Defendants Perlitz and Father Carrier misrepresented and concealed from Plaintiff the wrongful nature of the sexual and related activity and that such activity could harm Plaintiff.

> Victims of child sex abuse frequently have difficulty remembering the full extent of the abuse they suffered or, even when they do recall, may be unable to communicate all of the details of that abuse. They may also be unaware, or unable to communicate, the full extent of injury they have suffered from such abuse. As a victim of Perlitz's sexual abuse, Plaintiff is unable at this time to fully describe all of the details of that abuse and the extent of the harm he suffered as a result.

(Compl. ¶¶ 109-110).

---

[4] The other courts that have considered the question have reached the same result, though the reasoning has varied. *See Shovah v. Mercure,* 2014 WL 4240027 (D. Vt. Aug. 27, 2014); *Kolbek,* 2013 WL 6816174 at *13 n.13.

The deficiencies in these allegations are glaring. Paragraph 110 is so qualified as to say almost nothing at all. "Victims of child sex abuse *frequently* have difficulty remembering *the full extent* of the abuse they suffered or … may be unable to communicate *all the details* of that abuse. They may also be aware, or unable to communicate, *the full extent* of the injury they have suffered." (Compl. ¶ 110) (emphasis supplied). Michel does not allege that *he* is one of the victims who had difficult remembering, and even if he had, he does not allege that he was unable to remember the *fact* of the abuse, but rather just the *full extent* of the abuse or the injury. To the extent he makes any allegation about his own inability to remember the supposed abuse, the allegation is limited to an inability to remember *Perlitz's* abuse, and even there, he does not claim an inability to remember that the abuse occurred, but rather just an inability to remember its extent.

Michel's allegations are no better than the allegations of the plaintiffs in the *S.M.* case, which the Second Circuit found insufficient to bring the discovery rule into play. Those allegations were as follows:

> Although KEVIN CLASH's acts of inducement and enticement to sexual activity began in or about 2003, when CECIL SINGLETON was a minor, he was not immediately aware of his injuries. As a fifteen year old child, CECIL SINGLETON was not emotionally or psychologically prepared for a sexual relationship with a grown man in his forties. As a compliant victim, CECIL SINGLETON did not become aware that he had suffered adverse psychological and emotional effects from KEVIN CLASH's sexual acts and conduct until 2012.

> CECIL SINGLETON did not become aware of his injuries, nor was he able to make a causal connection between his injuries and the sexual acts of KEVIN CLASH until 2012. CECIL could not reasonably have been expected to know that he had been injured and that KEVIN CLASH had caused his injuries until calendar year 2012.

(Singleton Am. Compl. ¶¶ 16-17).[5] If anything, the *S.M.* allegations are stronger, since unlike

Michel, Singleton alleged that he was *unaware* of his injuries rather than that victims sometimes

are unaware of or unable to communicate the *full extent* of their injuries. The Second Circuit,

assuming *arguendo* that the discovery rule could apply, nevertheless affirmed dismissal of the

complaint:

> Assuming without deciding that a discovery accrual rule applies to § 2255(b), we hold
> that the district court properly dismissed the actions as time-barred given that the
> plaintiffs' complaints failed to provide any reason why the plaintiffs were unable to
> discover their injuries prior to 2012. Under the discovery rule, a plaintiff's cause of action
> accrues when he discovers, or with due diligence should have discovered, the injury that
> is the basis of the litigation." The injuries that are the bases of litigation in this case are
> the alleged occurrences of sexual conduct in violation of a criminal statute enumerated
> under § 2255(a). The plaintiffs' complaints indicate that they were aware of this alleged
> conduct at the time that it occurred, which the plaintiffs concede was more than six years
> before they filed suit. While the plaintiffs assert that they "could not reasonably have
> been expected to know" that they suffered psychological harm as a result of the alleged
> abuse prior to 2012, they provide no explanation for this assertion. Because the plaintiffs
> failed to provide any basis for finding that they exercised "due diligence" in uncovering
> their injuries, assuming *arguendo* that the psychological harm constituted the plaintiffs'
> legal injury for purposes of § 2255(a), the discovery rule cannot apply.

*S.M.,* 558 Fed. App'x at 45. This reasoning applies in Michel's case, because, like S.M., he fails

to make any allegations about how it could be that he failed to know that he was injured: his

vague statements about how some sexual abuse victims respond to abuse goes only to knowledge

of the *full extent* of the injury, not to the *existence* of the injury.

        b.    <u>Equitable Tolling Does Not Apply.</u>

"Equitable tolling is applicable only in rare and exceptional circumstances, where it is

necessary as a matter of fairness." *Ellul v. Congregation of Christian Bros.,* 2014 WL 6863587,

at *7 (2d Cir. Dec. 8, 2014) (citation and internal quotation marks omitted). Michel would have

to show that he "has been pursuing his rights diligently" and that "some extraordinary

---

[5] The allegations of the other two consolidated plaintiffs were substantially similar. (S.M. Compl. 21-22; Kiadii
Compl. ¶¶ 15-16). True copies of the three complaints are attached to this memorandum as Exhibits A to C.

circumstance stood in [the] way" of his bringing a lawsuit. *Id.* (citation and internal quotation marks omitted).

Michel makes a conclusory allegation that Father Carrier misrepresented and concealed from Michel the fact that sexual abuse is harmful and wrongful. (Compl. ¶ 109). Under federal common law, a statute of limitation may be tolled on account of fraudulent concealment "if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch v. Christie's Int'l plc,* 699 F.3d 141, 157 (2d Cir. 2012) (citation and internal quotation marks omitted). Rule 9(b) requires that when pleading fraud, "a party must state with particularity the circumstances constituting fraud …." Fed. R. Civ. P. 9(b). This requirement applies when a plaintiff pleads fraudulent concealment in order to toll a statute of limitations. *See Doe v. Order of St. Benedict,* 836 F. Supp. 2d 872, 877 (D. Minn. 2011) (holding in the absence of allegations regarding the time, place, or content of any false representations, complaint failed to meet the standard of Rule 9(b) and thus had failed to make allegations necessary to support tolling the statute of limitations in a sex abuse case); *see also Caputo v. Pfizer, Inc.,* 267 F.3d 181, 191 (2d Cir. 2001) (Rule 9(b) applies to pleading fraudulent concealment in ERISA breach of fiduciary duty case); *Summerill v. Terminix, Inc.,* 637 F.3d 877, 880 (8th Cir. 2011) (Rule 9(b) applies to allegations of fraudulent concealment for tolling purposes); *Epstein v. C.R. Bard, Inc.,* 460 F.3d 183, 189-90 (1st Cir. 2006) (same); *Herm v. Stafford,* 663 F.2d 669, 683-84 (6th Cir. 1981) (same).

Michel's complaint fails in every way to satisfy the requirement of Rule 9(b). It does not allege the content of the supposedly fraudulent misrepresentation or the time and place it was

made. *See Cohen v. S.A.C. Trading Corp.,* 711 F.3d 353, 359 (2d Cir. 2013) (Rule 9(b) requires the complaint to specify the time, place, speaker and content of the alleged misrepresentations, among other things). "Generalized or conclusory allegations of fraudulent concealment are insufficient to toll a statute of limitations." *Singh v. Wells,* 445 Fed. App'x 373, 378 (2d Cir. 2011) (citing *Armstrong v. McAlpin,* 699 F.2d 78, 90 (2d Cir. 1983)).

c.      Equitable Estoppel Does Not Apply.

For similar reasons, Michel could not possibly show that Father Carrier is equitably estopped to plead the statute of limitations. To establish grounds for equitable estoppel, Michel would have to show that while he knew of his cause of action, Father Carrier's conduct somehow caused him to delay in bringing his claim. *See Cerbone v. Int'l Ladies' Garment Workers' Union,* 768 F.2d 45, 49-50 (2d. Cir. 1985). More specifically, he would have to show that Father Carrier made "a definite misrepresentation of fact" and that he had reason to believe Michel would rely on it; and he would have to show that he reasonably did rely on the misrepresentation. *Ellul,* 2014 WL 6863587, at *7. For example, courts have applied the doctrine when a defendant misrepresents the length of the limitation period to the plaintiff, or when the defendant tells the plaintiff that he intends to settle the claim in order to lull the plaintiff into delaying suit. *See Cerbone,* 768 F.2d at 50. While Michel attempts to allege that Father Carrier prevented him from knowing that he had been injured or that Father Carrier's alleged conduct was wrongful, he makes no attempt to allege that Father Carrier did anything to dissuade him from suing. Indeed, he makes no allegation that he communicated with Father Carrier at all, other than the unspecified alleged misrepresentation that supposedly prevented Michel from knowing that he had been injured.

13

B.      Count Twelve Fails To State A Claim On Which Relief Can Be Granted.

1.      Standard of Decision

Count Twelve alleges a violation of 18 U.S.C. § 1591(a). Section 1591(a) provides, in

pertinent part:

> Whoever knowingly—
>
> > (1) in or affecting interstate or foreign commerce, or within the special maritime
> > and territorial jurisdiction of the United States, recruits, entices, harbors,
> > transports, provides, obtains, or maintains by any means a person …
>
> Knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud,
> coercion …, or any combination of such means will be used to cause the person to
> engage in a commercial sex act, or that the person has not attained the age of 18 years
> and will be caused to engage in a commercial sex act, shall be punished …

18 U.S.C. § 1591(a). In 18 U.S.C. § 1595(a), Congress created a civil remedy for violation of

this criminal statute:

> Any individual who is a victim of a violation of this chapter may bring a civil action
> against the perpetrator (or whoever knowingly benefits, financially or by receiving
> anything of value from participation in a venture which that person knew or should have
> known has engaged in an act in violation of this chapter) in an appropriate district court
> of the United States …

18 U.S.C. § 1595(a).

The question is whether there are "sufficient plausible allegations to permit … an

inference" that Father Carrier violated § 1591(a)(1). That is, the complaint must "contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* (citation omitted). The complaint must do more than create a "sheer possibility that a

defendant has acted unlawfully." *Id.* While the Court must accept as true all allegations of *fact* in

14

the complaint for purposes of a motion to dismiss, it need not accept as true the legal conclusions

stated in the complaint. *Id.* "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.* (citation omitted). Rather, the plaintiff must

show that his allegations "possess enough heft" to establish an entitlement to relief.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

> 2.  Count Twelve Fails To State A Claim Because The Allegations Involve Conduct
>     That Took Place Solely In Haiti, And § 1591 Does Not Reach Extraterritorial
>     Conduct.

> a.  The Statute Had No Extraterritorial Application.

> It is a longstanding principle of American law that legislation of Congress, unless a
> contrary intent appears, is meant to apply only within the territorial jurisdiction of the
> United States. … Thus, unless there is the affirmative intention of the Congress clearly
> expressed to give a statute extraterritorial effect, we must presume it is primarily
> concerned with domestic conditions. … **When a statute gives no clear indication of an
> extraterritorial application, it has none.**

*Morrison v. Nat'l Australia Bank Ltd.,* 561 U.S. 247, 255 (2010) (citations and internal quotation

marks omitted, emphasis supplied). Since 2003, § 1591(a)(1) has applied to persons who act "in

or affecting **interstate or foreign commerce**, or within the special maritime and territorial

jurisdiction of the United States." 18 U.S.C. § 1591(a)(1) (emphasis supplied). But as *Morrison*

makes clear, "even statutes that contain broad language in their definitions of 'commerce' that

expressly refer to '*foreign* commerce' do not apply abroad." *Morrison,* 561 U.S. at 262-63

(citation and internal quotation marks omitted).

*Morrison* itself involved § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §

78j(b). That statute proscribes the use of any manipulative or deceptive device or contrivance by

"any means or instrumentality of interstate commerce" in connection with the purchase or sale of

securities. The Act defines interstate commerce to include foreign commerce: "The term

'interstate commerce' means trade, commerce, transportation, or communication among the

several States, or between any foreign country and any State, or between any State and any place or ship outside thereof." Securities Exchange Act § 3(a)(17), 15 U.S.C. § 78c(17). Thus, just like § 1591(a)(1), the Exchange Act applies both to interstate commerce and to foreign commerce. But as the Supreme Court held, this was not enough to indicate an intention that the statute should apply extraterritorially. The purpose of the statute's inclusion of foreign commerce was simply to proscribe the use of instrumentalities of commerce between the United States and foreign countries by, e.g., "an issuer based abroad, whose executives approve the publication in the United States of misleading information affecting the price of the issuer's securities traded on" a U.S. stock exchange. *Morrison,* 561 U.S. at 263 n.7.

Similarly, the RICO Act makes it unlawful for racketeers to use their racketeering income to operate an enterprise "which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).[6] Yet it is clear that this language is insufficient to show a Congressional intent to proscribe violations of the RICO Act outside of the United States. The Second Circuit has expressly rejected the argument that the references to foreign commerce in the statute are sufficient to show Congressional intent, in light of *Morrison. See Norex Petroleum Ltd. v. Access Indus., Inc.,* 631 F.3d 29, 32-33 (2d Cir. 2010). The Second Circuit has reached the same conclusion with regard to the wire fraud statute, 18 U.S.C. § 1343, and the Travel Act, 18 U.S.C. § 1952, both of which include references to foreign commerce. *See European Community v. RJR Nabisco, Inc.,* 764 F.3d 129, 140-41 (2d Cir. 2014). We know of no case, post-*Morrison,* that holds that statutory language proscribing acts in interstate or foreign commerce is sufficient to evidence a congressional intent to apply the statute extraterritorially.[7]

---

[6] The other prongs of the RICO statute also refer to interstate and foreign commerce. *See* 18 U.S.C. § 1962(b), (c).
[7] The Ninth Circuit may be an exception to some extent. In *Love v. Associated Newspapers, Ltd.,* 611 F.3d 601, 612 n.6 (9th Cir. 2010), the Ninth Circuit, following its own precedents, held that despite *Morrison,* the Lanham Act did

Of course, even after *Morrison,* courts will hold that a statute applies extraterritorially when Congress has expressed an intent that it should. For example, in *United States v. Weingarten,* 632 F.3d 60, 64-65 (2d Cir. 2011), the court held that § 2423(b) applies extraterritorially, because the statute "manifestly expresses Congress's concern with conduct that occurs overseas" by criminalizing conduct that would violate other statutes "if [it] occurred in the special maritime and territorial jurisdiction of the United States." The statute's "use of the subjunctive makes clear that the law is aimed at travel preceding such acts, regardless of whether their planned accomplishment is within, or without, the borders of the United States." *Id.* at 65. There is no similar language in § 1591(a)(1). Indeed, in 2006, before *Morrison,* Congress recognized that the statute did not apply extraterritorially. It enacted 18 U.S.C. § 3271(a), which provides for extraterritorial jurisdiction in criminal cases under § 1591(a) where the defendant is "employed by or accompanying the Federal Government outside the United States." *See* Trafficking Victims Protection Reauthorization Act of 2005, Pub. L. 109-164, § 2(11), 119 Stat. 3557, 3559 ("Further measures are needed to ensure that United States Government personnel and contractors are held accountable for involvement with acts of trafficking in persons, *including by expanding United States criminal jurisdiction to all United States Government contractors abroad*"). And as we explain below, in 2008 Congress expanded the criminal extraterritorial reach of the statute even further.

In short, under *Morrison,* the fact that § 1591(a)(1) proscribes acts in foreign as well as interstate commerce is insufficient to show a Congressional intent to apply the statute

_____

have extraterritorial application because in the statute, "'commerce' is sweepingly defined as 'all commerce which may lawfully be regulated by Congress.'" *Love* is wrongly decided in light of *Morrison,* but in any case, § 1591(a)(1) lacks the language that the Ninth Circuit held saved the extraterritorial effect of the Lanham Act. In *United States v. McVicker,* 979 F. Supp. 2d 1154, 1171 n.1 (D. Or. 2013), the court limited *Morrison* to civil rather than criminal statutes. While we think that reading is wrong, it cannot govern in the Second Circuit in any case in light of *Norex,* since the RICO statute, like § 1591(a), imposes both criminal and civil liability.

extraterritorially, just as the fact that the Exchange Act and the RICO Act proscribe such acts is insufficient to show Congressional intent.

        b.      <u>Michel's Allegations Could Succeed Only If § 1591 Applied Extraterritorially.</u>

Even though § 1591(a)(1) does not apply extraterritorially, the Court must still ask whether applying the statute to Father Carrier's alleged conduct would require extraterritorial application of the statute. The presumption against extraterritoriality "is not self-evidently dispositive, but its application requires further analysis. For it is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States." *Morrison,* 561 U.S. at 266.

The key is to look at the events and relationships that were the focus of congressional concern when the statute was enacted. *See Morrison,* 561 U.S. 266-67. *Morrison* involved § 10(b) of the Exchange Act, which provides that it is unlawful for any person "to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, … any manipulative or deceptive device or contrivance …" The defendants in *Morrison* were alleged to have manipulated the issuer's financial models and made misleading statements while in the United States, even though the securities were traded abroad. But according to the Court, the focus of congressional concern was "not upon the place where the deception originated, but upon purchases and sales of securities in the United States." *Id.* at 266. The statute, after all, "does not punish deceptive conduct, but only deceptive conduct in connection with the purchase or sale of any security …" *Id.*

Congress could have had several events or relationships in mind as the focus of its concerns when it enacted § 1591(a)(1). Perhaps the focus of its concern was the exchange of

money in return for the sexual services of the victim. Perhaps its focus was the exploitative

sexual act itself. Perhaps its focus was the injury that the trafficking victim suffers. But whatever

focus Congress had in mind, on the allegations in Michel's complaint, all of the relevant events

happened in Haiti. There is no allegation that Father Carrier had any dealings with Michel, or

with any person alleged to have trafficked Michel, while he was in the United States. Nor is there

any allegation that Michel was ever in the United States.

Michel's case is a much clearer case for application of the presumption against

extraterritoriality than *Morrison.* In *Morrison,* while the conduct that was the focus of

Congress's concern took place abroad, some of the relevant conduct—for example, some of the

alleged fraudulent statements—occurred in the United States. Here, *all* of the alleged conduct—

the alleged commercial sex act, the alleged recruitment and enticement of Michel—took place in

Haiti. Michel's claim against Father Carrier in Count 7 under § 1591(a)(2)—his claim that Father

Carrier benefitted financially on account of *Perlitz's* violation of § 1591(a)(1)—present a closer

question, since, as in *Morrison,* some of the conduct alleged (for example, the receipt of money)

took place in the United States. But we are not now seeking dismissal of that claim.[8] Rather, we

are only seeking dismissal of the claim that alleges that Father Carrier, while in Haiti, recruited

or enticed Michel, knowing that he would be caused to engage in a commercial sex act in Haiti.

There is no nexus with the United States in this claim, and it therefore must be dismissed.

c.        The 2008 Enactment of 18 U.S.C. § 1596 Does Not Save the Claim.

In December 2008, Congress closed the gap in US law regarding trafficking occurring

abroad *in criminal cases* by enactment of 18 U.S.C. § 1596(a), a statute titled "Additional

jurisdiction in certain trafficking offenses," which provides:

---

[8] We expect to seek summary judgment on that claim at the appropriate time, once the factual record is developed.

> In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense … under section 1591 … if—
>
> (1) an alleged offender is a national of the United States …; or
>
> (2) an alleged offender is present in the United States, irrespective of the nationality of the alleged offender.

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 223, 122 Stat. 5044, 5071. However, the statute expressly applies only to "**offenses** … under section 1591," not to civil actions under § 1595, and thus it has no application here. *See United States v. Maynard,* 743 F.3d 374, 379 (2d Cir. 2014) (applying canon of construction that "to express or include one thing [in a statute] implies the exclusion of the other").

In any event, Michel does not allege any violations of the statute after 2005. The retroactivity analysis under *Landgraf* and *Enterprise* that we outlined above applies with full force here. The statute is silent about retroactivity. *See Velez v. Sanchez,* 693 F.3d 308, 325 (2d Cir. 2012) ("Nothing in the language of the TVPRA or its legislative history indicates that Congress intended retroactive application"). Moreover, application of the statute to pre-amendment conduct would have actual retroactive effect. The 2008 enactment of § 1596(a), if applied here, is plainly substantive and increases a defendant's liability for previously occurring conduct. *See Velez,* 693 F.3d at 325 (new civil remedy is impermissibly retroactive "because it increases a party's liability for previously occurring conduct"); *Vernon v. Cassadaga Valley Cent. Sch. Dist.,* 49 F.3d 886, 890 (2d Cir. 1995) ("[A]pplying *Landgraf* requires courts to determine whether a portion of a statute operates retroactively or prospectively, and, in connection with that determination, to resolve whether the statutory provision at issue is substantive or procedural").

The only court to consider whether § 1596(a) can permissibly be applied retroactively has concluded it cannot, precisely because the statute is substantive. *See Adhikari v. Daoud & Partners,* 994 F. Supp. 2d 831, 837-39 (S.D. Tex. 2014). Following *Morrison,* that court noted that although § 1596(a) is framed in jurisdictional terms, it is in fact a statute that expands the scope of liability. *Id.* at 839.

3.   The Complaint Does Not Allege A Violation Of The Statute, Because The Facts Alleged Do Not Involve Trafficking.

Even if there were no issue about extraterritorial jurisdiction, Michel has not alleged a violation of the statute, because he has alleged only that Father Carrier gave him things of value in return for sexual services. Of course, the person who buys the services of a prostitute commits a crime under state law if state law applies. *See* Conn. Gen. Stat. § 53a-83 (patronizing a prostitute); *Id.* § 53a-70 (sexual assault in the first degree—child under 13); *Id.* § 53a-71 (sexual assault in the second degree—child under 16). And a person who travels internationally for the purpose of having sex with a minor commits a federal crime under § 2423(b). Our purpose in drawing this distinction is simply to illustrate the ways in which the conduct Michel has alleged falls outside the scope of § 1591(a)(1), which is aimed at trafficking, not to assert that engaging in a commercial sex act with a minor cannot be punished under other statutes.

Of the hundreds of reported cases citing § 1591(a)(1), we have found none that hold that the statute applies where the allegation is simply that the defendant pays the victim for sex, with no third party involved. We have found a handful of cases where it appears the defendant was *charged* under § 1591(a)(1) on such allegations, but in those cases the defendant ended up pleading guilty or being convicted only under another statute, such as § 2423. *See United States v. Berrios-Berrios,* 2014 WL 3513233 (D.P.R. Jun. 13, 2014) (defendant pleaded guilty only under § 2423); *Nelson v. United States,* 2014 WL 2048096 (N.D. Tex. May 16, 2014) (same);

*United States v. Lustig,* 3 F. Supp. 3d 808 (S.D. Cal. 2014) (defendant convicted only under 18 U.S.C. § 1952).[9] We found civil cases in which a defendant was alleged to have violated the statute where there was perhaps no third-party trafficker, but there the claims were dismissed for failure to state a claim on other grounds. *See Kelsey v. Goldstar Estate Buyers Corp.,* 2014 WL 1155253 (D. Or. Mar. 21, 2014); *Ditullio v. Boehm,* 662 F.3d 1091 (9th Cir. 2011).[10]

The overwhelmingly typical fact pattern in cases involving § 1591(a)(1) involves a defendant who pays a third party—the trafficker, often described as a "pimp"—for the sexual services of the victim. *See, e.g., United States v. Wilmer,* 2014 WL 7143387, at *1 (9th Cir. Dec. 16, 2014) (victims "sold for sex"); *United States v. Brinson,* 772 F.3d 1314 (10th Cir. 2014) (defendant prostituted victim); *United States v. Pringler,* 765 F.3d 445 (5th Cir. 2014) (defendant abetted his girlfriend, who prostituted the victim); *United States v. Bell,* 761 F.3d 900 (8th Cir. 2014) (defendant prostituted victim); *United States v. Phea,* 755 F.3d 255 (5th Cir. 2014) (defendant prostituted victim); *United States v. Britton,* 567 Fed. App'x 158 (3d Cir. 2014) (defendant prostituted victim); *United States v. Mozie,* 752 F.3d 1271 (11th Cir. 2014) (defendant sold sex with young girls).

There are also a few cases in which the defendant was the person who paid for the sexual services of the victim (the "john"), but he made the payment to the person who was trafficking

---

[9] In these cases and in other reported cases involving § 1591(a), it was necessary to look to documents such as the plea agreement or trial briefs to determine the substance of the charges, because the report of the decision itself does not make the factual allegations clear.

[10] *Ditullio* calls for additional explanation. There, the defendant in the civil case had earlier pleaded guilty to conspiracy under 18 U.S.C. § 371 where the object of the conspiracy was to violate § 1591(a)(1). The conviction was never tested on appeal. The basic factual claim was that the conspirators plied girls with illegal drugs and then had sex with them. Most of the court papers are not available via PACER online due to the age of the case. A contemporaneous report shows, however, that part of the crime charged included payments to third parties, the girls' mothers, for the girls' sexual services: "In some cases, prosecutors say, mothers of the teenage girls were given cocaine, crack or money in exchange for allowing their daughters to 'party' with [the defendant]." Tataboline Brant, *Jury Indicts Businessman in Drug, Conspiracy Case,* Anchorage Daily News, Jan. 23, 2004, at A1.

the victim, not to the victim herself.[11] *See, e.g., United States v. Jungers,* 702 F.3d 1066 (8th Cir. 2013). We think *Jungers* is wrongly decided—we think the statute should be construed to apply only to traffickers, not to buyers.[12] But even in *Jungers,* the claim was that the defendant paid the trafficker, not the victim. That is not the claim here.

There are other fact patterns, too. For example, in *United States v. O'Connor,* 2011 WL 2417143, at *15 (2d Cir. Jun. 16, 2011), the claim was that the defendant provided the victim to a pornographer so that he could produce child pornography for sale. And in *United States v. Paris,* 2007 WL 3124724 (D. Conn. Oct. 24, 2007), the claim was that the defendant provided a minor victim to a phone sex service that had paying customers. But in all of these cases, the claim is that the defendant either bought or sold the victim's sexual services in a transaction with a third party—*not* in a transaction with the victim.

These precedents are not accidental. According to the statute, a "commercial sex act" is "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). This is precisely what the complaint alleges happened between Michel and Father Carrier. Yet as even *Jungers,* the Eighth Circuit case imposing liability on buyers as well as sellers of commercial sex, recognizes, "§ 1591 does not criminalize engaging in a commercial sex act with a minor." *Jungers,* 702 F.3d at 1072.

Congress made its purpose very clear in the text of the Trafficking Victims Protection Act of 2000 (the statute that initially enacted § 1591) itself. "The purposes of this division are to combat *trafficking in persons,* a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment *of traffickers,* and to

---

[11] The charge was *attempted* sex trafficking of a minor. The defendant sought to make the payment to an undercover law enforcement officer. *Ditullio* may also fall into this category.
[12] We reserve the right to argue that point later in the case if necessary.

protect their victims." Trafficking Victims Protection Act of 2000, Pub. L. 106-386, § 103(9), 114 Stat. 1464, 1470 (emphasis supplied). Trafficking includes but is not limited to "the sex industry." *Id.* § 102(3), 114 Stat. at 1466. Traffickers "lure women and girls into their networks." *Id.* § 102(4), 114 Stat. at 1466.[13] They "buy children from poor families and sell them into prostitution or into various types of forced or bonded labor." *Id.* They "often transport victims from their home communities to unfamiliar destinations." *Id.* § 102(5), 114 Stat. at 1466. Trafficking is "increasingly perpetrated by organized, sophisticated criminal enterprises" and is "the fastest growing source of profits for organized criminal enterprises worldwide." *Id.* § 102(8), 114 Stat. at 1467.

We make no strong claim about the use of congressional declarations of a statute's purpose in construing the statute. *See Price v. Forrest,* 173 U.S. 410, 427 (1899) ("the preamble may be referred to in order to assist in ascertaining the intent and meaning of a statute fairly susceptible of different constructions"). It is clear, though, that Congress's stated purpose was to deter and punish those we would think of in everyday speech as human traffickers—those who, for their own profit, coerce others to work in the sex trade. And it is clear that this purpose is consistent with the operative text of the statute, which plainly does not criminalize the kind of commercial sex act that Michel alleges occurred in this case.

---

[13] "Traffickers primarily target women and girls," *Id.,* but of course, boys can also be victims of human trafficking.

<u>CONCLUSION</u>

For the foregoing reasons, Counts 8 and 12 must be dismissed for failure to state a claim on which relief can be granted.

Respectfully submitted,

PAUL E. CARRIER, S.J.

By his attorneys:

/s/ Theodore J. Folkman
Timothy P. O'Neill (phv04968)
Theodore J. Folkman (phv04969)
Amanda Moger Rettig (phv04967)
MURPHY & KING, P.C.
One Beacon Street
Boston, Mass. 02108
(617) 423-0400
toneill@murphyking.com
tfolkman@murphyking.com
arettig@murphyking.com

Gene S. Winter (ct05137)
Benjamin C. White (ct27211)
ST. ONGE STEWARD JOHNSTON & REENS LLC
986 Bedford St.
Stamford, Conn. 06905
(203) 324-6155
gwinter@ssjr.com
bwhite@ssjr.com

Dated: January 20, 2015

<u>CERTIFICATE OF SERVICE</u>

I certify that on January 20, 2015, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by first-class mail to all parties who are unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

I further certify that on January 20, 2015, I caused a copy of the foregoing document to be served by first-class mail, postage prepaid, on counsel for the defendants, Douglas Perlitz, and on the Haiti Fund, Inc., who are unable to accept electronic service:

David T. Grudberg, Esq.
Carmody & Torrance, LLP
195 Church St.
PO Box 1950
New Haven, Conn. 06509-1950

Michael McCooey
Chairman, Haiti Fund, Inc.
475 Polly Park Road
Rye, N.Y. 10580

/s/ Theodore J. Folkman

682557

26