## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERVIL ST. LOUIS, A/K/A ST. LOUIS GERVIL,<br><br>Plaintiff,<br><br>v.<br><br>DOUGLAS PERLITZ; FATHER PAUL E. CARRIER, S.J.; HOPE E. CARTER; HAITI FUND, INC.; FAIRFIELD UNIVERSITY; THE SOCIETY OF JESUS OF NEW ENGLAND; SOVEREIGN MILITARY HOSPITALLER ORDER OF ST. JOHN OF JERUSALEM OF RHODES AND OF MALTA, AMERICAN ASSOCIATION, U.S.A., A/K/A ORDER OF MALTA, AMERICAN ASSOCIATION, USA; JOHN DOE ONE; JOHN DOE TWO; JOHN DOE THREE; JOHN DOE FOUR; JOHN DOE FIVE; JOHN DOE SIX; AND JOHN DOE SEVEN,<br><br>Defendants. | LEAD CIVIL ACTION NO.:<br><br>3:13-cv-01132 (RNC)<br><br>Consolidated with:<br><br>3:13-cv-1225   3:13-cv-1640<br>3:13-cv-1269   3:13-cv-1641<br>3:13-cv-1437   3:13-cv-1642<br>3:13-cv-1480   3:13-cv-1644<br>3:13-cv-1626   3:13-cv-1645<br>3:13-cv-1627   3:13-cv-1647<br>3:13-cv-1628   3:13-cv-1648<br>3:13-cv-1629   3:13-cv-1701<br>3:13-cv-1630   3:13-cv-1767<br>3:13-cv-1631   3:13-cv-1768<br>3:13-cv-1632   3:13-cv-1769<br>3:13-cv-1633   3:13-cv-1881<br>3:13-cv-1634   3:13-cv-1904<br>3:13-cv-1635   3:13-cv-1906<br>3:13-cv-1636   3:13-cv-1907<br>3:13-cv-1637   3:14-cv-0125<br>3:13-cv-1638   3:14-cv-0668<br>3:13-cv-1639   3:14-cv-0815 |
| This document applies to:<br>*Clervil v. Perlitz et al.*, 3:13-cv-1904 (RNC) | FEBRUARY 13, 2015 |

## DEFENDANT FAIRFIELD UNIVERSITY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF EMMANUEL CLERVIL'S MOTION FOR VOLUNTARY DISMISSAL

Defendant Fairfield University (the "University") respectfully submits this memorandum in opposition to plaintiff Emmanuel Clervil's motion for voluntary dismissal.

### PRELIMINARY STATEMENT

Plaintiffs' counsel moved for leave to amend Clervil's complaint to add new allegations that Clervil had been abused by Father Carrier, in contrast to his earlier sworn statements that he had suffered no such abuse. When pressed by defense counsel as to the timing of the new

**ORAL ARGUMENT REQUESTED**

allegations, Clervil submitted a sworn declaration stating that he had not previously told the truth because he thought that Father Carrier "had arranged for Attorney Mitchell Garabedian" to represent him and thought it advisable not to "tell the truth about what Father Paul" did to him. After the Court expressed some concern about this explanation at the December 16, 2014 telephonic status conference, plaintiffs' counsel elected not to proceed with the motion to amend and instead moved for voluntary dismissal of Clervil's complaint without prejudice.

If Clervil no longer wishes to pursue his claims, then the University has no objection to an order dismissing his lawsuit. But in order to prevent prejudice to the defendants, the Court should impose such terms as it considers proper. *See* Fed. R. Civ. P. 41(a)(2). First, the dismissal should be with prejudice, in order to prevent gamesmanship and vexatious conduct and because Clervil's explanation for the proposed dismissal is inadequate. *Infra*, at 7-13. Second, the order of dismissal should include additional conditions to ensure Clervil's full and continuing compliance with his discovery obligations, including a condition requiring Clervil to make himself available for a deposition and a condition requiring him to produce all documents responsive to defendants' production requests, including otherwise privileged communications subject to the crime-fraud exception. *Infra*, at 13-17.

**BACKGROUND**

In June of 2013, the University and other defendants entered into a settlement with 24 former students of Project Pierre Toussaint ("PPT"), each of whom claimed to have been sexually abused by the school's founder, Douglas Perlitz. Most of these original plaintiffs were among the victims identified by the government in its extensive criminal investigation into Perlitz's activities in Haiti. At a July 2013 press conference, the plaintiffs' attorney announced that the total value of this settlement was $12 million, with each of the original plaintiffs taking

an equal $500,000 share. *Mitchell Garabedian YouTube Channel*, "Settlement Reached in Haiti Sexual Abuse Cases," at 4:31 – 4:50;[1] *see also* "$500K to each boy in Haiti sex cases," *Le Floridien: South Florida's Most Trusted Haitian Newspaper* (July 1-15, 2013).[2] Since that announcement, 47 more plaintiffs (and counting) have come forward to claim that they too suffered sexual abuse in Haiti at the hands of Perlitz, and plaintiffs' counsel claims that a total of 139 Haitian individuals have now engaged them with regard to claims of sexual abuse. One of the additional plaintiffs is Emmanuel Clervil.

### A.     Mr. Clervil's Original Allegations

Mr. Clervil filed his complaint in December of 2013, in a pleading that was signed by counsel and was subject to Rule 11's requirement of a reasonable pre-suit investigation. No. 3:13-cv-1904, Dkt. 1. Like every other complaint filed in these consolidated cases, Clervil's pleading consisted almost entirely of boilerplate allegations concerning the founding of PPT (*e.g., id.* at ¶ 29), the support that the University and other defendants provided PPT (*id*. ¶¶ 35-60), and a general description of Perlitz's alleged abuse (*id*. ¶¶ 61-98). *Compare* 3:13-cv-1132, Dkt. 1 ¶¶ 29, 35-60, 61-98 (restating the same allegations verbatim). Included within this form complaint was a single case-specific allegation asserting that Perlitz had sexually abused Clervil sometime "[i]n the first half of 2008." 3:13-cv-1904, Dkt. 1 ¶ 99.

Based on this alleged abuse, Clervil sought damages against Perlitz, the University, and several other defendants, one of whom was Father Paul Carrier. *Id*. ¶¶ 1, 8-20. Clervil's complaint claimed that Father Carrier "assisted" Perlitz in funding and operating PPT. *Id.* ¶¶ 1, 4, 27, 29, 35, 64, 114. The complaint also accused Father Carrier of having carried on a

---

[1] *Available at* https://www.youtube.com/channel/UC5W_s0sANKAbWgS-q0shRyg.

[2] *Available* at http://www.lefloridien.com/actualites_images/LF295.pdf.

consensual sexual relationship with Perlitz. *Id*. ¶¶ 26, 130. At no point did Clervil make any claim of sexual abuse by Father Carrier.

In February of 2014, the defendants served interrogatories on all plaintiffs in the consolidated cases. Plaintiffs obtained an extension of time so that counsel could travel to Haiti and conduct interviews, and Clervil served his sworn responses in July of 2014. *See* Dkt. 439-1. Clervil's responses again alleged that Perlitz sexually abused him on at least two occasions. *Id.*, No. 19. The timing of the alleged abuse shifted, however, from "the first half of 2008," *see* Dkt. 1 ¶ 99, to "in or around 2005 to 2007." *See* Dkt. 439-1, No. 19.

Clervil's interrogatory responses also discussed Father Carrier and his conduct. According to the responses, Clervil "believe[d] Pere Paul should have known" about Perlitz's abuse. *Id.*, No. 27. But Clervil made no claim that Father Carrier had actual knowledge of the abuse, nor did Clervil raise any claim that Father Carrier participated in the abuse. *Id.*, Nos. 51-54. When Clervil was asked if there was anyone—other than Perlitz—who had ever abused or molested him, Clervil answered: "No one." *Id.*, No. 21. He swore to the truth of all these answers "under the pains and penalties of perjury." *Id.* at 52.

**B.  Clervil Contradicts His Prior Sworn Statements And Accuses Father Carrier Of Sexual Abuse**

Two months after providing these answers, Clervil altered his story. At a September 2014 hearing, plaintiffs' counsel informed the Court that they had "just returned from Haiti this past weekend" and had received "clear reports" of sexual abuse committed by Father Carrier. Sept. 23 Tr. at 56 (attached as Ex. A). Ten days later, plaintiffs' counsel served the defendants with supplemental interrogatory responses from Mr. Clervil. *See* Dkt. 439-2. In them, Clervil retracted his claim that "[n]o one" other than Perlitz had abused him. The truth, Clervil now claimed, was that he had also been "sexually abused by Pere Paul" on two occasions "in or

-4-

around 2006 or 2007." *Id.*, No. 21. Once again, Clervil swore under penalty of perjury that these responses were "true and accurate to the best of [his] abilities." *Id.* at 5, 8.

### C. Clervil Moves For Leave To Amend And Insinuates That He Had Repressed The Memories Of The Abuse

Clervil then moved for leave to amend his complaint to add allegations of abuse by Father Carrier and to assert six new causes of action, including four new counts against the University. Dkt. 363-1 (counts 8 to 13). Because Clervil's proposed amendment came more than three months after the deadline for amending pleadings under this Court's scheduling order, Clervil was required to demonstrate good cause and reasonable diligence excusing the tardy amendment. Fed. R. Civ. P. 16(b)(4); *see generally Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). The motion attempted to satisfy this burden by attributing the delay to repressed memories of the painful and traumatic events of his abuse:

> [V]ictims of childhood sexual abuse often have difficulty remembering or communicating to others the abuse they suffered. Moreover, it could reasonably be expected that the emotional impact of abuse by a priest could be greater than the impact of Perlitz's abuse alone, making it harder for a victim to acknowledge of [sic] communicate that abuse. . . . Placed in this context, Plaintiff has not been dilatory in coming forward with the abuse by Father Carrier.

Dkt. 363 at 5; *see also id.* at 3.

By signing this motion and filing it on Clervil's behalf, plaintiffs' counsel certified that its claims were reasonably supported and free of any "false [or] misleading . . . representations to the court." *See Williamson v. Recovery Ltd. P'ship*, 5 42 F.3d 43, 51 (2d Cir. 2008).

### D. When Pressed To Substantiate His Repressed-Memory Argument, Clervil Abandons It And Claims To Have Perjured Himself In His Initial Interrogatory Responses

Several defendants objected to Clervil's motion. They pointed out the absence of any evidence to substantiate Clervil's claims of repressed memories. Dkt. 439 at 5-6; Dkt. 438 at 3-

-5-

4. Defendants also noted that the phrasing of the motion—"it *could* reasonably be expected that the emotional impact of abuse by a priest *could* . . . make it harder . . . .," *see* Dkt. No. 363 at 5—seemed designed to avoid making any direct claim that Clervil actually experienced difficulties remembering the alleged abuse. Dkt. 439 at 5-6; Dkt. 438 at 3-4.

In response, Clervil's reply brief abandoned his repressed-memory argument altogether. Instead, Clervil submitted a sworn declaration in which he claimed to have willfully concealed Father Carrier's alleged abuse. Dkt. 452-1 ¶ 4. According to this new declaration, Clervil's earlier claim that "[n]o one" other than Perlitz had abused him (*see* Dkt. 439-1, at 21) was a lie. Dkt. 452-1 ¶ 4. Clervil explained that, at the time of his initial interrogatory answers, he was under the impression that "Father Paul Carrier had arranged for Attorney Mitchell Garabedian" to represent him. *Id.* Since "Father Paul had sent the lawyers," Clervil thought it advisable not to "tell the truth about what Father Paul" did to him. *Id.* Plaintiff's reply brief argued that this explanation constituted "good cause . . . to permit [Clervil] to amend his complaint." Dkt. 452 at 2.

### E. Plaintiff Presses For A Decision On The Motion To Amend, But Then Withdraws The Motion And Seeks Voluntary Dismissal In Response To This Court's Comments.

This Court first had occasion to address Clervil's motion to amend during a telephonic conference held in December of 2014. At the time of this conference, plaintiffs' counsel did not express any interest in withdrawing Clervil's motion or in dismissing the lawsuit. Quite the contrary, plaintiffs' counsel informed the Court that Clervil was eager to proceed with the motion. Dec. 16 Tr. at 5-6 (attached as Ex. B). And when counsel for Father Carrier expressed a desire to hold off on oral argument until a later date, plaintiffs' counsel reiterated that Clervil's

preference was for a prompt ruling. *Id*. at 7 (requesting that "if there is to be argument, that it be sooner rather than later because . . . we need to know").

The Court agreed to hold off on the motion until a separate oral argument could be scheduled. Before moving on to other matters, however, the Court briefly commented on the motion's substance:

> I'm concerned that the record reflects contradictory answers to interrogatories and the proffered explanation is that the plaintiff was under a misapprehension that it was okay to conceal information, and I take seriously the statement by defense counsel that the Court should not countenance this.

*Id.* at 8.

With that, the Court stated that it would "look forward to discussing" the matter further at oral argument. *Id.* However, before that argument could be held, plaintiffs' counsel sent the defendants an e-mail in early January informing them that Mr. Clervil had decided to withdraw his motion and that he would be seeking voluntary dismissal of his complaint without prejudice.

## **ARGUMENT**

### I. ANY DISMISSAL OF CLERVIL'S COMPLAINT SHOULD BE WITH PREJUDICE.

Voluntary dismissal without prejudice is "not a matter of right." *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990). Once an answer is filed, dismissal is available "only by court order," and only on "terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Whether to dismiss the case, and what conditions to impose, are subject to the Court's sound discretion. *See Zagano*, 900 F.2d at 14. Among the "[f]actors relevant" in considering a motion to dismiss without prejudice are "the plaintiff's diligence in bringing the motion," "any undue vexatiousness on the plaintiff's part," the progress of the suit, avoidance of "duplicative . . . relitigation," and "the adequacy of plaintiff's explanation for the need to dismiss." *See id*. at 14.

Here, the balance of these so-called *Zagano* factors compels the conclusion that any dismissal of this action must be with prejudice.

### A.     Dismissal With Prejudice Is Essential To Prevent Gamesmanship And Vexatious Conduct.

The need to prevent vexatious litigation conduct is an important factor in any motion seeking voluntary dismissal.  *See id.*  And this factor is particularly crucial in a case like this one, where granting the motion would effectively permit the plaintiff to evade an "adverse decision" by the Court.  *Manti Transp. v. Assocs. Commer. Corp.*, 2002 U.S. Dist. LEXIS 3738, *14-15 (S.D.N.Y. 2002).

In numerous cases, courts have recognized that plaintiffs should not be allowed to use Rule 41(a)(2) dismissals as a means of avoiding unfavorable rulings.  For example, courts in this Circuit have rebuffed efforts to procure voluntary dismissals that would circumvent the court's "refus[al] to grant an adjournment of trial." *See Greguski v. Long Island R.R.*, 163 F.R.D. 221, 223-24 (S.D.N.Y. 1995) ("where the Court refused to grant an adjournment of trial, Greguski proposed a Rule 41(a)(2) dismissal as an easy 'substitute.' I consider that substitute too easy."). It is also settled law that "leave to discontinue without prejudice" should not be granted "for the sole purpose of overcoming inadvertent failure to make a timely jury demand."  *See, e.g., Noonan v. Cunard Steamship Co.*, 375 F.2d 69, 71-72 (2d Cir. 1967).  And, perhaps most important for present purposes, courts have recognized that plaintiffs cannot "resort to a Rule 41(a)(2) dismissal" as a means of "nullify[ing] . . . . [the] denial of their motion to amend their complaint."  *Barksdale v. Onondaga County Sheriff's Dep't*, 2000 U.S. Dist. LEXIS 8648, *10-11 (N.D.N.Y. 2000) ("Dismissal without prejudice should not be allowed simply to relieve plaintiffs of the effects of their delay or the impact of an adverse order.").

These decisions mandate rejection of Clervil's attempt to secure a dismissal without prejudice here. In October of last year, Clervil moved for leave to amend based on new allegations of abuse by Father Carrier, and Clervil continued to press for a decision on his proposed amendment both before and during this Court's December 2014 status conference. *See* Ex. B at 5-6 (counsel expressing plaintiff's desire for a prompt decision on the motion). At that status conference, however, this Court shared with the parties its concerns about Clervil's grounds for his proposed amendment—in particular, the Court was troubled by Clervil's claim that his initial interrogatory answers willfully concealed Father Carrier's abuse because (at the time) Clervil thought Carrier had arranged for his legal representation. Doc. No. 452-1 ¶ 4. The Court signaled at the December conference that, in light of its concerns, it might well be inclined to deny the motion for leave to amend. *See* Ex. B at 8 ("THE COURT: . . . . I take seriously the statement by defense counsel that the Court should not countenance this."). Following the Court's comments, Clervil abandoned his motion to amend and filed a new motion for voluntary dismissal of his complaint, without prejudice and without any restrictions on his ability to refile.

This sequence of events raises a strong inference that Clervil is attempting to use Rule 41(a)(2) to "avoid an adverse decision" on his proposed amended pleading. *See Manti*, 2002 U.S. Dist. LEXIS 3738, *14-15; *Barksdale*, 2000 U.S. Dist. LEXIS 8648, *10-11. If this Court were to dismiss Clervil's claims without prejudice, then Clervil would have free license to file a new complaint immediately, with all of his proposed amendments included and without any showing of "good cause." *Compare* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Nothing in Rule 41(a)(2) supports this blatant end run around both Rule 16 and this Court's own comment at the December conference recognizing that perjury does not qualify as "good cause." To permit this sort of evasion of

established standards governing amendment of pleadings would be improper and would result in clear prejudice to the defendants' legal rights. *See Barksdale*, 2000 U.S. Dist. LEXIS 8648, *10-11.

### B. Clervil's Explanation Of His Need For Dismissal Is Inadequate.

The conclusion that dismissal here should be with prejudice is further supported by Clervil's patently inadequate explanation of his reasons for seeking voluntary dismissal. *See, e.g., Kregg v. Am. Suzuki Motor Corp.*, 2008 U.S. Dist. LEXIS 119434, *13 (W.D.N.Y. 2008) ("The last of the *Zagano* factors is determinative in this case, since plaintiff has not offered a legitimate explanation for seeking dismissal . . . other than to prejudice the Suzuki defendants").

According to his motion, Clervil seeks dismissal of his complaint because he is a "twenty-two year[] old . . . Haitian citizen with limited education and understanding of legal procedures and the obligations that accompany them." *See* Dkt. 495 at 1. Even on its own terms, this explanation is vacuous. It does nothing to distinguish Clervil from any of the other plaintiffs in this case, and it conveys no meaningful information about Clervil's actual reasons for seeking voluntary dismissal.

That aside, the more fundamental problem with Clervil's explanation is that it does not even attempt to explain Clervil's sudden *switch* in his desire to prosecute this case. At the time of the December 2014 status conference, Clervil was no less a "twenty-two year[] old . . . Haitian" than he is today. *See* Dkt. 495 at 1. He had the same limited education and the same limited understanding of legal procedures. *See id.* And Clervil had already made it quite clear to everyone involved in this litigation that he has zero compunction about lying under oath. *See* Doc. No. 452-1 ¶ 4 (describing reasons for perjuring his initial interrogatory responses). Yet at the December 2014 status conference, Clervil and his counsel were eager to press ahead with

both the motion for leave to amend and Clervil's broader claims on the merits. *See* Ex. B at 7 (Clervil's counsel pressing for a decision on the proposed amendment "sooner rather than later because . . . we need to know"). The only thing that has changed since then is that this Court has expressed serious doubts about Clervil's motion to amend. *See* Ex. B at 8. Clervil's attempt to have this case dismissed without prejudice is clearly a reaction to the Court's comments, and, if his motion is granted, the dismissal's effect will be to permit an evasion of the Court's anticipated ruling on the proposed amendment.

Moreover, even if Clervil could provide a more fulsome or persuasive explanation of his reasons for seeking voluntary dismissal, Clervil has demonstrated through his conduct that nothing he tells this Court is to be trusted. In one sworn statement, Clervil states that "[n]o one" other than Perlitz ever abused him. Dkt. 439-1, No. 21. In the next, he swears that Father Carrier abused him as well. Dkt. 439-2, No. 21. In one brief, Clervil's attorneys attribute his shifting claims to recovery of repressed memories. Dkt. 363 at 5. In the next, the same attorneys claim that Clervil concealed the abuse because he thought Father Carrier arranged for his legal representation. Dkt. 452 at 2. When it comes to Clervil's representations to this Court, every day is a new day. This provides all the more reason to reject Clervil's proffered explanations and to insist that any dismissal of his complaint be with prejudice. *See Kregg*, 2008 U.S. Dist. LEXIS 119434, *13.

    **C.**    **The Remaining *Zagano* Factors Also Support Dismissal With Prejudice.**

Clervil's evasion of Rule 16's requirements and his inadequate explanation provide more than sufficient grounds for requiring that any dismissal be with prejudice. *See Kregg*, 2008 U.S. Dist. LEXIS 119434, *13; *Barksdale*, 2000 U.S. Dist. LEXIS 8648, *10-11. The remaining *Zagano* factors do nothing to undermine this conclusion; in fact, they only serve to reinforce it.

Contrary to Clervil's claims, "the extent to which th[is] suit has progressed" and the potential for "duplicative . . . relitigation" also counsel against dismissal without prejudice. *See Zagano*, 900 F.2d at 14. Clervil's claims have now been pending for more than a year in this Court. During this period, the parties have exchanged written discovery, they have conducted depositions, and they have also engaged in document discovery, some (but not all) of which was carried over from the earlier *Jean-Charles* cases. *See generally* Dkt. 456 at 5-10 (Dec. 16, 2014). If Clervil's case were to be dismissed without prejudice, then all of this discovery could potentially become the subject of duplicative relitigation in the future. Indeed, the risk of duplication may be particularly acute in Clervil's case. Given Clervil's checkered history in this Court, it would hardly be surprising if, given the chance, he tried out a new forum next time around. *Cf. Kern Oil & Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1389-90 (9th Cir. 1986) (Rule 41(a)(2) should not be used as a tool for "impermissible forum shopping"). Litigation before a new court could well result in substantial duplication of discovery already conducted in the *St. Louis* and *Jean-Charles* cases. And even if Clervil refiles in this Court at some later date, some duplication is almost certain to result.

The "plaintiff's diligence in bringing the motion" also provides no basis for dismissing this case without prejudice. *See Zagano*, 900 F.2d at 14. It is true that, in some cases, one relevant factor under Rule 41(a)(2) may be "whether [the] plaintiff moved to dismiss within a reasonable period of time after the occurrence of the event that led to the plaintiff's decision not to pursue the action." *Ascentive, LLC v. Opinion Corp.*, 2012 U.S. Dist. LEXIS 62432 (E.D.N.Y. 2012). But here, this factor is in no way helpful to the plaintiff. In this case, Clervil has sought voluntary dismissal without prejudice in direct response to this Court's comments signaling a potential denial of Clervil's motion for leave to amend. As a result, Clervil's "diligence," such

as it is, only serves to demonstrate the improper purpose of his motion: Clervil is attempting to use voluntary dismissal as a means to "avoid an adverse decision" on his proposed amended pleading. *See Manti*, 2002 U.S. Dist. LEXIS 3738, *14-15. That is inappropriate. In order to avoid plaintiffs' end run around the standards governing amendment of pleadings, dismissal of the plaintiff's claims should be entered with prejudice.

## II. DISMISSAL SHOULD ALSO BE CONDITIONED ON CLERVIL'S CONTINUING COMPLIANCE WITH DISCOVERY OBLIGATIONS.

Whether the order is with or without prejudice, a court entering a voluntary dismissal under Rule 41(a)(2) also possesses broad authority to impose additional "terms and conditions as the court deems proper." *Cross Westchester Dev. Corp. v. Chiulli*, 887 F.2d 431, 432 (2d Cir. 1989). Perhaps the most commonly employed condition in this context is one "requir[ing] a plaintiff to pay a defendant the expenses incurred in defending against the suit." *Gravatt v. Columbia Univ.*, 845 F.2d 54, 55 (2d Cir. 1988). That said, nothing in Rule 41 limits "[t]he terms and conditions that may be imposed . . . to the payment of money." Wright & Miller, *Federal Practice & Procedure* § 4366. Other conditions requiring "that the plaintiff produce documents" or engage in additional discovery also may be appropriate. *See id.*

Here, even if Clervil's individual claims are dismissed, he will remain in possession of material evidence. The Court should therefore condition any dismissal under Rule 41(a)(2) on Clervil's continuing compliance with discovery obligations.

### A. The Court Should Require Clervil To Make Himself Available For A Deposition.

As an initial matter, the Court should adopt a condition requiring Clervil to appear for a deposition. *See Sherman v. Yahoo! Inc.*, 2015 U.S. Dist. LEXIS 14032, *18-19 (S.D. Cal. 2015) ("Sherman's withdrawal should be conditioned on Yahoo being entitled to depose Sherman.");

*In re Wellbutrin Xl Antitrust Litig.*, 268 F.R.D. 539, 543-44 (E.D. Pa. 2010) (dismissal of plaintiff conditioned on production of pertinent documents).

If and when Clervil's individual claims are dismissed, he will nonetheless remain an important witness in the consolidated cases. For example, at least one other plaintiff—Clervil's roommate, Joel Albert—claims to have been present with Clervil, Perlitz, and Father Carrier during a viewing of a pornographic video in Perlitz's bedroom. *See* J. Albert Interrogatory Responses 2, 19 (attached as Ex. C). Clervil's testimony as it relates to this alleged incident could well be crucial to both Joel Albert's claims and the claims of other plaintiffs. In addition, Clervil's testimony may also be relevant to the claims of plaintiff Bernard Michel, the one other plaintiff who has alleged sexual abuse by Father Carrier. *See* 3:14-cv-1530, Dkt. 1 ¶ 105. In order to ensure Clervil's availability to testify on these and other issues, the Court should adopt a condition requiring that Clervil appear at a deposition. *See Sherman*, 2015 U.S. Dist. LEXIS 14032, *18-19.

**B.    Clervil Should Be Required To Produce All Documents Responsive To Defendants' Production Requests, Including Otherwise Privileged Communications Subject To The Crime-Fraud Exception.**

The Court should also adopt a separate condition requiring Clervil to provide full and complete responses to all of the defendants' document requests. *See Wellbutrin*, 268 F.R.D. at 543-44; Wright & Miller, *Federal Practice & Procedure* § 4366. To date, plaintiffs have produced a number of documents in discovery. But thus far, plaintiffs have withheld from their productions all documents reflecting "communications between Plaintiffs and their attorneys." *See, e.g.*, Pls. Responses to Production Requests No. 75 (April 11, 2014) (attached as Ex. D). At least as it relates to Clervil, this blanket non-disclosure of attorney-client communications is overbroad. Because of Clervil's conduct in this litigation, many of his communications with his

-14-

attorneys are no longer privileged and are properly subject to discovery under the crime-fraud exception.

The Court of Appeals has long held that communications "otherwise . . . protected by the attorney-client privilege or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995); *see Olson v. Accessory Controls and Equip. Corp.*, 254 Conn. 145, 173-74 (2000) (adopting the "standard applied by the Court of Appeals for the Second Circuit [as] an appropriate enunciation of the [crime-fraud] exception"). In order to pierce the privilege under this rule, the party invoking the exception must demonstrate "probable cause to believe that a crime or fraud has been attempted or committed," and also "that the communications were in furtherance thereof." *Roe*, 68 F.3d at 40. In applying this standard, the Court may conduct an *in camera* review of the communications at issue if the existing facts raise a reasonable inference "that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *United States v. Zolin*, 491 U.S. 554, 572 (1989).

Under this standard, a substantial number of Clervil's communications with his counsel are likely subject to discovery. As an initial matter, there is easily "probable cause to believe that a crime or fraud" has occurred. *See id.* Mr. Clervil has directly asserted, in his most recent declaration, that he lied under oath in his initial responses to the defendants' interrogatories. *See* Doc. No. 452-1 ¶ 4. Clervil initially declared, under penalty of perjury, that "[n]o one" other than Perlitz had ever abused or molested him. *See* Dkt. 439-1, No. 21. He now declares, also under penalty of perjury, that his initial response was a willfully false statement designed to protect Father Carrier, whom Clervil believed to be connected to his legal team. Doc. No. 452-1

-15-

¶ 4. If the second declaration is true, then Clervil has committed perjury. And "[p]erjury is plainly of sufficient weight to warrant abridging the attorney-client privilege" under the crime-fraud exception. *See In re Grand Jury Subpoena to Carter*, 1998 U.S. Dist. LEXIS 19497, *9 (D. D.C. 2008). All of Clervil's communications with counsel made in furtherance of his interrogatory responses should therefore be disclosed under the crime-fraud exception. And at the very least, Clervil's communications with counsel relating to his interrogatory responses should be submitted to the Court for an *in camera* review. *See id.* (applying crime-fraud exception where "*in camera* submission show[ed] that Ms. Lewinsky deliberately intended to commit perjury and used her attorney to help her do so").

### C. The Court Should Also Require Clervil To Respond To Rule 11 Discovery.

Finally, the Court should add a condition to any order of dismissal requiring Clervil to submit to additional discovery concerning the pre-filing investigation that preceded his submissions in this lawsuit. *See* Fed. R. Civ. P. 11. Throughout these proceedings, Mr. Clervil has relied on shifting and often irreconcilable factual representations to support his claims. *Compare* Dkt. 363 at 5 (attributing failure to disclose abuse by Father Carrier to Clervil's memory problems and emotional trauma), *with* Dkt. 452 at 2 (reversing course and attributing the omission to Clervil's intentional concealment). If "the central purpose of Rule 11 is to deter baseless filings," then clearly something has gone wrong with the Rule 11 investigations conducted in this case. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Discovery is warranted to determine the nature and scope of the issue.

To be sure, Rule 11 discovery is generally permitted only in "extraordinary circumstances," and only with "leave of court." Fed. R. Civ. P. 11, adv. comm. notes. But where, as here, "the party seeking the Rule 11 discovery has shown, through traditional" means,

that Rule 11's norms may have been breached, targeted discovery is appropriate. *In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 346 (N.D. Cal. 1985); *see Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001). The Court should condition the dismissal of Clervil's complaint on his submission to such discovery in this case.

## CONCLUSION

The Court should deny the motion for voluntary dismissal without prejudice, and order that the Clervil complaint is dismissed with prejudice, and that Clervil must submit to discovery as set forth above. The Court should also impose such other conditions as it deems proper, which may include an award of counsel fees to defendants in defending the Clervil motion to amend and this motion for voluntary dismissal without prejudice.

DEFENDANT
FAIRFIELD UNIVERSITY

By: /s/ Thomas D. Goldberg
    Stanley A. Twardy, Jr. (ct 05096)
    Thomas D. Goldberg (ct 04386)
    Paul D. Williams (ct 05244)
    John W. Cerreta (ct 28919)
    Kathryn G. Newman (ct 28708)
    Day Pitney LLP
    One Canterbury Green
    201 Broad Street
    Stamford, CT  06901
    Tel: (203) 977-7300
    Fax: (203) 977-7301
    E-mail: satwardy@daypitney.com
    E-mail: tgoldberg@daypitney.com
    E-mail: pdwilliams@daypitney.com
    E-mail: jcerreta@daypitney.com
    E-mail: knewman@daypitney.com

*Its Attorneys*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2015, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

I further certify that on February 13, 2015, a copy of the foregoing document was provided by Regular U.S. Mail, as follows:

>Douglas Perlitz c/o David T. Grudberg, Esq.
>Carmody & Torrance, LLP
>195 Church Street
>P.O. Box 1950
>New Haven, CT 06509-1950
>
>    and
>
>Haiti Fund, Inc. c/o Michael McCooey
>Chairman, Haiti Fund, Inc.
>475 Polly Park Road
>Rye, NY 10580

>/s/ John W. Cerreta
>John W. Cerreta