**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| GERVIL ST. LOUIS, a/k/a ST. LOUIS GERVIL,<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br><br>DOUGLAS PERLITZ; FATHER PAUL E. CARRIER, S.J.; HOPE E. CARTER; HAITI FUND, INC.; FAIRFIELD UNIVERSITY; THE SOCIETY OF JESUS OF NEW ENGLAND; SOVEREIGN MILITARY HOSPITALLER ORDER OF ST. JOHN OF JERUSALEM OF RHODES AND OF MALTA, AMERICAN ASSOCIATION, U.S.A., a/k/a ORDER OF MALTA, AMERICAN ASSOCIATION, USA; JOHN DOE ONE; JOHN DOE TWO; JOHN DOE THREE; JOHN DOE FOUR; JOHN DOE FIVE; JOHN DOE SIX; and JOHN DOE SEVEN,<br><br>　　　　　　　　　　Defendants.<br><br>*This document applies to:*<br>*Michel v. Perlitz*, 14-1530 | Civil Action No.: 3:13-cv-01132 (RNC)<br><br>Consolidated with:<br>3:13-cv-1225-RNC; 3:13-cv-1269-RNC;<br>3:13-cv-1437-RNC; 3:13-cv-1480-RNC;<br>3:13-cv-1626-RNC; 3:13-cv-1627-RNC;<br>3:13-cv-1628-RNC; 3:13-cv-1629-RNC;<br>3:13-cv-1630-RNC; 3:13-cv-1631-RNC;<br>3:13-cv-1632-RNC; 3:13-cv-1633-RNC;<br>3:13-cv-1634-RNC; 3:13-cv-1635-RNC;<br>3:13-cv-1636-RNC; 3:13-cv-1637-RNC;<br>3:13-cv-1638-RNC; 3:13-cv-1639-RNC;<br>3:13-cv-1640-RNC; 3:13-cv-1641-RNC;<br>3:13-cv-1642-RNC; 3:13-cv-1644-RNC;<br>3:13-cv-1645-RNC; 3:13-cv-1647-RNC;<br>3:13-cv-1648-RNC; 3:13-cv-1701-RNC;<br>3:13-cv-1767-RNC; 3:13-cv-1768-RNC;<br>3:13-cv-1769-RNC; 3:13-cv-1881-RNC;<br>3:13-cv-1904-RNC; 3:13-cv-1906-RNC;<br>3:13-cv-1907-RNC; 3:14-cv-0125-RNC<br>3:14-cv-0668-RNC; 3:14-cv-0815-RNC<br><br>May 14, 2015 |

**PLAINTIFFS' SUR-REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO FATHER CARRIER'S MOTION TO DISMISS COUNTS 8 AND 12**

Plaintiff Bernard Michel respectfully submits this sur-reply memorandum to respond to a single, new argument in Defendant Father Paul Carrier's Reply Brief in Support of Motion to Dismiss Counts 8 and 12 (the "Reply Brief"). Father Carrier's sole ground for his motion to dismiss the Eighth Claim for Relief, arising under 18 U.S.C. § 2255, is his contention that the claim is time-barred. In opposition, Michel argues, *inter alia*, that the claim is timely under the July 2006 amendment to § 2255, which recognized that new injuries arising from sex tourism could occur well after the last violation of the statute. In reply, Father Carrier now argues that the July 2006 amendment to § 2255 cannot apply here. He claims that, because the last act of sexual abuse that Michel alleges occurred in 2005, application of the July 2006 amendment to the statute would be a prohibited retroactive application of the statute. This argument is not only new, but also wrong: because the previous limitation period had not run at the time the July 2006 amendment was enacted, application of that amendment to Michel's claim would be neither retroactive nor prohibited. This sur-reply addresses the question of retroactivity as applied to the July 2006 amendment to § 2255.[1]

## ARGUMENT

### APPLICATION OF "MASHA'S LAW" TO MICHEL'S CASE IS NOT A "RETROACTIVE" APPLICATION OF THE LAW

Father Carrier assumes that application of the 2006 amendment to § 2255, referred to as "Masha's Law," to Michel's claim would be a retroactive application of the statute, and proceeds to argue that such retroactivity is impermissible. But the entire argument stands on a faulty premise, for application of the amended statute here would not be retroactive at all.

---

[1] Plaintiff notes that Father Carrier's opening memorandum addressed a different issue of retroactivity, whether a 2013 amendment to the statute of limitations could be applied retroactively. For the reasons discussed below, this presents an entirely separate legal question. The question raised in the reply memorandum was not previously raised before, so that Michel had no previous opportunity to address it.

1

In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court addressed the apparent tension between its holdings that, on the one hand, "a court is to apply the law in effect at the time it renders its decision," *Bradley v. School Bd. of Richmond*, 416 U.S. 696, 711 (1974), and, on the other, "retroactivity is not favored in the law," *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 208 (1988). The resolution of this apparent tension turns, the Court explained, on a proper understanding of the term "retroactive." 511 U.S. at 265-70. Thus, the Court held, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Id.* at 269. Rather, the Court held that, the proper test for retroactivity is "whether [application of an intervening statute] would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." 511 U.S. at 280.

The Court provided specific examples of intervening statutes – those enacted after the conduct giving rise to the case – that do not involve a retroactive effect. Thus, "[w]hen [an] intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Id.* at 273. Similarly, the Court noted that it had "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *Id.* at 274. Finally, and significantly, the Court held that "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity," explaining that "[b]ecause rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." *Id.* at 275.

Applying *Landgraf* to a statute of limitations, the Second Circuit has held:

[A]pplying a new or amended statute of limitations to bar a cause of action filed after its enactment, but arising out of events that predate its enactment,

2

> generally is not a retroactive application of the statute. . . . . *In such a case, the statute is applied to conduct that occurs after the statute's enactment – plaintiff's filing of the complaint – not the defendant's allegedly unlawful acts.*

*Vernon v. Cassadaga Valley Cent. School Dist.*, 49 F.3d 886, 889 (2d Cir. 1995), *citing Walsche v. First Investors Corp.*, 981 F.2d 649, 654 (2d Cir. 1992). Thus, the Court concluded in *Vernon*: "Retroactivity concerns, therefore, generally do not bar the application of a changed statute of limitations to a complaint filed after the amendment." 49 F.3d at 890.

Here, the statute of limitations had not run for Michel's claim under § 2255 at the time "Masha's Law" was enacted. As Father Carrier concedes, the last alleged act of abuse was in 2005, *see* Carrier Reply at 3, when Michel was approximately 16 years old, *Michel* Complaint ¶105; the applicable statute of limitations, without "Masha's Law" was six years, *see* Child Abuse Victims' Rights Act of 1986, Pub. L. 99-500, § 703(a), Oct. 18, 1986, 100 Stat. 1783-75, amended, Pub. L. 99-591, § 703(a), Oct. 30, 1986, 100 Stat. 3341, 3341-75. Michel's action was filed in 2014. Because Michel's claim had not expired when "Masha's Law" was adopted, application of that statute would not involve retroactivity. First, under *Vernon*, the conduct to which the new law would be applied would be the filing of the complaint, which, of course, occurred well after the enactment of the statute. Second, applying the *Landgraf* test, application of "Masha's Law" would not impair rights Father Carrier possessed when he acted; nor would it increase his liability for past conduct, or impose new duties with respect to transactions already completed, because, at the time Father Carrier acted his conduct was actionable, and at the time the statute was enacted, he remained liable for that conduct, because Michel's cause of action had not at that time expired. As a result, "Masha's Law," as applied to Michel, does not subject Father Carrier to any additional liability beyond what he was already exposed to at the time of the underlying conduct and at the time of the law's enactment.

Although the Second Circuit has not considered this precise question, other courts have held that application of an intervening longer limitation period to a claim not yet

3

expired at the time of the intervening enactment does not implicate concerns about retroactivity. Thus, in *Cruz v. Maypa*, 773 F.3d 138 (4th Cir. 2014), the Fourth Circuit explained that application of a new statute of limitations to an unexpired claim is not impermissibly retroactive:

> [A]pplying a new limitations period to unexpired claims does not attach new legal consequences to events completed before its enactment. . . . *As long as the claims were alive at enactment*, extending a statute of limitations does not increase a party's liability for past conduct, because the party already faced liability under the shorter limitations period. Such an extension does not introduce new legal consequences, but rather merely prolongs the time during which legal consequences can occur.

773 F.3d at 145 (emphasis added). Indeed, although *Cruz,* like this case involved civil claims, in reaching its result, the Fourth Circuit noted that even in the *criminal* context, application of a longer statute of limitations to conduct predating the enactment of the longer statute does not present retroactivity concerns, explaining that "[t]his is because a defendant facing unexpired claims has never been 'safe from pursuit,' and has always had incentive to preserve exculpatory evidence." *Id. See also Stogner v. California*, 539 U.S. 607, 618 (2003) (noting that "[e]ven where courts have upheld extensions of unexpired statutes of limitations . . . they have consistently distinguished situations where limitations periods have expired. Further, they have often done so by saying that extension of existing limitations periods is not ex post facto 'provided,' 'so long as,' 'because,' or 'if' *the prior limitations periods have not expired. . . .*") (emphasis added).

      The case for this result in the civil context is even stronger and, indeed, other courts have reached the same conclusion as *Cruz* in the context of later-enacted longer civil statutes of limitations. *See F.D.I.C. v. Belli*, 981 F.2d 838, 842-43 (5th Cir. 1993) (distinguishing between, on the one hand, application of intervening statute of limitations to claim that had already expired, which would be improperly retroactive, and, on the other hand, application of same statute to claims still "alive" at the date of enactment, which it found to be proper); *Rowe v. Sullivan*, 967 F.2d 186 (5th Cir. 1992)

4

(noting that intervening extension of limitation period would have been procedural, and thus applicable, if the law had been enacted during the period when plaintiff's claim was still alive, but because it was being used instead to revive a right that had already been extinguished, the issue had substantive aspects).

Relying on the Second Circuit opinions in *Vernon* and *Walsche,* a recent case in the Southern District of New York reached the same conclusion:

> Where, as here. . . a new rule does not alter substantive rights, but rather announces a period of limitations, the conduct to which it refers is the plaintiff's conduct relating to the filing of the claim and not the defendant's conduct giving rise to the claim. . . . Therefore, applying a new or amended statute of limitations to a cause of action filed after its enactment, but arising out of events that predate its enactment, generally is not a retroactive application of the statute. . . . The applicable statute of limitations governing a lawsuit is thus that which is in effect at the time the lawsuit is filed. . . . [T]he 2008 WSLA amendment therefore applies to any *claims for which the statute of limitations had not yet run at the time of its passage*.

*U.S. v. Wells Fargo Bank, N.A.*, 972 F.Supp.2d 593, 610 (S.D.N.Y 2013), *citing Walsche*, 981 F.2d at 654; *Vernon*, 49 F.3d at 889.

Father Carrier relies on the Sex Offender Registration and Notification Act ("SORNA") and on *Lindh v. Murphy*, 521 U.S. 320 (1997), for his argument that application of "Masha's Law" here implicates an improper retroactivity, but neither SORNA nor *Lindh* support that position. Father Carrier's argument turns on what he claims is a "negative preumption"[2] from the fact that SORNA expressly applies to "sex offenders convicted before the enactment of this Act," while "Masha's Law" is silent as to its temporal scope. SORNA creates no such "negative presumption," for at least four reasons.

First, "Masha's Law" has the effect of extending the statute of limitations,

---

[2] The *Lindh* case, on which Father Carrier relies, uses the term "negative implication," *see* 521 U.S. at 326, 330, 335; the dissent uses the phrase "negative inference," *see* 521 U.S. at 337. Elevating this "implication" or "inference" to a presumption appears to have been Father Carrier's idea.

5

generally deemed a procedural matter, as discussed above, while SORNA is a *substantive* provision requiring registration as a sex offender. Because SORNA creates substantive obligations, it was necessary for Congress to specify its temporal scope in order to apply it to existing convictions. The same is not true for "Masha's Law," because purely procedural provisions, such as an extension of a limitation period, are ordinarily presumed to apply to cases arising from past conduct, so it was not necessary to specify that "Masha's Law" would have such effect.

Second, the provision cited by Father Carrier made the registration requirements of SORNA applicable to past *convictions*, while the issue here is whether "Masha's Law" can be applied to civil cases that were *not yet filed*, but also not time-barred, at the time the law was enacted. In *Lindh*, the two statutory provisions that gave rise to the inference were parallel *habeas corpus* provisions, one of which applied generally, and the other of which applied only to death penalty cases. It was precisely the parallel nature of the sections that gave rise to the implication that the failure to include in one what was included in the other represented a conscious congressional choice that the two provisions should operate differently in this respect. The situations covered by SORNA and "Masha's Law," by contrast, are too different to draw any inference from differences in the language used in each provision. There is simply no parallel that could conceivably give rise to a "negative implication" in Congress's failure to include in "Masha's Law" a provision equivalent to the "past convictions" provision in SORNA. This is especially true because "Masha's Law" applies exclusively to civil cases and, indeed, no criminal conviction is necessary to support liability under the statute. 18 U.S.C. §2255(a). Moreover, it would have been entirely redundant and confusing to specify that "Masha's Law" applied to "sex offenders convicted before the enactment" of that law, because (unlike the registry requirements at issue in SORNA) at the time "Masha's Law" was enacted, 18 U.S.C. § 2255 *already* applied to offenders who had previously been convicted, as well as to offenders who had never been prosecuted, or were in the process of being

6

prosecuted.

Third, Father Carrier suggests that merely because SORNA and "Masha's Law" were both enacted as part of the Adam Walsh Child Protection and Safety Act of 2006, a negative inference attaches to the absence of a temporal scope provision in the latter because of its inclusion in the former. But the very case relied on by Father Carrier, *Lindh v. Murphy*, shows this is not so. Rather, in *Lindh*, the Supreme Court was at pains to explain that mere enactment in the same bill was *not* sufficient to give rise to a negative implication and that the specifics of how and when diverse provisions came to be joined together in the legislative process can affect what inferences may properly be drawn about differences among various sections of a comprehensive bill. 521 U.S. at 329-330.

Finally, if Father Carrier's argument were correct, then, on grounds of retroactivity, "Masha's Law" would not have applied to the eponymous Masha herself, which, at a minimum, would have rendered the naming of the law an unusual act of cruelty on the part of Congress. In fact, however, Masha subsequently filed suit under "Masha's Law" for the injuries she continued to suffer as a result of criminal conduct against her when she was a small child. *See Doe v. Hesketh et al.*, 2:13-cv-04935-SD, Complaint (E.D. Pa. Aug. 23, 2013). If Masha was not precluded, on grounds of retroactivity, from invoking her own law, Michel is similarly not precluded on that basis.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiff's opposition to Father Carrier's motion, this Court should deny Father Carrier's motion to dismiss Michel's Eighth Cause of Action.

Dated: May 14, 2015                   Respectfully submitted,


By:     /s/     Mitchell Garabedian
        Mitchell Garabedian (phv04676)
        garabedianlaw@msn.com
        William H. Gordon (phv04677)
        wgordon@garabedianlaw.com

7

        LAW OFFICES OF MITCHELL GARABEDIAN
100 State Street, 6th Floor
Boston, MA 02109
Phone:  (617) 523-6250

Paul J. Hanly, Jr. (phv04680)
phanly@simmonsfirm.com
Jayne Conroy (phv04679)
jconroy@simmonsfirm.com
Andrea Bierstein (phv04678)
abierstein@simmonsfirm.com
SIMMONS HANLY CONROY
112 Madison Ave., 7th floor
New York, New York 10016
Phone:  (212) 784-6400

Steven J. Errante (ct04292)
SErrante@ltke.com
Marisa A. Bellair (ct23802)
Mbellair@ltke.com
LYNCH, TRAUB, KEEFE, & ERRANTE, P.C.
P.O. Box 1612
52 Trumbull Street
New Haven, CT 06510
Phone:  (203) 787-0275
Fax:  (203) 782-0278

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on May 15, 2015, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by first-class mail to all parties who are unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

I further certify that on May 15, 2015, the foregoing document was sent by first-class mail, postage prepaid, to:

(1) Counsel for Defendant Douglas Perlitz at the below address:
David T. Grudberg, Esq.
Carmody & Torrance, LLP
195 Church St.
PO Box 1950
New Haven, Conn. 06509-1950

(2) Defendant Haiti Fund, Inc. at the below address:
Haiti Fund, Inc.
c/o Mr. Michael McCooey
Chairman
475 Polly Park Road
Rye, NY 10580

/s/   William H. Gordon
William H. Gordon

9