```
              UNITED STATES DISTRICT COURT
              DISTRICT OF CONNECTICUT
                                    Civil Action No.
                                    3:13-cv-01132(RNC)
****************************
GERVIL ST. LOUIS, a/k/a ST.         Consolidated with:
LOUIS GERVIL,                       3:13-cv-1225-RNC
                                    3:13-cv-1269-RNC
              Plaintiff,            3:13-cv-1437-RNC
                                    3:13-cv-1480-RNC
     v.                             3:13-cv-1626-RNC
                                    3:13-cv-1627-RNC
DOUGLAS PERLITZ, FATHER             3:13-cv-1628-RNC
PAUL E. CARRIER, S.J.; HOPE         3:13-cv-1629-RNC
E. CARTER; HAITI FUND,              3:13-cv-1630-RNC
INC.; FAIRFIELD UNIVERSITY;         3:13-cv-1631-RNC
THE SOCIETY OF JESUS OF NEW         3:13-cv-1632-RNC
ENGLAND; SOVEREIGN MILITARY         3:13-cv-1633-RNC
HOSPITALLER ORDER OF ST.            3:13-cv-1634-RNC
JOHN OF JERUSALEM OF RHODES         3:13-cv-1635-RNC
AND OF MALTA, AMERICAN              3:13-cv-1636-RNC
ASSOCIATION, U.S.A.; a/k/a          3:13-cv-1637-RNC
ORDER OF MALTA, AMERICAN            3:13-cv-1638-RNC
ASSOCIATION, U.S.A.; JOHN           3:13-cv-1639-RNC
DOE ONE; JOHN DOE TWO; JOHN         3:13-cv-1640-RNC
DOE THREE; JOHN DOE FOUR;           3:13-cv-1641-RNC
JOHN DOE FIVE; JOHN DOE SIX         3:13-cv-1642-RNC
and JOHN DOE SEVEN,                 3:13-cv-1644-RNC
                                    3:13-cv-1645-RNC
              Defendants.           3:13-cv-1647-RNC
                                    3:13-cv-1648-RNC
                                    3:13-cv-1701-RNC
                                    3:13-cv-1767-RNC
                                    3:13-cv-1768-RNC
                                    3:13-cv-1769-RNC
                                    3:13-cv-1881-RNC
                                    3:13-cv-1904-RNC
                                    3:13-cv-1906-RNC
                                    3:13-cv-1907-RNC
****************************
This document applies to:
All of the above referenced cases
And those to be filed
****************************
CONFIDENTIAL - SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
     VIDEOTAPED DEPOSITION OF WADSON DORCINE

           Wednesday, September 30th, 2015
                   9:14 a.m.
```

```
 1         VIDEOTAPED DEPOSITION OF WADSON DORCINE
 2
 3
 4    Held At:
 5
 6         Barcelo Puerto Plata
 7         Carretera Lupersn, km 5, Puerto Plata 547
 8         Dominican Republic
 9
10
11    REPORTED BY:
12    Maureen O'Connor Pollard, RMR, CLR, LSR #473
13    Realtime Systems Administrator
14
15
16
17
18
19
20
21
22
23
24
25
26
```

1  Mr. Perlitz?
2      A.    No.
3      Q.    Do you know anybody named Matthew?
4      A.    I remember that name, but this is not
5  someone I talked with.
6      Q.    How do you remember that name?
7      A.    It seems that I've seen him with
8  Cyrus, but it's not someone that I ever had
9  conversations with.
10     Q.    Has Matthew ever given you any money?
11     A.    No.
12     Q.    Has Cyrus ever given you any money?
13     A.    Yes.
14     Q.    How many times?
15     A.    Twice, $100.
16     Q.    He gave you money two times?
17     A.    Yes.
18     Q.    Each time he gave you $100?
19     A.    The first time he gave me 500 US -- I
20 mean -- I'm sorry.
21           The first time he gave me 100 US
22 dollars, and the second time he gave me 5,000
23 Haitian gourdes.
24     Q.    When did he give you 100 US dollars?
25     A.    I don't remember the date.

```
 1      Q.    Did he give you the 100 American
 2   dollars the first time you met him?
 3      A.    No.
 4      Q.    How many times have you met Cyrus
 5   Sibert?
 6      A.    I don't remember how many times I met
 7   him, but I met him several times.
 8      Q.    How many times did you meet him before
 9   he gave you 100 American dollars?
10      A.    I don't remember.
11      Q.    Did you ask him for money?
12      A.    No.
13      Q.    Did he just offer you the money?
14      A.    He saw the situation, how I was
15   living, he saw how I was dressed, and it broke
16   his heart, and he decided to give me something.
17      Q.    The 100 American dollars was a gift
18   from Cyrus to you?
19            MR. GARABEDIAN:  Objection.
20      A.    Yes.
21   BY MR. BABBITT:
22      Q.    Did he tell you anything about the
23   gift that he gave you of 100 American dollars?
24      A.    No.
25      Q.    How about the 5,000 Haitien gourdes,
```

1   when did he give you that?
2       A.   When I was coming here, he gave me
3   5,000 gourdes.
4       Q.   Why did he do that?
5       A.   He said -- I don't know why exactly,
6   but he said, you know, "you can't go just any
7   old way, you have to prepare yourself a little
8   bit to go, you have to put something on."
9       Q.   Did you use the 5,000 Haitian gourdes
10  to buy clothes?
11      A.   I bought a few things, because that
12  money really cannot buy a lot of clothes.
13      Q.   What few things did you buy?
14      A.   I bought clothes.  I bought things for
15  my -- to wear on my feet.  And that's it.
16      Q.   Since PPT closed, has anyone else
17  given you a gift of 100 American dollars?
18           MR. GARABEDIAN:  Objection.  Instruct
19  him not to answer as to any attorney/client
20  communication as it involves privilege.
21      A.   Could you repeat the question, please?
22  BY MR. BABBITT:
23      Q.   Since PPT closed, has anyone else
24  given you a gift of 100 American dollars?
25           MR. GARABEDIAN:  Same objection.

1    A.    No.

2    BY MR. BABBITT:

3    Q.    Have you received any money from

4    Mr. Mitch?

5    MR. GARABEDIAN:  Objection.  Instruct

6    him not to answer as it involves attorney/client

7    communication.  Don't answer.

8    MR. BABBITT:  The payment of money

9    involves --

10    MR. GARABEDIAN:  Yes.

11    MR. BABBITT:  -- communication?

12    MR. GARABEDIAN:  Yes.

13    MR. BABBITT:  Okay.

14    BY MR. BABBITT:

15    Q.    Did any --

16    MR. GARABEDIAN:  If there was.

17    MR. BABBITT:  I don't know whether

18    there was, we don't know whether there was, all

19    we know is you've now instructed the witness not

20    to tell us whether he's received money from you.

21    MR. GARABEDIAN:  Note my objection.

22    MR. BABBITT:  Right.  I get that.  You

23    have objected and instructed -- not only

24    objected, you've instructed the witness not to

25    answer.

1               MR. GARABEDIAN:  That's right.
2     BY MR. BABBITT:
3        Q.    Have you received any money from any
4     of your lawyers?
5               MR. GARABEDIAN:  Objection.  Instruct
6     him not to answer based on attorney/client
7     privilege involving communications.
8               MR. BABBITT:  It's your contention
9     that the payment of money is communication?
10              MR. GARABEDIAN:  If there was payment,
11    and we're not saying there was.
12              MR. BABBITT:  If there was, it's your
13    contention --
14              MR. GARABEDIAN:  It's my contention --
15              MR. BABBITT:  I'm going to make a
16    record, Mitch.  Hang on.
17              It's your contention if there was any
18    payment by you to a witness, to your client,
19    that's a form of communication?
20              MR. GARABEDIAN:  Yes.
21    BY MR. BABBITT:
22       Q.    Has anybody else given you a gift of
23    Haitian gourdes since PPT closed?
24       A.    No.
25       Q.    Did Cyrus Sibert tell you where he got