UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERVIL ST. LOUIS,<br><br>        Plaintiff,<br><br>vs.<br><br>DOUGLAS PERLITZ, et al.,<br><br>        Defendants.<br><br>*This document relates to:*<br><br>*All Cases* | Civ. A. No. 3:13-cv-01132-RNC<br><br>Dated: November 11, 2016 |

### FATHER CARRIER'S REPLY BRIEF

       We join in the reply brief submitted by the other defendants in full. We write separately to rebut the plaintiffs' suggestion that there is no basis for invoking the crime-fraud exception in this case.

       Here are the key facts about the litigation concerning payments plaintiffs' counsel made to the plaintiffs:

1. The defendants learn in the course of discovery that the plaintiffs' counsel, through their agent, Cyrus Sibert, have been paying the living expenses of plaintiffs.

2. In November 2015, the defendants file a motion on the issue (ECF 679). Our memorandum (ECF 680) did not ask the Court to impose sanctions or to find that plaintiffs' counsel had acted unethically in violation of Conn. R. Prof'l Conduct 1.8(e); we only asked for orders requiring the improper payments to stop and requiring an accounting and other discovery. Nevertheless, the only bases on which

    we brought the motion were the violation of Rule 1.8(e) and arguably a violation of Connecticut's anti-runner statute ("arguably" because, as the plaintiffs were quick to point out, the statute may not apply extraterritorially).

3. In their explanation of their conduct, plaintiffs' counsel represent that the money they had given to the plaintiffs was "for clothing and shoes specifically for the purpose of their depositions," (ECF 715 ¶ 11) or food "sufficient to allow them to participate in discovery" or to participate in depositions. (ECF 715 ¶¶ 12-13).

4. At the hearing on January 27, 2016, the Court grants our motion in substantial part. (ECF 726; see also ECF 808).

5. The defendants receive a provisional accounting of the Sibert payments in March 2016 and the final accounting in late June.

6. Until just days ago, the plaintiffs had produced hardly any of the communications between Mr. Sibert and plaintiffs' counsel relating to payments of money. They had, however, produced a document showing that Mr. Sibert ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *See* Sibert-000293.[1]

7. Testimony of the plaintiffs themselves, as well as the documents produced by Mr. Sibert in the last few days, show that the representations made to the court about the purpose of the payoffs were at best only partly correct. The plaintiffs' counsel clearly have been giving money to the plaintiffs for purposes other than the

---

[1] Sibert-000293 is attached to the Declaration of Theodore J. Folkman as Exhibit 1.

immediate needs of clothing and food required for participation in the litigation. For example:

- Plaintiffs' Counsel to Mr. Sibert on February 8, 2015: "[REDACTED] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (Sibert-003545).[2] Quite obviously this largesse has nothing to do with any plaintiff's particular needs, let alone any plaintiffs' dire needs or litigation-related needs.

- Sibert to counsel, October 20, 2014: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [REDACTED]."(Sibert-003518).[3] It should be obvious that paying ▮▮▮▮ for one's clients is not a litigation-related expense.

- Sibert to counsel, March 19, 2015. After discussing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Sibert-000403).[4] Why would ▮▮▮ be a concern for Mr. Sibert or counsel? One possibility: because the point of the payments was not to save the plaintiffs from starvation, but to make sure they stayed on-message and on-board with the lawsuits.

---

[2] Sibert-003545 is attached to the Declaration of Theodore J. Folkman as Exhibit 2.
[3] Sibert-003518 is attached to the Declaration of Theodore J. Folkman as Exhibit 3.
[4] Sibert-000403 is attached to the Declaration of Theodore J. Folkman as Exhibit 4.

- Jheempson Brismac Joseph testified that he used money he received to buy clothes, shoes, food, and "a little perfume," though it "wasn't even enough for everything I wanted to do." (Joseph Dep. 179:16–180:10).[5]

- Emile Jean-Pierre gave some of the $480 (US) he received to his relatives, and he saved some. (Jean-Pierre Dep. 27:22–32:2).[6]

- Lucce Calixte testified that he used the $100 (US) he received to buy "a little bag of rice" and "three pairs of pants," and that he "saved 500 gourdes." (Calixte Dep. 102:25–103:10).[7]

Although we have not expressly asked the Court to conduct a crime-fraud *in camera* review, because we think the motion is strong enough as it is, the plaintiffs are incorrect to say that such a request would have no basis. To the contrary, there is a clear basis for such a request. In order to invoke the crime-fraud exception to the ordinary rule of privilege, we would have to "demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." *United States v. Jacobs,* 117 F.3d 82, 87 (2d Cir. 1997). The procedure has two steps. First, we must proffer a "factual basis" that would "strike a prudent person as constituting a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *Id.* (citation and internal quotation marks omitted). If we made this showing, the Court would have discretion to conduct a review in

---

[5] Excerpts of the Deposition of Jheempson Brismac Joseph are attached to the Declaration of Theodore J. Folkman as Exhibit 5.

[6] Excerpts of the Deposition of Emile Jean-Pierre are attached to the Declaration of Theodore J. Folkman as Exhibit 6.

[7] Excerpts of the Deposition of Lucce Calixte are attached to the Declaration of Theodore J. Folkman as Exhibit 7.

camera. *Id.* Second, after review in camera, the Court would decide, in its discretion, "whether the facts are such that the exception applies." *Id.*

Here, there is a clear factual basis that would cause a reasonable person to suspect that the communications between the lawyers and their agents were made in furtherance of perpetration of a crime, namely the crime of witness tampering. The statute provides:

> Whoever knowingly … corruptly persuades another person, or attempts to do so … with intent to—
>
> (1) influence … the testimony of any person in an official proceeding …
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(b).

This action is an "official proceeding." *See* 18 U.S.C. § 1515(a)(1)(A) ("official proceeding" includes "a proceeding before a judge or court of the United States"). Of course, the statute imposes a heavy burden on the government, because the government must prove that the defendant acted "knowingly," that is, with consciousness of wrongdoing. *See Arthur Andersen LLP v. United States,* 544 U.S. 696, 704-05 (2005). However, the state of mind of the plaintiffs' lawyers, and their agents, can be shown—if at all—only by looking at their contemporaneous communications. Nevertheless, the unusual circumstances present here give any reasonable person reason to believe the payments were intended to influence the plaintiffs' testimony. We will not repeat all of the points that have been made elsewhere, but we point to the following facts:

- The plaintiffs themselves acknowledge that their extreme poverty was sufficient to induce them to consent to Mr. Perlitz's abuse in return for items worth much less than what the plaintiffs' lawyers have paid them. (Compl. ¶ 70).

5

- Counsel point to some instances in which they fed a plaintiff to allow him to participate in discussions with counsel. (Garabedian Decl. ¶ 12). It is unclear whether this aid was provided in cash or in kind, but in any event it is clear that many cash payments were not made or used for this purpose.

- Counsel has also pointed to payments by Mr. Sibert as, apparently, acts of personal charity. (E.g., Garabedian Decl. ¶ 10, Tr. Jan. 27, 2016 of at 13:11-19). But Mr. Sibert is no philanthropist. At the time of the *Jean-Charles* settlement, he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Sibert-000293. This is a business venture for Mr. Sibert, not philanthropy.

- Counsel has also claimed that the payments were for the purchase of shoes and clothing to allow plaintiffs to attend their depositions. (Garabedian Decl. ¶ 11). But the amounts given far exceed the amounts necessary to purchase clothing, and documents obtained in discovery and the plaintiffs themselves have made it clear in their testimony that not all of the payments were for such purposes.

If the plaintiffs' counsel, and their agents, were not paying the plaintiffs for the purposes they have argued were legitimate (expenses incident to deposition preparation and attendance, for example), just what *was* the purpose of the payments of hundreds of dollars made to extremely impoverished, uneducated, and unemployed former students by a powerful person in Cap-Haitien who apparently operates as a "boss," or patron (Saincirin Dep. 257:8-10[8]; J.B. Joseph Dep. 181:13-17)? To deny that these payments at least give a reasonable person reason to think that they were intended to persuade the plaintiffs to say what the plaintiffs' lawyers or their

---

[8] Excerpts of the Deposition of Louis Saincirin are attached to the Declaration of Theodore J. Folkman as Exhibit 8.

agents wanted them to say is to deny reality. Even if the Court finds the withheld documents are privileged, an *in camera* review would be warranted to determine if the conditions of the crime-fraud exception to the privilege are met.

Of course, we would have to provide a factual basis that would give a reasonable person reason to suspect not just that a crime or fraud was being committed, but that the communications we seek were in furtherance of that crime or fraud. *See In re Richard Roe, Inc.,* 68 F.3d 38, 40 (2d Cir. 1995). Here, the communications between Mr. Sibert and counsel are replete with references to payments to the plaintiffs. It is reasonable to suspect that the communications that have been withheld refer in some way to the purpose of the payments.

To be clear: we do not accuse the plaintiffs' counsel of witness tampering. At this stage, our burden would be simply to show a "factual basis" that would "strike a prudent person as constituting a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *Jacobs, supra.* Any prudent person would have a reasonable basis to suspect witness tampering on the facts as set out above and in the defendants' joint memorandum. In the event the Court finds a privilege exist, further inquiry by the Court, *in camera,* would be warranted.

*[signature page to follow]*

Respectfully submitted,

PAUL E. CARRIER

By his attorneys:

_____
Timothy P. O'Neill (phv04968)
Theodore J. Folkman (phv04969)
Amanda Moger Rettig (phv04967)
MURPHY & KING, P.C.
One Beacon Street, 21st Fl.
Boston, Mass. 02108
Tel. (617) 423-0400
Fax (617) 423-0498
toneill@murphyking.com
tfolkman@murphyking.com
arettig@murphyking.com

Dated: November 11, 2016

**CERTIFICATE OF SERVICE**

    I certify that on November 11, 2016, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by first-class mail to all parties who are unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

    I further certify that on November 11, 2016, I caused a copy of the foregoing document to be served by first-class mail, postage prepaid, on counsel for the defendant, Douglas Perlitz, who is unable to accept electronic service, and Haiti Fund, Inc.:

| | |
|---|---|
| David T. Grudberg, Esq.<br>Carmody & Torrance, LLP<br>195 Church St., P.O. Box 1950<br>New Haven, Conn. 06509-1950 | Michael McCooey<br>Chairman, Haiti Fund, Inc.<br>475 Polly Park Road Rye,<br>N.Y. 10580 |

        /s/ Theodore J. Folkman

*717292v1/5623-004*