UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERVIL ST. LOUIS,<br><br>                Plaintiff,<br><br>vs.<br><br>DOUGLAS PERLITZ, et al.,<br><br>                Defendants. | Civ. A. No. 3:13-cv-01132-RNC<br><br>Dated: November 14, 2016 |
| *This document relates to:*<br><br>*Lecenat v. Perlitz, No. 13-1633*<br>*Dorcine v. Perlitz, No. 13-1701*<br>*Mackenson v. Perlitz, No. 14-125*<br>*Deriza v. Perlitz, No. 14-668* | |

## FATHER CARRIER'S LOCAL RULE 56(A)(1) STATEMENT

Father Carrier submits that as to the following material facts, there is no genuine issue to be tried.

### FACTS MATERIAL TO COUNT TWO

A.    No Injury in the United States.

    1.    Each of the plaintiffs claims he was sexually abused in Haiti, not in the United States. Mr. Lecenat claims he was sexually abused at a First Communion retreat at Rival that he attended with classmates, and then in Mr. Perlitz's office in the Village. (Lecenat Dep. 91:5-20; 106:13-17[1]). Mr. Dorcine claims he was abused in Mr. Perlitz's office at the school. (Dorcine Dep. 120:8-24[2]). Mr. Mackenson claims he was abused at Carenage and then in the Land Cruiser

---

[1] Excerpts of the Deposition of Gesner Lecenat are attached to this memorandum as Exhibit 1.
[2] Excerpts of the Deposition of Wadson Dorcine are attached to this memorandum as Exhibit 2.

used at PPT. (Mackenson Dep. 91:18-92:3; 144:18-20[3]). Mr. Deriza claims he was abused at Bel Air. (Deriza Dep. 128:18-129:1[4]).

2. Each of the plaintiffs resides in Haiti, not the United States. (Lecenat Compl. ¶ 8; Dorcine Compl. ¶ 8; Mackenson Compl. ¶ 8; Deriza Compl. ¶ 8).

B. Arranging or Facilitating Travel.

3. Father Carrier never received anything of value in return for arranging or facilitating Mr. Perlitz's travel. (Carrier Decl. ¶ 3).

C. Knowledge of Mr. Perlitz's Purpose.

4. When Mr. Perlitz completed his studies for a master's degree in Boston in 1996, he left for Haiti to work as a pastoral minister at the Sacred Heart Hospital in Milot, Haiti. (Carrier Dep. 79:21-80:8[5]; C. Perlitz Dep. 58:3-9[6]).

5. When Mr. Perlitz went to Haiti, he "more or less move[d] there," and he "remain[ed] there for a number of years with occasional trips back to the US." (*See* Ex. 6 (C. Perlitz Dep.) at 59:11-16).

6. Mr. Perlitz founded PPT in November 1997. (*See* Ex. 5 (Carrier Dep.) at 80:22-81:9).

7. From the time he founded PPT, Mr. Perlitz resided full-time in Cap-Haïtien, Haiti and returned occasionally to the United States for family or personal visits or on PPT business, for example, to "go to the eye doctor, and … go to the dentist," or to receive an honorary degree

---

[3] Excerpts of the Deposition of Jacques Mackenson are attached to this memorandum as Exhibit 3.
[4] Excerpts of the Deposition of Jason Deriza are attached to this memorandum as Exhibit 4.
[5] Excerpts of the Deposition of Paul Carrier are attached to this memorandum as Exhibit 5.
[6] Excerpts of the Deposition of Cheryl Perlitz are attached to this memorandum as Exhibit 6.

from Fairfield University. (Carrier Decl. ¶¶ 3-4; Fiorda Dep. 148:9-16, 150:19-151:1[7]; *see* Ex. 6 (C. Perlitz Dep.) at 58:3-9)

       8.     Mr. Perlitz was not a member of a religious order who was instructed to live in Haiti. It was his decision to move to Haiti. (Carrier Decl. ¶ 2).

D.     <u>Causal Link Between Father Carrier's Act and the Plaintiffs' Injuries.</u>

       9.     Mr. Deriza claims that he was abused one time but he does not remember the year in which he was abused. (*See* Ex. 4(Deriza Dep.) at 126:23-127:6).

      10.    Mr. Dorcine claims that he was abused one time, sometime in 2006 or 2007. (*See* Ex. 2 (Dorcine Dep.) at 120:8-122:2).

      11.    Mr. Lecenat claims that he was abused twice, first "at the end of May in approximately 2006," and second "less than a year after the first time." (Gesner Lecenat Ans. to Int. 19[8]).

      12.    Mr. Mackenson has no memory of when the two alleged incidents of abuse took place, because he "was sniffing a lot of paint thinners." (*See* Ex. 3 (Mackenson Dep.) at 77:7-12). He has also claimed that the abuse happened "when Jessica was in Haiti," which would place the abuse in or after August 2007, and while "boys were living at Rue 14." (Lozier Dep. 12:3-13:2[9]; Mackenson Ans. to Int. 19[10]).

E.     <u>Commercial Advantage or Private Financial Gain.</u>

      13.    Father Carrier never received any salary or compensation from Haiti Fund, Inc. (Carrier Decl. ¶ 4).

---

[7] Excerpts of the Deposition of Barbara Fiorda are attached to this memorandum as <u>Exhibit 7</u>.
[8] Excerpts of the Answer to Interrogatories of Gesner Lecenat are attached to this memorandum as <u>Exhibit 8</u>.
[9] Excerpts of the Deposition of Jessica Lozier are attached to this memorandum as <u>Exhibit 9</u>.
[10] Excerpts of the Answer to Interrogatories of Jacques Mackenson are attached to this memorandum as <u>Exhibit 10</u>.

14. The only funds he ever received from the Haiti Fund, Inc. was reimbursement for expenses authorized by the Haiti Fund, Inc., or funds given to him for delivery to Mr. Perlitz or others at PPT. (Carrier Decl. ¶ 4)

15. Father Carrier never misappropriated any funds from the Haiti Fund, Inc. (Carrier Decl. ¶ 4).

16. Father Carrier never received any funds from Fairfield University, including from the Department of Campus Ministry, except for his salary (which he did not personally receive in any case) and except for authorized expense reimbursements. (Carrier Decl. ¶ 5)

17. Father Carrier's salary from Fairfield University ("the University") was paid directly from the University to the Fairfield Jesuit Community pursuant to an agreement between the University and the Fairfield Jesuit Community and pursuant to an assignment executed by Father Carrier. (Reed 30(b)(6) Dep. 30:5-31:3[11]; Regan 30(b)(6) Dep. 42:14-43:22[12] & Ex. 5[13]; Von Arx. 30(b)(6) Dep. 29:25-30:11, 31:24-32:4[14]; *see* Ex. 5 (Carrier Dep.) at 30:21-31:14; Carrier Decl. ¶ 6).

18. An operational audit of the Department of Campus Ministry found that there were "no significant issues of concern," though certain deficiencies in internal controls were noted. (Von Arx 30(b)(6) Ex. 16[15] at 3-4, 8-9, 12).

19. The President of the University found no reason to be dissatisfied with Father Carrier after reading the operation audit. (*See* Ex. 14, Von Arx 30(b)(6) Dep. 88: 10-15).

---

[11] Excerpts of the 30(b)(6) Deposition of Mark Reed are attached to this memorandum as Exhibit 11.
[12] Excerpts of the 30(b)(6) Deposition of Thomas Regan, S.J. are attached to this memorandum as Exhibit 12.
[13] Ex. 5 to the 30(b)(6) Deposition of Thomas Regan, S.J. is attached to this memorandum as Exhibit 13.
[14] Excerpts of the 30(b)(6) Deposition of Fr. Jeffrey Von Arx are attached to this memorandum as Exhibit 14.
[15] Ex. 16 to the 30(b)(6) Deposition of Fr. Jeffrey Von Arx 30(b)(6) is attached to this memorandum as Exhibit 15.

20. Father Carrier's purpose, in all his dealings with the Haiti Fund and PPT, was to support the mission of the school, not to benefit himself financially or to obtain other benefits for himself, for example, travel reimbursement. (Carrier Decl. ¶ 7). Under the proper law of the Society of Jesus, no Jesuit is allowed to engage in activities for his own profit or to keep any profits earned, Father Carrier has never done so since entering the Society. (Carrier Decl. ¶ 7).

21. Aside from nominal amounts of spending money for daily needs, provided by the Society of Jesus, Father Carrier has not had any money at all since he entered the Society of Jesus. (Carrier Decl. ¶ 7).

22. Father Carrier would have been reimbursed for his expenses in traveling to Haiti whether or not Mr. Perlitz traveled to and from Haiti and whether or not Father Carrier or anyone else arranged or facilitated that travel. (Carrier Decl. ¶ 3).

## FACTS MATERIAL TO THE CONFLICT OF LAWS

23. Father Carrier had no expectation that Connecticut law would govern his relationship with the plaintiffs. (Carrier Decl. ¶ 11).

24. The only evidence that the plaintiffs were ever outside Haiti is that Mr. Mackenson traveled to the Dominican Republic after the alleged abuse and that Mr. Dorcine tried but failed to travel to the Dominican Republic. (*See* Ex. 3 (Mackenson Dep.) at 48:24-49:2; *see* Ex. 2 (Dorcine Dep.) at 51:14-52:2).

## FACTS MATERIAL TO COUNT 3 UNDER HAITIAN LAW.

25. Father Carrier regularly reported to the Board of Directors of the Haiti Fund, Inc. on his visits to PPT and served as an intermediary between the Board of Directors and Mr. Perlitz on many occasions. (Carrier Decl. ¶ 9).

26. The Board knew of and approved all of Father Carrier's travel to Haiti. (Carrier Decl. ¶ 9).

27. Father Carrier regularly brought cash and supplies furnished by the Haiti Fund, Inc. to PPT and Mr. Perlitz. (Carrier Decl. ¶ 9).

28. The Haiti Fund, Inc. paid for all of Father Carrier's travel to Haiti that was not reimbursed by Fairfield University, with the exception of one or two trips paid for by the New England Province of the Society of Jesus, of the approximately 60 to 100 trips to Haiti he took between 1997 and 2008. (Carrier Decl. ¶ 10; *see* Ex. 5 (Carrier Dep.) at 102:24-103:13; Carrier Errata Sheet 1:10-13[16]).

29. The University paid for Father Carrier's travel to Haiti for the Mission Volunteer Program approximately eight times and paid for one University faculty trip. (Carrier Decl. ¶ 8). While Father Carrier was in Haiti on these trips he was acting within the scope of his employment by the University. (Carrier Decl. ¶ 8).

30. Mr. Perlitz operated PPT. (Carrier Decl. ¶ 14).

31. Father Carrier did not hire Mr. Perlitz to work at PPT. (Carrier Decl. ¶ 14).

32. Father Carrier had no authority over Mr. Perlitz. (Carrier Decl. ¶ 14).

33. Father Carrier was not Mr. Perlitz's boss. (Carrier Decl. ¶ 14).

34. Father Carrier did not direct Mr. Perlitz's activities. (Carrier Decl. ¶ 14).

35. Father Carrier did not pay Mr. Perlitz. (Carrier Decl. ¶ 14).

36. Father Carrier never heard anyone tell PPT students that he, Father Carrier, was Mr. Perlitz's boss. (Carrier Decl. ¶ 14)

---

[16] At his deposition, Father Carrier testified to an estimated total of 66 to 110 trips. This estimate was based on math proposed to him by plaintiffs' counsel: Father Carrier estimated six to ten trips per year "generally speaking across those years from 1997 to 2008," which totals 66 to 110 trips over the eleven-year period. (Carrier Dep. 102:24-103:13). This calculation failed to account for the fact that Father Carrier made only two trips in 2008, and so Father Carrier, in his errata, revised the estimate to 60 to 100. (Carrier errata sheet, attached to this Statement as Exhibit 16, at 1:10-13).

37.     To the extent that Mr. Perlitz was under anyone's authority, it was the Haiti Fund, Inc.'s authority. (Carrier Decl. ¶ 14).

38.     Father Carrier did not tell Mr. Perlitz he could not return to PPT as director, but rather Father Carrier opposed Mr. Perlitz's removal at the time because of the manner in which it was done and because Father Carrier did not believe the allegations against Mr. Perlitz to be true. (Carrier Decl. ¶ 15).

39.     Mr. Perlitz was a paid employee of the Haiti Fund, Inc. (Carrier Decl. ¶ 16). Initially the Board of Directors of the Haiti Fund, Inc. directed that Mr. Perlitz be treated as an independent contractor but the Board came to realize that this was a mistake and that he was actually an employee. (Carrier Decl. ¶ 16).

40.     Nicholas Preneta believed that Mr. Perlitz was the boss running the Project and making the necessary decisions for the Project. (Preneta Dep. 33:19-23[17]). Mr. Preneta also viewed Mr. Perlitz as his supervisor, to whom he would bring "any finances, any questions about operations, any questions about staff that would all be to Doug. Doug was the boss, and I went to Doug for everything." (*Id.* (Preneta Dep.) at 48:15-17). Margarett Joseph also believed that Mr. Perlitz was her boss, and the boss of everyone who worked at the Project. (M. Joseph Dep. 126:16-127:10[18]).

41.     Andrew Schultheis recalled that Mr. Perlitz made the day-to-day decisions for the Village (Schultheis Dep. 200:14-201:15[19]). Mr. Perlitz was in charge of hiring, issuing salary checks, and general decision-making. (*See* Ex. 19 (Schultheis Dep.) at 89:10-15). Mr. Perlitz was

---

[17] Excerpts of the Deposition of Nicholas Preneta are attached to this memorandum as <u>Exhibit 17</u>.
[18] Excerpts of the Deposition of Margarett Joseph are attached to this memorandum as <u>Exhibit 18</u>.
[19] Excerpts of the Deposition of Andrew Schultheis are attached to this memorandum as <u>Exhibit 19</u>.

7

the individual to whom Ms. Joseph reported while she was working at the Project, and the decision-maker as to how the Project would be run. (*See* Ex. 18 (M. Joseph Dep.) at 28:7-20).

42. Despite Mr. Perlitz running the day-to-day operations at the Project, Mr. Schultheis still considered the Haiti Fund Board to ultimately be in charge, as "they were the ones raising the money." (*See* Ex. 19 (Schultheis Dep.) at 267:22-25).

43. Mr. Perlitz was required to seek the Board's approval for any major expenditures or changes in the format of the Project. (Tisdale Dep. 225:23-226:20[20]). The Haiti Fund Board created an Operating Committee requiring approval for any expenditure or commitment over $2,500. (*See* Carrier Decl. Ex. 2).

44. When the allegations of Mr. Perlitz's wrongdoing became known, the Haiti Fund, Inc., effectively fired him. (Joyce Dep. 222:17-223:2[21]; McCooey Dep. 214:6-215:11[22]).

FACTS MATERIAL TO COUNT 5 UNDER CONNECTICUT LAW.

45. Father Carrier cannot speak or understand Creole. He understands French fairly well, and can speak French to some extent (he can hold a basic conversation but could not, for example, give a homily in French that he had not written out first). (Carrier Decl. ¶ 12).

46. Father Carrier could not communicate with any of the plaintiffs, beyond the exchange of simple greetings. (Carrier Decl. ¶ 12).

47. Father Carrier never spoke directly with the plaintiffs, except to exchange basic greetings or to speak to them in a group through a translator in the chapel or similar settings. (Carrier Decl. ¶ 12; *see* Ex. 4 (Deriza Dep.) at 107:12-19; *see* Ex. 2 (Dorcine Dep.) at 89:19-

---

[20] Excerpts of the Deposition of Thomas Tisdale are attached to this memorandum as Exhibit 20.
[21] Excerpts of the Deposition of Timothy Joyce are attached to this memorandum as Exhibit 21.
[22] Excerpts of the Deposition of Michael McCooey are attached to this memorandum as Exhibit 22.

90:4; Jerome Dep. 19:6-24, 20:14-21:14[23]; Jheempson Joseph Dep. 115:18-116:11[24]; *see* Ex. 1 (Lecenat Dep.) at 79:5-9; *see* Ex. 3 (Mackenson Dep.) at 136:1-2).

48.     None of the students ever told Father Carrier that any of them had been sexually abused by Mr. Perlitz or by anyone else. (Carrier Decl. ¶ 12)

49.     Father Carrier was not a pastor in Haiti or anywhere else and he had no status in the archdiocese of Cap-Haitien. (Carrier Decl. ¶ 13).

50.     The only function Father Carrier carried out in Haiti as a priest with respect to the plaintiffs was occasional concelebration of the Mass with a Haitian priest, in one instance at the time some of the PPT students received their first communion. (Carrier Decl. ¶ 13; *see also, e.g.* Ex. 1 (Lecenat Dep.) at 133:16-134:15).

51.     Mr. Dorcine is not a Roman Catholic. (*See* Ex. 2 (Dorcine Dep.) at 164:25-165:7, 94:14-18).

                                                                            Respectfully submitted,

                                                                            PAUL E. CARRIER, S.J.

                                                                            By his attorneys:

                                                                            /s/ Theodore J. Folkman
                                                                            Timothy P. O'Neill (phv04968)
                                                                            Theodore J. Folkman (phv04969)
                                                                            Amanda Moger Rettig (phv04967)
                                                                            MURPHY & KING, P.C.
                                                                            One Beacon St., 21st Fl.
                                                                            Boston, Mass. 02108
                                                                            (617) 423-0400
                                                                            tpo@murphyking.com
                                                                            tjf@murphyking.com
                                                                            amr@murphyking.com

Dated: November 14, 2016

---

[23] Excerpts of the Deposition of Wisky Jerome are attached to this memorandum as Exhibit 23.
[24] Excerpts of the Deposition of Jheempson Joseph are attached to this memorandum as Exhibit 24.

                Gene S. Winter (ct05137)
                Benjamin C. White (ct27211)
                ST. ONGE STEWARD
                JOHNSTON & REENS LLC
                986 Bedford St. Stamford, Conn. 06905
                (203) 324-6155
                gwinter@ssjr.com
                bwhite@ssjr.com

*717082*

CERTIFICATE OF SERVICE

      I certify that on November 14, 2016, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by first-class mail to all parties who are unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

      I further certify that on November 14, 2016, I caused a copy of the foregoing document to be served by first-class mail, postage prepaid, on counsel for the defendant, Douglas Perlitz, who is unable to accept electronic service:

| | |
|---|---|
| David T. Grudberg, Esq. | Michael McCooey |
| Carmody & Torrance, LLP | Chair, Haiti Fund, Inc. |
| 195 Church Street, P.O. Box 1950 | 475 Polly Park Road |
| New Haven, Conn. 06509-1950 | Rye, N.Y. 10580 |

                                         /s/ Theodore J. Folkman