UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERVIL ST. LOUIS,<br><br>                Plaintiff,<br><br>      vs.<br><br>DOUGLAS PERLITZ, et al.,<br><br>                Defendants. | Civ. A. No. 3:13-cv-01132-RNC<br><br>Dated: November 14, 2016 |
| *This document relates to:*<br><br>*Lecenat v. Perlitz, No. 13-1633*<br>*Dorcine v. Perlitz, No. 13-1701*<br>*Mackenson v. Perlitz, No. 14-125*<br>*Deriza v. Perlitz, No. 14-668* | |

### DECLARATION OF PAUL E. CARRIER, S.J.

I, Paul E. Carrier, S.J., make the following declaration.

1.      I am one of the defendants in these cases. I make this declaration on my own personal knowledge. I understand that the purpose of this declaration is to support the motion for summary judgment that my lawyers plan to make.

2.      I knew Mr. Perlitz. Mr. Perlitz founded PPT in 1997. I knew that he was going to live in Haiti to work with the poor, and I knew that he had founded the school. I admired what he had done and was happy to be a supporter of the School. But Mr. Perlitz did not need, and never asked for, my permission to start the School. Nor did he need or ask for my permission to run the School as he thought best. Mr. Perlitz was a layman not subject, in a religious sense, to my

authority or to the authority of any other Jesuit. Nor was Mr. Perlitz subject to the authority of the Order of Malta in a religious sense, because he was not a member of the Order of Malta.

3. Certainly no one ever gave or offered me anything of value in return for arranging or facilitating Mr. Perlitz's travel from the United States to Haiti or from Haiti to the United States. To the extent I was reimbursed for my expenses—a topic I discuss below—those reimbursements were not dependent in any way on me having any involvement with Mr. Perlitz's travel.

4. I understand the plaintiffs have suggested that I took money from the Haiti Fund, Inc. that I was not entitled to receive. This is untrue. I was reimbursed for various expenses by the Haiti Fund, Inc., but those reimbursements aside, I never took any money from the Haiti Fund, Inc. I also never received any salary or compensation from the Haiti Fund, Inc. I did transport cash belonging to the Haiti Fund, Inc. to Haiti, where I distributed it to Mr. Perlitz or to others for PPT-related purposes. In some cases, I withdrew funds from the Haiti Fund, Inc.'s bank account in order to transport it in cash by means of checks payable to myself or to cash, with the knowledge and approval of the Haiti Fund, Inc. But I did not retain any of this money for myself.

5. I also understand the plaintiffs have suggested that I took money from Fairfield University that I was not entitled to receive. Again, this is untrue. I was reimbursed for various expenses by Fairfield University, but those reimbursements aside, I never took any money from Fairfield University. As with the Haiti Fund, Inc., I traveled with Fairfield University cash to Haiti on some occasions and distributed that cash to Mr. Perlitz or others for PPT-related purposes. In those instances, I did not retain any cash for myself. I would submit a check request

through the proper channels at the University, and a check payable to me (or later, to another Jesuit) would be issued, which I would cash in order to obtain the cash I was taking to Haiti.

6. Indeed, I never received any of the money that I, as an employee of the University, would ordinarily have been entitled to receive under the civil law. Instead, by agreement between me and the University, and by agreement between the University and the Fairfield Jesuit Community, my salary was paid directly to the Fairfield Jesuit Community. Attached as Exhibit 1 to this declaration are true copies of the Compensation Payment Directives I signed directing that my salary be paid to the Fairfield Jesuit Community, for each year from 1988 to 2005, excluding 1997 and 2004. I believe I signed Directives in those years. In any event, this Directive was in effect for the entire time I was employed by Fairfield University.

7. My purpose in everything I did with regard to the Haiti Fund, Inc. and PPT was to support the mission of the school, not to benefit myself financially or to obtain other benefits for myself, for example, travel reimbursement. Under the proper law of the Society of Jesus, no Jesuit is allowed to engage in activities for his own profit or to keep any profits earned, I have never done so since entering the Society. Aside from nominal amounts of spending money for daily needs, which are provided to me by the Society of Jesus, I have not retained or held any money of my own since I entered the Society of Jesus.

8. During the time I was employed by Fairfield University, which ended on June 30, 2006, I traveled to Haiti with students on approximately eight occasions as part of the Mission Volunteer Program. I also traveled to Haiti with only University faculty members on one occasion. The University paid for my travel to Haiti for the Mission Volunteer Program and for the faculty trip. Participating in these trips was part of my job at the University.

9. I regularly reported to the Board of Directors of the Haiti Fund on my visits to PPT and served as intermediary between the Board and Mr. Perlitz on many occasions. The Board knew of all of my travel to Haiti, and from my discussions with other members of the Board, I know that the Board approved of my travel (though I do not recall whether the Board affirmatively voted to authorize each trip). I regularly brought cash and supplies furnished by the Haiti Fund to PPT and Mr. Perlitz.

10. The Haiti Fund, Inc. paid for all of my travel to Haiti that was not reimbursed by Fairfield University, with the exception of one or two trips paid for by the New England Province of the Society of Jesus.

11. Until this lawsuit was underway, I never gave any thought to the law that would apply if any of the students at PPT were to claim that I was liable to them on account of sexual abuse committed against them by Mr. Perlitz.

12. I understand French, fairly well, and I can speak French to some extent (I can hold a very basic conversation but cannot, for example, give a homily in French that I have not written out first), but I neither speak nor understand Haitian Creole. Although French and Creole are related, they are not mutually intelligible, at least to me. I do know several words in Creole, including simple greetings. Thus my only communications with any of the students at PPT who spoke no French were limited to basic exchanges of simple greetings. There were a handful of students who could speak some French, but even with those students, my communications never extended beyond a few sentences of greeting, remarks on the weather, and so forth, as my spoken French was limited. Certainly none of the students ever told me that he or anyone else had been sexually abused by Mr. Perlitz or by anyone else.

13. I was not a pastor in Haiti or anywhere else, and I had never received faculties from the archbishop in the archdiocese of Cap-Haitien. The only function I carried out in Haiti as a priest with respect to the plaintiffs was occasional concelebration of the Mass with a Haitian priest. In one instance some of the PPT students received their first communion and confirmation.

14. Mr. Perlitz operated PPT. I did not hire him, I had no authority over him, I was not his boss, I did not direct his activities, I did not pay him, and I never heard anyone tell PPT students that I was Mr. Perlitz's boss. To the extent that Mr. Perlitz was under anyone's authority, it was the Haiti Fund, Inc.'s authority. Attached as Exhibit 2 are the minutes of a June 13, 2001 meeting of the Board of the Haiti Fund in which we confirmed that any PPT expenditure over $2,500 required Board approval.

15. I also did not tell Mr. Perlitz he could not return to PPT as director, but rather opposed his removal at the time because of the manner in which it was done and because I did not believe the allegations against him to be true. A copy of my May 1, 2008 email expressing my opposition to Mr. Perlitz's removal is attached hereto as Exhibit 3.

16. Mr. Perlitz was a paid employee of the Haiti Fund. Initially the Board of Directors the Haiti Fund directed that Mr. Perlitz be treated as an independent contractor but we came to realize that this was a mistake and that he was actually an employee. Attached as Exhibit 4 is a proposal regarding the treatment of Mr. Perlitz as an employee of the Haiti Fund, which the Board of the Haiti Fund considered in 2008. Attached as Exhibit 5 are the minutes of an April 23, 2008 meeting of the Board in which we approved the proposal to treat Mr. Perlitz as an employee of the Haiti Fund retroactive to the start of that year.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 4, 2016.

                                                          /s/ Paul E. Carrier, S.J.
                                                          Paul E. Carrier, S.J.

CERTIFICATE OF SERVICE

      I certify that on November 14, 2016, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by first-class mail to all parties who are unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

      I further certify that on November 14, 2016, I caused a copy of the foregoing document to be served by first-class mail, postage prepaid, on counsel for the defendant, Douglas Perlitz, who is unable to accept electronic service:

| David T. Grudberg, Esq. | Michael McCooey |
|---|---|
| Carmody & Torrance, LLP | Chair, Haiti Fund, Inc. |
| 195 Church Street, P.O. Box 1950 | 475 Polly Park Road |
| New Haven, Conn. 06509-1950 | Rye, N.Y. 10580 |

      /s/ Theodore J. Folkman

717577