STATEMENT OF THE FACTS

Douglas Perlitz, an American, founded a school in Cap-Haitien known as Project Pierre Toussaint in the late 1990s. The school, which began as a day program and later expanded to include a residential program, served poor children living on the streets of Cap-Haitien. It employed several Haitian adults as teachers and staff members. Several American volunteers also worked at the school at various times. Each of the plaintiffs alleges that Mr. Perlitz sexually abused him.

Mr. Perlitz received his undergraduate degree in theology from Fairfield University in Fairfield, Connecticut, and a master's degree in theology from Boston College before founding the school. While he was at Fairfield, he came to know my client, the Rev. Paul E. Carrier, S.J., a Jesuit priest who at relevant times was the Director of Campus Ministry and the chaplain of the University, which had historical ties to the Society of Jesus. Father Carrier was also a professor at Farifield, although he never taught at PPT and was not acting as a professor in his dealings with the plaintiffs. Father Carrier traveled several times a year to Cap-Haitien—sometimes accompanying student volunteers from the University (so-called "Mission Volunteer trips"), sometimes accompanying members of the Order of Malta (a Catholic religious order, some of whose members supported Project Pierre Toussaint financially), sometimes traveling on his own. On his visits to Project Pierre Toussaint, Father Carrier never spoke with any of the students, beyond exchanging simple greetings, as he did not speak Creole.  Indeed, the plaintiffs have pleaded that Fr. Carrier failed to speak with the plaintiffs in a way that would have allowed them to tell him what they allege had occurred. Two Haitian staff members knew of the abuse well before 2008, but they never told Father Carrier what they knew.

At Fairfield University, Father Carrier was active in raising funds for Project Pierre Toussaint. He raised money from the school from the congregation that attended Mass at the University Chapel as well as from Connecticut philanthropists, and he helped to organize fundraisers. After Project Pierre Toussaint had been in existence for a few years, several of the people active in aiding the school formed The Haiti Fund, Inc., a Connecticut not-for-profit corporation. Father Carrier served at various times as a director and as president of that corporation. When Father Carrier made Mission Volunteer trips, it is undisputed that he was acting on behalf of Fairfield University. Fairfield University paid for his travel on those occasions. .

The remainder of Father Carrier's travel to PPT (with the exception of one or two trips of the 60-100 trips he made in total) was paid for by the Haiti Fund, Inc. Father Carrier regularly reported to the board of directors of the Haiti Fund, Inc. regarding his travel to Haiti and acted as intermediary between the Board and Mr. Perlitz. The Board knew of and approved all of his travel to Haiti. Father Carrier regularly brought cash and supplies furnished by the Haiti Fund, Inc. to PPT and Mr. Perlitz. He was an officer or director (or both) of the Haiti Fund, Inc. at all relevant times.

Father Carrier sometimes celebrated Mass in English for the volunteers working at the school, and he sometimes concelebrated Mass with a Haitian priest of the Archdiocese of Cap-Haitien, who said the Mass in Creole. On one occasion, Father Carrier was the minister for the First Communion of several of the students. Father Carrier had received no faculties from the

Archbishop of Cap-Haitien. Some but not all of the plaintiffs are or have been Roman Catholics for some period of time.

There is no evidence that Father Carrier saw Mr. Perlitz abusing any student or that any student, or anyone else, told Father Carrier at relevant times that Mr. Perlitz was abusing students. There is, however, testimony that Father Carrier saw students in Mr. Perlitz's bedroom (which Mr. Perlitz also used as his office), saw students watching pornography with Mr. Perlitz, knew students were staying overnight in Mr. Perlitz's house, and saw Mr. Perlitz hug students inappropriately. Although this testimony is false, I ask you to assume for purposes of your analysis that it is true.

You should know that two students, of the more than 140 students now or previously represented by the plaintiffs' lawyers, have claimed that Father Carrier sexually abused them. Again, these claims are false. One of the two students voluntarily dismissed his own lawsuit after contradicting his earlier sworn statement that no one other than Mr. Perlitz had sexually abused him. The other student is not one of the plaintiffs whose claims are to be tried, and he will not be a witness at trial.

Mr. Perlitz received a small stipend, at first from the funds Father Carrier and others raised for Project Pierre Toussaint in Connecticut, and later from funds raised by the Haiti Fund, Inc. The Haiti Fund, Inc. took the position that under the tax law, Mr. Perlitz had to be classified as an employee of the corporation for federal tax purposes. There is no evidence of a signed contract of employment. Although the role of the Haiti Fund, Inc. is a subject of dispute, I ask you to assume that the board of directors of the Haiti Fund, Inc., of which Father Carrier was a member, supervised and managed the overall operation of Project Pierre Toussaint.

There has been testimony that Mr. Perlitz told the students, in Creole, that Father Carrier was a "boss" of the school, that he was the "grandfather" of the school, or that in some other way he was an important person in the management of the school. I ask you to assume this testimony is true. There is no evidence that Father Carrier knew Mr. Perlitz had said such things or that he had ever expressly or implicitly authorized Mr. Perlitz to make such statements.

In 2008, after allegations concerning Mr. Perlitz came to light, and after Father Carrier was removed from the board of directors, the Haiti Fund, Inc., removed Mr. Perlitz from his position at Project Pierre Toussaint and forbade him to return. Mr. Perlitz ultimately was arrested in the United States, and after lengthy proceedings, he pleaded guilty to one charge of violating 18 U.S.C. § 2423, a statute forbidding persons to travel from the United States to a foreign country with the intent to engage in illicit sexual conduct, which includes of course sexual conduct with minors.

716509