# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Gervil St. Louis, a.k.a. St. Louis Vervil, | Civil Action No.: 3:13-cv-01132 (RNC) |
| Plaintiff, | Consolidated with |
| v. | 3:13-cv-1225·RNC; 3:13-cv-1269-RNC; |
| Douglas Perlitz; Father Paul E. Carrier, S.J.; Hope E. Carter; Haiti Fund, Inc.; Fairfield University; The Society of Jesus of New England; Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes and of Malta, American Association, USA., a.k.a. the Order of Malta, American Association, USA; John Doe One; John Doe Two; John Doe Three; John Doe Four; John Doe Five; John Doe Six; and John Doe Seven, | 3:13-cv-437 RNC; 3:13-cv-1480-RNC; |
| | 3:13-cv-1626 RNC; 3:13-cv-1627-RNC; |
| | 3:13-cv-1628-RNC; 3:13-cv-1630-RNC; |
| | 3:13-cv-1631 RNC; 3: 13-cv-1633-RNC; |
| | 3:13-cv-1634-RNC; 3:13-cv-1635-RNC; |
| Defendants. | 3:13-cv-136·RNC; 3:13-cv-1637-RNC; |
| | 3:13-cv-1638-RNC; 3:13-cv-1639-RNC; |
| | 3:13-cv-1640-RNC; 3:13-cv-1641-RNC; |
| | 3:13-cv-1642-RNC; 3:13-cv-1644-RNC; |
| | 3:13-cv-1645-RNC; 3:13-cv-1647-RNC; |
| | 3:13-cv-1648 RNC; 3:13-cv-1701-RNC; |
| | 3:13-cv-1767 RNC; 3:13-cv-1768-RNC; |
| | 3 13-cv-1769 RNC; 3:13-cv-1881-RNC; |
| | 3:13-cv-1906-RNC; 3:13-cv-1907-RNC; |
| | 3:14-cv-0125·RNC; 3:14-cv-0668-RNC |

---

This document applies to:

*Lecenat v. Perlitz, et al., 3:13-cv-1633-RNC;*

*Dorcine v. Perlitz, et al., 3:13-cv-1701- RNC,*

*Deriza v. Perlitz, et al., 3:14-cv-668- RNC;*

*Mackenson v. Perlitz, et al., 3:14-cv-125- RNC*

January 12, 2017

## <u>DECLARATION OF MARIO JOSEPH, A.V.</u>

1. I am a licensed attorney who began practicing law in Haiti in 1993, first within the jurisdiction of the Bar of Saint-Marc, followed by the Bar of the Capital, Port-au-Prince, Haiti. I have extensive experience in civil trials before the tribunals and courts of Haiti. I have served as the managing attorney at the Office of International Attorneys (OIA) (*Bureau des Avocats Internationaux (BAI)*) in Port-au-Prince, Haiti, since 1996. Under my supervision, the OIA provides legal representation services to the victims of severe violations of human rights in this country. We represent the civil interests of our clients before tribunals of first degree, appellate courts and international tribunals.

2. Our firm works with judges, state attorneys, the National Police of Haiti (NPH) (*Police Nationale d'Haïti (PNH)*) and government officials by providing them with legal and technical assistance as well as financial support, and by advising the NPH. The OIA provides training to Haitian trainee attorneys and to students and/or legal interns from the United States, France, Belgium and several other countries.

3. Prior to joining the OIA, I served as a legal counsel and instructor for the Justice of the Peace Commission of the Catholic Church of Haiti. I held administrative positions and worked as a teacher. I graduated from the *Ecole Normale*, i.e., as a school teacher, and from the School of Law of the Gonaives, Haiti. I am also a former member of the Legal Reform Commission of Haiti. I have received two Ph.D. degrees, *honoris causa*, from the University of San Francisco and Moravian College, respectively.

4.  The Inter-American Court of Human Rights, whose jurisdiction was accepted by Haiti, has thus far handled two matters pertaining to Haiti. In the first matter, *Yvon Neptune v. Haiti* (2008), I testified before the court as an expert in Haitian law regarding the civil and criminal issues arising out of the case. In the second matter, *Fleury v. Haiti* (2011), I provided an affidavit as an expert in Haitian law following the request of the Inter-American Commission on Human Rights.

5.  The attorneys in the present matter have engaged my services to provide legal opinions under Haitian law. In order to prepare my opinions, I read French translations of: a) the complaint of Wadson DORCINE; b) the declaration of Michel Emmanuel Succar; and c) "Pleadings of Father Carrier on the Application of Haitian law in the Matter of Perlitz." Such documents are attached as an appendix to the present declaration under "Exhibit A," and the original versions are attached as an appendix under "Exhibit B." I consulted Brian CONCANNON, a U.S. licensed attorney who has expertise in Haitian law and who speaks French and Haitian Creole, in order to help me understand the American legal context. I will be compensated for my services at the hourly rate of U.S. $300.

6.  They (the attorneys) asked me to explain if the facts set forth in the first 31 pages of the complaint of Wadson DORSINE are true, how Haitian law will apply to the acts of Father Carrier.

7.  Under Haitian law, an action seeking civil reparation may be brought before a tribunal in three different ways. First, during a criminal trial, pursuant to

Article 54 and seq. of the Haitian Criminal Instruction Code, the victim may act as a civil party and seek civil damages from the criminal judge as reparation for the loss that has been suffered. Additionally, the victim has the option of filing a new action seeking damages before a civil tribunal, provided that the accused party is found guilty by the criminal judge. Finally, the victim may introduce his/her action directly before a civil judge.

8. Pursuant to Article 45 of the Haitian Penal Code: *". . . shall be punished, as accomplices of a criminal offense or misdemeanor, those who, by way of a gift, a promise, threats, an abuse of authority or power, conspiracy or unlawful schemes, have instigated such criminal acts or given instructions to commit them."* The notion of an accomplice under Haitian law is broad and flexible. A person can be considered to be an accomplice of another regardless of whether there was a pre-existing arrangement between them. When a subordinate is prosecuted as the primary author of a crime, the subordinate's principals will be considered as accomplices to the extent that they have organized or tolerated the criminal acts of their subordinates, even when the principals cannot be prosecuted as co-authors.

9. Pursuant to Article 44 of the Haitian Penal Code, the accomplice is subject to the same punishments as the primary author, and the accomplice will be jointly and severally liable with the primary author for the civil reparations.

10. For example, in the trial pertaining to the Massacre of Raboteau in 2000, where I acted as the legal counsel for the victims, who were also seeking civil damages, the criminal tribunal, assisted by a jury, condemned the authors and accomplices jointly and severally to pay damages as a civil

reparation. Among the persons condemned in the civil trial were those who had directly participated in the massacre as well as supervisors who had not directly participated but who had breached their duty to refrain from incitement and to prevent or punish the wrongful acts of their subordinates.

11. In order to better illustrate the methodologies employed by Haitian lawyers in practice, it is important to briefly analyze some articles of the Haitian Civil Code governing non-contractual civil liability.

12. Article 1168 of the Haitian Civil Code provides: "*Any act of any individual, which causes another to suffer a loss, obligates the person through whose fault such loss occurred to repair it*."

13. Article 1169 of the Haitian Civil Code provides: "*Everyone is responsible for the damages he or she has caused by his or her own acts or by his or her negligence or lack of prudence*."

14. Article 1170 of said Code provides: "*One is responsible for the damages caused by one's own acts as well as for the damages caused by those who are under one's supervision or direction or by the things that are under one's control*."

15. The foregoing provisions clearly set forth the principles governing non-contractual civil liability under Haitian law. They are also useful as means to better understand the general principles of civil liability. The liability of supervisors is broad and dependent on the facts. A supervisor in an organization may be liable when the people he or she supervises have caused

damage, if the supervisor had the ability to prevent such damages. Individual liability does not depend on the formal title of the supervisor but instead depends on the practical context of the supervisor's activities.

16. According to the decision of the Supreme Court of the Republic of Haiti first section of May 6, 1942, as published in the official Journal No. 130 of June 23, 1942, below Article 1170, *it is said: "The burden of proof lies upon the principal who may rebut the legal presumption of liability by any means."*

17. Article 1170 of the Civil Code creates a real legal presumption, which means that the party seeking recovery of the loss caused by a thing only has to prove the existence of the loss, whereby the thing that caused it was under the control of the defendant, the liability attached to the control exercised over the thing but not to the thing itself.

18. The victim only has to prove the loss suffered and the circumstances in which it occurred; the guardian of the thing has the burden of establishing the existence of exoneratory grounds. (*Supreme Court, Second Section, decision dated June 10, 1954, les Deb, No. 131 of July 1, 1954*).

19. The terms such as "guardian of a thing" and "principal" are not technical terms and therefore do not require a formal relationship in a contract. The relationship may be that of an employee/employer, an agent, a family or other. Instead, these terms describe a situation of liability in fact, which becomes a liability under law. Thus, the tribunal has to decide on the basis of the evidence if the relationship justifies the imposition of civil liability.

20. Additionally, one should stress that the principle of vicarious liability derives from torts and quasi-torts.

21. Regarding quasi-torts, the proof of the facts establishing the fault of the responsible agent can be made by testimony, but it can also be proved by way of presumption. *Supreme Court, May 5, 1992, Aff.P.C.S. v. Lindor.*

22. A quasi-tort, hence the obligation to repair the losses resulting therefrom, exists only if there is a fault. It does not matter whether the obligation to repair the injury lies with the author of the fact or with his or her principal. *Supreme Court, February 11, 1924; Aff. Tellus v. Gay.* The fault is not subject to the conditions of bad faith or ill will.

23. The liability results from any act or omission. and the simple error, despite the confession made in good faith, derives from a lack of attention or negligence. *Supreme Court, June 17, 1925, Aff. Martineau v. Hasco.*

24. If the present matter was before a Haitian tribunal, Father Carrier could be both an accomplice and/or a principal of the acts committed by his subordinate. First, he could be held as an accomplice because he provides money (donations) to his subordinate in order to run the school, which was used by the subordinate to commit his acts. Moreover, he is a principal to the extent that he is liable for the acts committed by his subordinate in his capacity as chief of the school, which received the donations that facilitated the commission of the crime. Therefore, in both cases Father Carrier incurs civil liability for the damages suffered by the victims, which were caused by his subordinate.

25. The civil laws of Haiti do not accord any protection to the civil liability based on the status of the principal within the hierarchy of a given organization. As for the entire organization, the supervisors, the officers, the owners, etc., it is a question of fact pursuant to Article 1170 of the Civil Code. The tribunal may inquire about the control and practices exercised by the principal over the person who caused the damage.

26. The trial pertaining to Raboteau, which took place in Gonaives in 2000, prosecuting members and high-ranked persons of the Armed Forces of Haiti (AFH) *(Forces Armée d'Haiti (FAD'H))* and the paramilitary group FRAPH for murder and complicity in the commission of a murder, may be used as a relevant example with respect to the causal relationship between the principal and the subordinate in terms of liability when a criminal offense has been committed.

27. Indeed, in light of this trial, it should be noted that in one of the holdings set forth in the order of the dean of the criminal tribunal, it is stated: "*The intellectual or material author of a murder and/or the accomplice of such murder, the intellectual author of murders and attempted murders, torturous acts, battery, false imprisonment, etc. (see Order of the Criminal Judge of the First Degree Tribunal of the Gonaives, Jean Senat FLEURY, dated August 30, 1999), shall incur the same punishment.*" The same applies in regard to the civil liability that may apply jointly and severally to the principal and/or his or her subordinate.

28. The Criminal Tribunal of the Gonaives condemned all the members of the high military chief of staff of the AFH to pay civil damages. Such condemnation was imposed upon all members individually, jointly and severally. Even though the judgment of the tribunal was reversed by the Supreme Court in 2005, the grounds raised by the Court had nothing to do with the causal relationship between the subordinates and their principals.

29. In the commentaries set forth under Article 1170 of the Haitian Civil Code as updated by Jean VANDAL on vicarious liability, it is expressly stated:

*1) The liability of the principal may only be rebutted if the latter proves that he is exonerated from liability* (**Supreme Court, First Section, dated May 6, 1942, No. 130 of June 23, 1942**), *2) Article 1170 holds liable the supervisors and principals for the damages caused by their subordinates and employees, committed within the scope of the functions for which they were hired; 3) it does not matter whether such hired persons or entrepreneurs work for a flat rate, as long as the acts committed by the subordinates or employees have occurred within the scope of the functions for which they were hired; 4) the individual agreements between the supervisors, principals and their subordinates are not enforceable against third parties.* (**Decision of the Supreme Court dated June 5, 1945, Gazette du Palais of June 22, 1945 p. 741 and seq.**), *5) With respect to vicarious liability, a judge does not have to establish any fault on the part of the principal. Such liability derives from the choice that the supervisor made when selecting the subordinate and the trust he placed in the subordinate.* (**Decision of the Supreme Court, second section of December 14, 1954, Les Bes, No. 145 of January 20, 1955**), *6) The judge*

***whose decision is based on the legal presumption set forth in Article 1170 of the Haitian Civil Code is not obligated to characterize the fault that was committed.*** **(Supreme Court, First Section, decision of March 6, 1963, Jean Baptiste JACOB, Bulletin of Court Decisions 1985, Book V, p. 208n and seq.)**

Regarding the status of the subordinate: The ***question of whether a subordinate is acting within the scope of his functions or not is a question of fact that is subject to the jurisdiction of the lower courts.*** (Supreme Court, Second Section, Decision of December 14, 1954, Les Deb. No. 145 of January 20, 1955)

I, Mario Joseph, A.V., in accordance with Section 1746 of Title 28 of the United States Code, declare under penalty of perjury under the laws of the United States that the foregoing is true and accurate.

Signed on January 12, 2017.                    [handwritten signature]

                                               Mario Joseph, A.V.



United Language Group
3 Columbus Circle
14th Floor
New York, NY 10119
+1 888.601.9814
legaltranslations@ulgroup.com

State of New York      )
                         )       ss:
County of New York    )

### Certificate of Accuracy

This is to certify that the attached:

**Declaration of Mario Joseph**

originally written in the French language is, to the best of our knowledge and belief, a true, accurate and complete translation into the English language.

Dated: January 13, 2017

_____
Wim Schrieks
Project Manager, Legal Translations
United Language Group

Sworn to and signed before
me, this _____13th_____day of
_____January_____2017

_____
Notary Public

ROBERT J. MAZZA
Notary Public, State of New York
No. 01MA5057911
Qualified in Kings County
Commission Expires April 1, 2018

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERVIL ST. LOUIS, a/k/a ST. LOUIS GERVIL, | Civil Action No.: 3:13-cv-01132 (RNC) |
| Plaintiff, | Consolidated with: |
| | 3:13-cv-1225-RNC; 3:13-cv-1269-RNC; |
| v. | 3:13-cv-1437-RNC; 3:13-cv-1480-RNC; |
| | 3:13-cv-1626-RNC; 3:13-cv-1627-RNC; |
| DOUGLAS PERLITZ; FATHER PAUL E. CARRIER, S.J.; HOPE E. | 3:13-cv-1628-RNC; 3:13-cv-1630-RNC; |
| CARTER; HAITI FUND, INC.; FAIRFIELD UNIVERSITY; THE | 3:13-cv-1631-RNC; 3:13-cv-1633-RNC; |
| SOCIETY OF JESUS OF NEW ENGLAND; SOVEREIGN MILITARY | 3:13-cv-1634-RNC; 3:13-cv-1635-RNC; |
| HOSPITALLER ORDER OF ST. JOHN OF JERUSALEM OF RHODES | 3:13-cv-1636-RNC; 3:13-cv-1637-RNC; |
| AND OF MALTA, AMERICAN ASSOCIATION, U.S.A., a/k/a | 3:13-cv-1638-RNC; 3:13-cv-1639-RNC; |
| ORDER OF MALTA, AMERICAN ASSOCIATION, USA; JOHN | 3:13-cv-1640-RNC; 3:13-cv-1641-RNC; |
| DOE ONE; JOHN DOE TWO; JOHN DOE THREE; JOHN DOE | 3:13-cv-1642-RNC; 3:13-cv-1644-RNC; |
| FOUR; JOHN DOE FIVE; JOHN DOE SIX; and JOHN DOE | 3:13-cv-1645-RNC; 3:13-cv-1647-RNC; |
| SEVEN, | 3:13-cv-1648-RNC; 3:13-cv-1701-RNC; |
| | 3:13-cv-1767-RNC; 3:13-cv-1768-RNC; |
| | 3:13-cv-1769-RNC; 3:13-cv-1881-RNC; |
| Defendants. | 3:13-cv-1906-RNC; 3:13-cv-1907-RNC; |
| | 3:14-cv-0125-RNC; 3:14-cv-0668-RNC |
| *This document applies to:* | |
| *Lecenat v. Perlitz, et al.,* 3:13-cv-1633-RNC; | January 12, 2017 |
| *Dorcine v. Perlitz, et al.,* 3:13-cv-1701- RNC; | |
| *Deriza v. Perlitz, et al.,* 3:14-cv-668- RNC; | |
| *Mackenson v. Perlitz, et al.,* 3:14-cv-125- RNC | |

## DECLARATION DE MARIO JOSEPH, AV.

1. Je suis licencié en droit et je pratique le droit en Haïti depuis 1993, d'abord au Barreau

de Saint-Marc puis au Barreau de la Capitale, Port-au-Prince, Haïti. J'ai une

expérience étendue sur les procès civils dans les Tribunaux et Cours en Haïti. Je suis le

« Managing Attorney » du Bureau des Avocats Internationaux (BAI) à Port-au-Prince,

Haïti, depuis 1996. Sous ma direction, le BAI offre une représentation légale aux

victimes de graves violations de Droits Humains dans le pays. Nous représentons les

intérêts civils de nos clients, devant les tribunaux de première instance, les cours

d'appel, et les instances internationales.

2.  Notre office travaille avec des Juges, des Commissaires du Gouvernement, la Police

Nationale d'Haïti (PNH) et des officiels du Gouvernement en les donnant une

assistance légale, technique et matérielle, aussi bien des conseils à la PNH. Le BAI

entraine des avocats stagiaires haïtiens et reçoit des étudiants et /ou avocats stagiaires

en droit des Etats Unis, de la France, de la Belgique et de plusieurs autres pays.

3.  Avant de rejoindre le BAI, j'ai travaillé comme avocat et instructeur de la Commission

Justice et Paix de l'Eglise Catholique d'Haïti. J'ai occupé des postes administratifs et

d'enseignants. Je suis un gradué de l'Ecole Normale, c'est-à-dire professeur de

collège, et de l'Ecole de Droit des Gonaïves, Haïti. J'étais aussi membre de la

Commission de Réforme du Droit en Haïti. J'avais reçu deux Doctorats, *honoris*

*causa,* de l'University of San Francisco et Moravian College.

4.  La Cour Interaméricaine des Droits Humains, dont Haïti a accepté sa juridiction, a

traité, jusqu'à présent, deux dossiers relatifs à Haïti. Dans le premier, *Yvon Neptune v.*

*Haïti* (2008), j'avais témoigné devant la cour comme expert en droit Haïtien, sur les

questions civiles et pénales. Dans le deuxième, *Fleury v. Haïti* (2011), à la demande de

la Commission Interaméricaine des Droits Humains, j'ai fourni un affidavit comme

expert en droit haïtien.

5. J'ai été engagé par les avocats dans le présent dossier à fournir des opinions sur le droit

haïtien. Pour préparer mes opinions, j'avais lu des traductions françaises de : a) la

plainte de Wadson DORCINE, b) la Déclaration de Michel Emmanuel Succar, et c)

« Argument de Père Carrier Sur l'Application du droit Haïtien Dans l'Affaire Perlitz ».

Ces documents sont en annexe à cette Déclaration comme « Exhibit A », et les

versions originaux sont en annexe comme « Exhibit B. »  J'avais consulté Brian

CONCANNON, un avocat américain qui a de l'expérience dans le droit haïtien, et qui

parle Français et Créole Haïtien, pour m'assister à comprendre le contexte légale

américain. Je serai compensé pour mon travail sur la base d'un taux horaire de $300

U.S.

6. Ils ( les avocats) m'ont demandé d'expliquer si les faits affichés dans les 31 premières

pages de la Plainte de Wadson DORSINE étaient vrais, comment le droit Haïtien

s'appliquera à la conduite de Père Carrier.

7. En droit haïtien, l'action en Réparation civile peut être introduite par devant un

tribunal de trois manières. D'une part, à l'occasion d'un procès pénal, et aux termes de

l'article 54 et suivants du Code d'Instruction Criminelle haïtien, dans la mesure où la

partie victime peut se constituer partie civile et demander au juge pénal des dommages

et intérêts en contre partie des préjudices subis. D'autre part, la victime a aussi la

possibilité d'introduire une nouvelle action en dommages et intérêts par devant un

tribunal civil dès lors que le juge pénal reconnait la culpabilité de l'accusé. Enfin, la

victime peut exercer l'action directement par devant un juge civil.

8. Suivant l'article 45 du Code Pénal Haïtien : *« seront punis comme complice d'une action de crime ou délit ceux qui, par dons, promesses, menaces, abus d'autorité ou de pouvoir, machinations, ou artifices coupables auront provoqué cette action ou donné des instructions pour la commettre »*. La complicité dans le droit Haïtien est un concept assez large et flexible. La complicité peut exister sans qu'il y ait une entente préalable entre les différentes personnes. Lorsqu'un subordonné est poursuivi comme auteur principal d'un crime et même lorsque ses supérieurs hiérarchiques ne peuvent être poursuivis comme co-auteurs, ils sont considérés comme complices dans la mesure où ils ont organisé ou toléré les agissements criminels de leurs subordonnés.

9. Dans le Code Pénal Haïtien en son article 44, le complice est aussipuni de la même peine que l'auteur, et il sera aussi responsable des réparations civiles solidairement avec l'auteur.

10. Par exemple, dans le procès du Massacre de Raboteau en 2000 dont j'étais l'avocat des victimes, partie Civile, le Tribunal Criminel avec assistance de jury a condamné à la réparation civile les auteurs et les complices aux dommages-intérêts solidairement. Parmi ces condamnés civils, il y avait ceux qui ont participé directement dans le massacre, mais aussi des superviseurs qui n'ont pas participé directement, mais qui n'ont pas respecté leur obligation à décourager, empêcher ou punir les mauvais actes de leurs subordonnés.

11. Pour bien illustrer les approches méthodologiques des juristes haïtiens dans la pratique, il est important de faire une analyse sommaire de quelques articles du Code Civil Haïtien établissant la responsabilité civile extracontractuelle.

12. L'art.-1168 du Code Civil Haïtien énonce : « *Tout fait quelconque de l'homme, qui cause à autrui un dommage, oblige celui par la faute duquel il est arrivé à le réparer* ».

13. L'art 1169 du code civil haïtien stipule : « *Chacun est responsable du dommage qu'il a causé, non seulement par son fait, mais encore par sa négligence ou son imprudence* ».

14. L'art 1170 du même code déclare : « *On est responsable non seulement du dommage que l'on cause par son propre fait, mais encore de celui qui est causé par le fait des personnes dont on doit répondre ou des choses que l'on a sous sa garde* ».

15. Ces textes énoncent clairement les principes de responsabilité civile extracontractuelle dans le droit haïtien. Ils peuvent aider aussi à comprendre le principe général de la responsabilité civile. La responsabilité des superviseurs est large, et dépend des faits. Un superviseur dans une organisation pourrait être responsable si les gens dont il supervise ont causé du dommage, si le superviseur avait la possibilité d'empêcher le

dommage. La responsabilité individuelle ne dépend pas sur le rôle formel du superviseur, mais sur le contexte pratique de ses activités.

16. Selon l'arrêt de la Cour de Cassation de la République d'Haïti première section du 6 Mai 1942, publié dans le Journal officiel N0 130 du 23 Juin 1942 au bas de l'article 1170, *il est dit : « c'est au commettant à faire tomber par tous les moyens de preuve la présomption de responsabilité que la loi fait peser sur lui ».*

17. *L'*article 1170 Code Civile crée une véritable présomption légale, c'est-à-dire que la partie qui réclame la réparation du dommage causé par le fait d'une chose, n'a à prouver que l'existence du dommage et le fait que la chose qui l'a causé était sous la garde du défendeur, la responsabilité étant attachée à la garde de la chose et non à la chose elle-même.

18. La preuve que doit faire la victime est limitée au fait du dommage et aux circonstances dans lesquelles il a été réalisé ; il revient au gardien de la chose d'établir l'existence des causes d'exonération. (Cass, 2$^{eme}$ Section, arrêt du 10 juin1954, les Deb, No 131 du 1$^{er}$ juil. 1954).

19. Les phrases et mots comme « gardien de la chose » et « commettant » ne sont pas des termes techniques, et n'exigent pas une relation formelle dans un contrat. La relation pourrait être celui d'un employé/employeur, un agent, une famille, ou autre. Plutôt les termes décrivent une situation de responsabilité en fait, qui mène à une responsabilité

légale. C'est pour le Tribunal à décider sur la base des preuves, si la relation justifie la responsabilité civile.

20. De plus, il faut souligner que le principe de responsabilité civile du commettant découle des délits et des quasi-délits.

21. En matière de quasi-délit la preuve des faits établissant la faute de l'agent responsable peut se faire par témoins et, par suite aussi par présomption. Cass., 5 mai 1992, Aff.P.C.S. vs Lindor.

22. Il n'y a quasi- délit et par suite obligation de réparer le préjudice qui en est la conséquence que s'il y a faute : peu importe que la réparation du préjudice incombe à l'auteur du fait ou à son commettant. Cass., 11 février 1924 ; *Aff.* Tellus vs Gay. La faute n'est pas soumise aux conditions de la mauvaise foi et de la volonté de nuire.

23. La responsabilité résulte de tout fait de commission ou d'omission. Et la simple erreur, malgré l'aveu fait de bonne foi, est le résultat d'un manque d'attention, de négligence. Cass., 17 juin 1925, *Aff.* Martineau vs Hasco.

24. Si cette affaire était par devant un tribunal haïtien, le Père Carrier pourrait être à la fois un complice et / ou un commettant des actions posées par son préposé. D'abord il pourrait se faire complice parce qu'il donne de l'argent (dons) à son préposé pour faire fonctionner l'école que ce dernier avait utilisé pour commettre ses forfaits. Ensuite il est un commettant en ce sens qu'il est responsable des actions posées par son préposé

en sa qualité de responsable de l'école qui reçoit des dons qui faciliteront la commission d'un crime. Donc, dans les deux cas, le père Carrier pourrait être passible à des repartions civiles pour les préjudices causés aux victimes par son préposé.

25. Les lois civiles Haïtiennes n'accordent aucune protection à la responsabilité civile selon le statut d'un commettant dans la hiérarchie d'une organisation. Pour toute l'organisation lui-même, les superviseurs, les officiers, les propriétaires etc.., c'est une question de fait d'après l'article 1170 du Code Civile. Le Tribunal pourrait enquêter sur le contrôle et la pratique du superviseur sur celui qui a causé les dommages.

26. Le procès de Raboteau qui a eu lieu aux Gonaïves en l'année 2000 pour juger les militaires, les haut-gradés des Forces Armées d'Haïti (FAD'H) et le groupe paramilitaire FRAPH pour crime d'assassinat et complicité d'assassinat, peut être considéré comme exemple probant dans le cadre des relations de causalité entre le commettant et le préposé en termes de responsabilité à l'occasion d'une infraction à la loi pénale.

27. En effet, à la lumière de ce procès, il importe de remarquer que dans l'un des ATTENDU QUE énoncé dans l'ordonnance du Doyen du Tribunal Criminel, il ressort que : « l'auteur intellectuel, matériel et/ou complice d'Assassinat, auteur intellectuel d'Assassinats et Tentatives d'Assassinats, Tortures Coups et blessures volontaires, Arrestations Illégales etc. (voir Ordonnance du Juge D'Instruction du Tribunal de Première Instance des Gonaïves, Jean Senat FLEURY, en date du 30 Août 1999), une fois constante, devra tous punir de la même peine.» Toutefois, il y va de même pour la responsabilité civile qui peut s'étendre sur le commettant et/ou sur le préposé solidairement.

28. Le Tribunal Criminel des Gonaïves avait condamné à des réparations civiles tous les membres du Haut Etat-major des FAD'H. Cette condamnation a été administrée à tous personnellement et solidairement. Si, cependant, en 2005, la Cour de Cassation a renversé le jugement dudit Tribunal, il convient toutefois de reconnaître que les motifs évoqués par la Cour n'avaient rien à voir avec la relation de causalité entre les préposés et les commettants.

29. Dans des notes mises au bas de l'article 1170 du Code Civil Haïtien mis à jour par Jean VANDAL sur la responsabilité du commettant, il est clairement dit :

   *1) la responsabilité du commettant ne tombe que devant la preuve contraire par lui administrée ( Cassation, première section en date du 6 Mai 1942, No 130 du 23 Juin 1942), 2) l'article 1170 rend les maîtres et commettants du dommage causé par leurs préposés et domestiques, dans les fonctions ils les ont employés, 3) il importe peu que ces engagés ou entrepreneurs travaillent à forfait, pourvu que les faits accomplis par les domestiques ou préposés le soient dans les fonctions auxquelles ils sont employés, 4) les conventions particulières entre les maitres, commettants et leurs préposés ne sont pas opposables aux tiers, Arrêt de la Cour de Cassation du 5 Juin 1945, Gazette du Palais Numéro du 22 Juin 1945 pp 741 et suivant, 5) En matière de responsabilité du commettant, les juges n'ont pas à rechercher la faute de ce dernier. Cette responsabilité dérive du choix que le maître a fait du proposé a fait du préposé de la confiance qu'il a placé en lui, Arrêt de la Cour de Cassation, deuxième section du 14 Décembre 1954, Les Bes, No 145 du 20 Janvier 1955, 6) le juge qui base sa décision sur la présomption*

*légale portée en l'article 1170 du Code Civil Haïtien n'est point obligé de faire*

*ressortir  la faute commise ( Cassation, première section, arrêt du 6 Mars 1963,*

*Jean Baptiste JACOB, Bulletin des Arrêts 1985, Tome V, PP 208n et suivant).*

De la qualité du préposé : la *question de savoir si un préposé est ou non dans l'exercice*

*de ses fonctions est une question de fait abandonnée à l'appréciation du juge de fond*

(Cassation deuxième section, Arrêt du 14 Décembre 1954, Les Deb. Numéro 145 du 20

Janvier 1955).

Je, Mario Joseph, Av., en accord avec la Section 1746 de Titre 28 du Code des Etats-Unis,

déclare sous la peine de parjure sous la loi des Etats-Unis d'Amérique, que ce qui précède est

vrai et correct.

Signé, le 12 janvier, 2017.

Mario Joseph, Av.