UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

GERVIL ST. LOUIS,

                    Plaintiff,

        vs.

DOUGLAS PERLITZ, et al.,

                    Defendants.

Civ. A. No. 3:13-cv-01132-RNC

Dated: February 9, 2017

*This document relates to:*

*Lecenat v. Perlitz, No. 13-1633*
*Dorcine v. Perlitz, No. 13-1701*
*Mackenson v. Perlitz, No. 14-125*
*Deriza v. Perlitz, No. 14-668*

**REPLY MEMORANDUM IN SUPPORT OF FATHER CARRIER'S**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Timothy P. O'Neill (phv04968)
Theodore J. Folkman (phv04969)
Amanda Moger Rettig (phv04967)
MURPHY & KING, P.C.
One Beacon Street
Boston, Mass. 02108
Tel. (617) 423-0400
Fax (617) 423-0498
toneill@murphyking.com
tfolkman@murphyking.com
arettig@murphyking.com


*Counsel for Father Carrier*

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................... ii

Preliminary Statement ....................................................................................................1

Argument ........................................................................................................................2

    A.   There Is No Evidence Of Causation, And The Statutory
         Claim Therefore Fails. .........................................................................................2

    B.   Haitian Law Applies To The Non-Statutory Claims. ..........................................2

         1.   Father Carrier Did Not Waive His Right To Argue
               Haitian Law. ...........................................................................................2

         2.   There Is A True Conflict Of Laws. .........................................................5

         3.   Under The *Restatement* Approach, Haitian Law Governs. ......................7

    C.   Under Haitian Law, Father Carrier Is Not Liable ..............................................11

         1.   The Joseph Declaration Is Flawed And Unpersuasive. .........................11

         2.   The Plaintiffs Concede Haitian Law Recognizes No
               Claim For Breach Of Fiduciary Duty. ..................................................14

         3.   The Plaintiffs Do Not Rebut Our Showing About The
               Non-Liability Of An Agent Such As Father Carrier For
               Negligence. ...........................................................................................14

         4.   It Is Undisputed That Father Carrier Was Acting As The
               Agent Of The Haiti Fund, Inc. ...............................................................14

    D.   The Plaintiffs' Claims That Father Carrier Had A Sexual
          Relationship With Mr. Perlitz Or Abused Any Of The Plaintiffs
          Are Unsupported By Any Admissible Evidence. ..............................................15

         1.   Father Carrier Had No Sexual Relationship With Mr. Perlitz. ..............15

          2.   Father Carrier Did Not Abuse Anyone, And No Student
               Ever Told Father Carrier Of Abuse. .....................................................20

Conclusion ....................................................................................................................21

# TABLE OF AUTHORITIES

Cases

*Abdullahi v. Pfizer, Inc.,*
    562 F.3d 163 (2d Cir. 2009) ....................................................................................7

*Derisme v. Hunt Leibert Jacobson P.C.,*
    880 F. Supp. 2d 339 (D. Conn. 2012) ...................................................................21

*First Nat'l Bank & Trust Co. v. Manning,*
    164 A. 881 (Conn. 1933) .........................................................................................6

*Jaiguay v. Vasquez,*
    948 A.2d 955 (Conn. 2008) ......................................................................................8

*Lightfoot v. Union Carbide Corp.,*
    110 F.3d 898 (2d Cir. 1997) ...................................................................................21

*O'Connor v. O'Connor,*
    519 A.2d 13 (Conn. 1986) ........................................................................................8

*Rationis Enterprises, Inc. of Panama v. Hyundai Mipo Dockyard Co.,*
    426 F.3d 580 (2d Cir. 2005) .................................................................................3, 4

*RJR Nabisco, Inc. v. European Community,*
    136 S. Ct. 2090 (2016) .............................................................................................1

*Scribner v. O'Brien, Inc.,*
    363 A.2d 160 (Conn. 1975) ......................................................................................5

*Taylor v. Shippers Transport Exp., Inc.,*
    2014 WL 7499046 (C.D. Cal. Sept. 30, 2014) ......................................................16

*Tech-Sonic, Inc. v. Sonics & Materials, Inc.,*
    2015 WL 4715329 (D. Conn. Aug. 7, 2015) ...........................................................4

*United States v. Albert,*
    773 F.2d 386 (1st Cir. 1985) ..................................................................................17

*United States v. First Nat'l Bank of Chi.,*
    699 F.2d 341 (7th Cir. 1983) ....................................................................................5

*United States v. Lowe,*
    118 A.F.T.R.2d (RIA) 2016-6415, 2016 WL 6494742
    (2d Cir. Nov. 2, 2016) ............................................................................................17

*United States v. Salerno,*
  937 F.2d 797 (2d Cir. 1991) ...................................................................................18

*Universe Sales Co. v. Silver Castle, Ltd.,*
  182 F.3d 1036 (9th Cir. 1999) ................................................................................14

*Western Dermatology Consultants, P.C. v. Vitalworks, Inc.,*
  78 A.3d 167 (Conn. App. Ct. 2013) ..........................................................................7

*Western Dermatology Consultants, P.C. v. Vitalworks, Inc.,*
  322 Conn. 541 (2016)...........................................................................................7, 8

*Williams v. State Farm Mut. Auto Ins. Co.,*
  641 A.2d 783 (Conn. 1994) ......................................................................................8

*Williamson v. United States,*
  512 U.S. 594 (1994) ...............................................................................................17

Statutes

18 U.S.C. § 2255 ........................................................................................................1, 2

Other Authorities

9 *Moore's Federal Practice* § 44.1.02[2][b] ...................................................................5

9A Charles A. Wright *et al., Federal Practice &* Procedure § 2442 (3d ed. 2008) .......................2

Black's Law Dictionary (7th ed. 1999).........................................................................13

Gérard Cornu *et al., Dictionary of the Civil Code* (2014)............................................12

Vivian Grosswald Curran, *Comparative Law and Language,* in
  *The Oxford Handbook of Comparative Law* (Mathias Reimann &
  Reinhard Zimmerman, eds. 2006)...........................................................................12

Vivian Grosswald Curran, *Learning French Through the Law:*
  *A French/English Comparative Treatment of Terms in a*
  *Legal Context* (1996)..............................................................................................12

*Restatement (Second) of Agency* § 343 (1958).............................................................5

*Restatement (Second) of Conflict of Laws* § 6 cmt. g (1971) ....................................10

*Restatement (Second) of Conflict of Laws* § 6(2) (1971) ...............................7, 8, 9, 10

*Restatement (Second) of Conflict of Laws* § 6(2) cmt. c (1971)....................................7

*Restatement (Second) of Conflict of Laws* § 145 (1971) ........................................................7, 8

*Restatement (Second) of Conflict of Laws* § 146 (1971) ........................................................7, 8

*Restatement (Second) of Conflict of Laws* § 168 (1971) ...............................................................6

*Restatement (Third) of the Foreign Relations Law of the United States* § 422(1) (1987) ...................................................................................................11

Rules

Connecticut Practice Book § 10-3(b) ..............................................................................................3

Connecticut Practice Book § 10-50 .................................................................................................3

Fed. R. Civ. P. 8(c)(1) .....................................................................................................................3

Fed. R. Civ. P. 44.1 ............................................................................................................. 2, 3, 4, 5

Fed. R. Civ. P. 56(d) .......................................................................................................................4

Fed. R. Evid. 404(a)(1) ..................................................................................................................19

Fed. R. Evid. 801(d)(2)(A) ............................................................................................................17

Fed. R. Evid. 1002 .........................................................................................................................16

Fed. R. Evid. 1004 .........................................................................................................................17

Treatises

Code Civil de Haiti art. 1170 ................................................................................................. 12, 13

Code Pénal de Haiti art. 44 ............................................................................................................11

Code Pénal de Haiti art. 45 ............................................................................................................11

Code Pénal de Haiti art. 56 ............................................................................................................11

PRELIMINARY STATEMENT

The sheer quantity of the material the plaintiffs have submitted—11,402 pages of transcripts, plus 302 exhibits and more than 100 pages of argument—should not distract from the very few points that, once demonstrated, entitle Father Carrier to summary judgment on the three remaining claims. In this reply, we cannot address every point the plaintiffs make. But on the critical points, we demonstrate that the plaintiffs have failed to show that they have a case for trial.

- On the statutory claim under 18 U.S.C. § 2255, nothing the plaintiffs have offered overcomes our showing that there is no evidence of a causal relationship between Father Carrier's supposed facilitation of Mr. Perlitz's travel and their injuries.[1] Without causation, the plaintiffs' claim fails.

- The plaintiffs have a lot to say about procedural reasons why we cannot look to Haitian law and relatively little to say about what Haitian law actually provides. We demonstrate that their efforts to avoid the application of the correct law with procedural arguments fails and that Connecticut conflict-of-laws principles require application of Haitian law.

- When we turn to the substance of Haitian law, we demonstrate that the plaintiffs have failed in three ways. They have failed to rebut our showing that because Father Carrier was— according to their own pleadings as well as the undisputed facts—the agent of the Haiti Fund, Inc. and acting on its behalf. They have failed to rebut our showing that under Haitian law, when an agent is negligent within the scope of his agency, the principal but not the agent is

---

[1] We also showed that the statute does not apply extraterritorially. Nothing the plaintiffs have offered overcomes the plain reading we give of *RJR Nabisco, Inc. v. European Community,* 136 S. Ct. 2090 (2016). We will address this point if necessary at argument.

liable. They have failed to rebut our showing that Haitian law does not recognize a tort of breach of fiduciary duty.

<u>ARGUMENT</u>

A.    <u>There Is No Evidence Of Causation, And The Statutory Claim Therefore Fails.</u>

The plaintiffs focus (Pl. Br. at 42-45) on points we have conceded (for purposes of the motion) in addressing the claim under 18 U.S.C. § 2255, namely Father Carrier's supposed knowledge of Mr. Perlitz's intent and his supposed financial motives. **They do not even mention, let alone rebut, our showing that there is no evidence of causation.** The plaintiffs cannot prove the dates of the travel Father Carrier supposedly facilitated or the dates of the abuse. There is, therefore, no evidence that the facilitation of travel is causally related to any of the injuries alleged, and the statutory claim necessarily fails.

B.    <u>Haitian Law Applies To The Non-Statutory Claims.</u>

     1.    <u>Father Carrier Did Not Waive His Right To Argue Haitian Law.</u>

The plaintiffs' waiver argument (Pl. Br. at 52-56) is nonsense. First, the plaintiffs argue that Connecticut pleading standards rather than federal pleading standards apply, because the claim is governed by Connecticut law. But that is a perfectly circular argument: the question before the Court is precisely whether Connecticut law does govern. The plaintiffs do not even cite the relevant federal procedural rule, Fed. R. Civ. P. 44.1, which *always* governs the issue of sufficient notice of foreign law in a federal case. *See* 9A Charles A. Wright *et al., Federal Practice & Procedure* § 2442 at nn.4-6 (3d ed. 2008). As we show below, there is no question that Father Carrier complied with Rule 44.1.

Second, assuming for the moment that Connecticut law is relevant here, the plaintiffs' argument rests on the assertion that under Connecticut law, "foreign law" is an affirmative defense that can be waived if not pleaded. But "foreign law" is not a defense at all, let alone an

2

affirmative defense: it is simply a statement about what law governs the case. The plaintiffs'
source for their incorrect assertion is § 10-3(b) of the Connecticut Practice Book, which reads:
"A party to an action who intends to raise an issue concerning the law of any jurisdiction …
outside this state shall give notice in his or her pleadings *or other reasonable written notice*"
(emphasis supplied). This is simply a notice requirement, not a pleading requirement, and it
applies only in the state courts. Section 10-3(b) is the Connecticut equivalent of Fed. R. Civ. P.
44.1, which requires parties intending to raise an issue of foreign law to "give notice by a
pleading or other writing." In Connecticut practice, the requirement to plead affirmative defenses
is found in § 10-50, the analogue of Fed. R. Civ. P. 8(c)(1). That section lists many affirmative
defenses (accord and satisfaction, the statute of limitations, etc.) but does not mention "foreign
law." So the plaintiffs are wrong to say that "foreign law" is an affirmative defense under
Connecticut law.

Even if "foreign law" *were* an affirmative defense, the plaintiffs concede that Father
Carrier, simultaneously with the filing of his motion to dismiss, filed answers *in which he
expressly gave notice that Haitian law might apply, and that if it did, he had a defense to their
claims.*

The plaintiffs claim this notice was insufficient because Father Carrier said that Haitian
law "may" apply rather than "does" apply. But the Second Circuit has expressly approved notice
like the notice Father Carrier gave here. In *Rationis Enterprises, Inc. of Panama v. Hyundai
Mipo Dockyard Co.,* 426 F.3d 580 (2d Cir. 2005), the defendant pleaded that the "substantive
law of a foreign country governs" but did not specify which country's law it intended to argue
until summary judgment, after four years of litigation and the completion of discovery. Just as
the plaintiffs argue here, the plaintiff in *Rationis* held that the issue of foreign law was waived

because the notice was insufficient. The district court agreed, but on appeal the Second Circuit

reversed, holding that the judge had abused his discretion:

> The question here is not whether [the defendant] failed to give any notice, but rather, whether its alternative pleading offended Rule 44.1. Although this may force the opposing party to conduct further research, such additional work in a maritime mass tort is hardly the undue surprise Rule 44.1 seeks to prevent. Perhaps it is even to be expected, when shipping goods from Europe to the United States, on a Swedish ship, modified in Korea, currently owned and operated by Panamanians. We therefore recognize alternative pleading of choice of law issues as satisfying the notice requirement of Rule 44.1.

*Id.* at 586. Father Carrier's notice was superior to the notice in *Rationis* because it specified the

foreign law of a single country. The plaintiffs do not even attempt to show that Father Carrier

failed to satisfy the requirements of Rule 44.1, which is the governing rule here.

Last, the plaintiffs suggest, in a footnote, that Father Carrier should have disclosed the

identities of his foreign law declarants sooner. (Pl. Br. at 59 n.17). They cite no case that treats a

foreign legal expert offering information to help the Court determine the content of foreign

law—a matter of law for the Court rather than for the jury, *see* Fed. R. Civ. P. 44.1—as an

ordinary fact or expert witness subject to the rules applicable to witness disclosure. In *Tech-*

*Sonic, Inc. v. Sonics & Materials, Inc.,* 2015 WL 4715329 (D. Conn. Aug. 7, 2015), the Court

rejected an argument like the argument the plaintiffs make here. It rejected the argument that it

should disregard a foreign legal expert's opinion on the grounds that it was not previously

disclosed: "Although offered by an 'expert,' foreign legal analysis is arguably more akin to legal

argumentation than evidence." *Id.* at *8 n.5 (citations and internal quotation marks omitted).

While there is mixed precedent in other districts, *see id.,* it would be improper to disregard the

parties' expert submissions given the availability of a simple remedy to cure whatever prejudice

may have existed: if the plaintiffs thought that they needed an opportunity to take discovery in

order to meet our experts' demonstration they could have asked for it. *See* Fed. R. Civ. P. 56(d);

*see also Tech-Sonic, supra* at *8 (evidence should not be precluded in the absence of prejudice).

They didn't. Instead, they did just what we have done—engaged an expert to provide guidance to the Court on the applicable foreign law. The Court should evaluate the parties' respective positions on their merits. The parties have presented the Court with all the information it needs to do so. To the extent the plaintiffs focus on the particular language of the Second Amended Scheduling Order[2] in this case ("any party who intends to … introduce testimony or an affidavit …")(Pl. Br. 59 n.17), it is important to note that there was no need to present our experts' conclusions in the form of an affidavit, as there would be with any other expert witness—we could have presented unsworn letters instead. *See* Fed. R. Civ. P. 44.1 (the court "may consider any relevant material or source … whether or not … admissible"); *United States v. First Nat'l Bank of Chi.,* 699 F.2d 341, 344 (7th Cir. 1983) (court may consider letters under Rule 44.1); 9 *Moore's Federal Practice* § 44.1.02[2][b] at n.5 (same). If we had done so there would have been no case to make that the letters would come within the terms of the order, which is just another way to see that foreign legal experts are not to be treated as fact or expert witnesses for these purposes.

      2.    <u>There Is A True Conflict Of Laws.</u>

Contrary to the plaintiffs' claim (Pl. Br. 61-62), there is a true conflict between Connecticut law and Haitian law. Under Connecticut law, as under U.S. law generally, if an agent commits the tort of negligence in the scope of his agency, both the agent and the principal can be liable—the individual for negligence, the principal on a *respondeat superior* theory. *See Restatement (Second) of Agency* § 343 (1958) (agents responsible for torts committed within the scope of their agency except in special circumstances); *see also Scribner v. O'Brien, Inc.,* 363 A.2d 160 (Conn. 1975) (agent personally liable for negligence in performance of contract for his

---

[2] *See* ECF Nos. 749 and 751.

principal); *First Nat'l Bank & Trust Co. v. Manning,* 164 A. 881 (Conn. 1933) (officer personally liable for tort in course of his agency). Under Haitian law, as we showed in the main brief, if an agent is negligent in the scope of his agency, ***only the principal is liable.*** (First Succar Decl.[3] ¶¶ 21-23). This difference is central to the motion. All we need to show, if Haitian law applies, is that to the extent Father Carrier may have been negligent, he was acting as an agent or representative of the Haiti Fund, Inc. or one of the other institutional defendants—something the plaintiffs themselves have alleged over and over.

This conflict of laws explains, by the way, a fact that the plaintiffs claim to find inexplicable (Pl's Br. at 52). It's no wonder that none of the other defendants—the institutional defendants alleged to be Father Carrier's principals in particular—have argued that Haitian law applies. If the plaintiffs can prove that Father Carrier is the agent of one of the institutional defendants, then that defendant is more or less strictly liable if Father Carrier was negligent. But if they and the plaintiffs are content to litigate the claims against them under Connecticut law, they are free to do so. Their decision has no bearing on the claims against Father Carrier. We take no position on what law governs the claims against the other defendants.

The conflict of laws explains one other point, too. The plaintiffs note that Father Carrier does not claim the protection of the Volunteer Protection Act (Pl. Br. at 103). It is true that we do not claim the protection of the statute *in this motion.* But that is simply because we take the view that Haitian law governs. U.S. law governs issues such as charitable immunity only if U.S. law applies to the substance of the dispute. *See Restatement (Second) of Conflict of Laws* § 168 (1971). We have pleaded the VPA and the analogous Connecticut statute and would assert them

---

[3] Michel Succar's First Declaration was attached to Father Carrier's Motion for Summary Judgment and filed as ECF No. 857.

if the Court determined that Connecticut law applied. But for the reasons we give below, that is the wrong outcome here.

3.    Under The *Restatement* Approach, Haitian Law Governs.

The plaintiffs are correct to say that the *Restatement* should govern the conflicts of law question. In a footnote in a case published very shortly before our motion was filed, the Connecticut Supreme Court noted the recent appellate case we cited, *Western Dermatology Consultants, P.C. v. Vitalworks, Inc.,* 78 A.3d 167 (Conn. App. Ct. 2013);[4] addressed what it called "lingering confusion as to whether we have completely abandoned the lex loci test in tort actions;" and held that the *Restatement* approach governs. *See Western Dermatology Consultants, P.C. v. Vitalworks, Inc.,* 322 Conn. 541, 551 n.9 (2016). But even under the *Restatement* approach, it is clear that Haitian law should govern. This is not a close call.

The *Restatement* is structured as follows, as it applies to this case. *First,* § 6(2) lists some overarching factors that govern *all* conflict of laws analyses in the absence of a statutory conflict-of-laws rule. *Second,* several chapters of the *Restatement,* including Chapter 7, which governs torts, "state the rules which the courts have evolved in accommodation of the factors listed in" § 6(2). *Restatement (Second) of Conflict of Laws* § 6(2) cmt. c. *Third,* § 145, the general rule for torts that comes at the beginning of Chapter 7, gives a general rule for torts ("the law of the state which, with respect to [an] issue [in tort], has the most significant relationship to the occurrence and the parties under the principles stated in § 6"), and it lists several "contacts to be taken into account" in applying the § 6 factors. *Restatement (Second)* § 145. *Fourth,* Title B of Chapter 7 applies the general rule of § 145 to particular torts. Section 146, the section relevant

---

[4] We also cited the Second Circuit's view in *Abdullahi v. Pfizer, Inc.,* 562 F.3d 163, 190 (2d Cir. 2009), which no doubt will have to be revised in light of the new decision, although it does not appear the Second Circuit has yet acknowledged the change in law.

here, provides: "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6(2) to the occurrence and the parties, in which event the local law of the other state will be applied." *Restatement (Second)* § 146. The plaintiffs do not even cite § 146 or try to rebut its presumption, even though it is the section of the *Restatement* most directly applicable.

In all of the cases the plaintiffs cite, the alleged victims had significant contact with the state whose law was ultimately applied. In *Western Dermatology* itself, the plaintiff was a New Mexico company and the court held that New Mexico law applied. In *Jaiguay v. Vasquez,* 948 A.2d 955 (Conn. 2008), the court applied New York law to a case where the plaintiff was a New York resident working for a New York company who had worker's compensation insurance under New York law. In *O'Connor v. O'Connor,* 519 A.2d 13 (Conn. 1986), the court applied Connecticut law to an automobile accident out-of-state where both parties were Connecticut residents. And in *Williams v. State Farm Mutual Auto Insurance Co.,* 641 A.2d 783 (Conn. 1994), the court applied New York law to a car accident that occurred in New York. *Williams* aside—that case applied the law of the place of the tort—all of these cases demonstrate the kind of showing that is necessary before the court will ignore the ordinary rule set out in § 146 and apply the rule of a state *other than* the state of the tort, i.e., the state where the injury occurred.

Even looking at the factors in §§ 6(2) and 145 *de novo,* as it were, without taking the presumption of § 146 into account, it is clear that Haitian law must govern. The parties are agreed (Pl. Br. at 63) that the injury occurred in Haiti and thus that the first § 145 factor favors Haitian law. They are also agreed (Pl. Br. at 64) that the third factor (domicile) is mixed, since the plaintiffs were domiciled in Haiti and Father Carrier was domiciled in Connecticut. The

8

plaintiffs claim (Pl. Br. at 64) that the fourth factor (where the parties' relationship was centered) is "ambiguous," conceding that "from the Plaintiffs' perspective, that relationship was centered in Haiti." In fact, the *only* relationship the parties ever had was exclusively in Haiti. The plaintiffs had *no* connection or communication with Father Carrier in the United States. It cannot really be disputed that this factor favors Haitian law. The only point of real contention is the second factor—the place where the conduct causing the injury occurred. The claim here is that Father Carrier negligently hired, retained, directed and supervised Mr. Perlitz, who of course worked in Haiti. (Compl.[5] ¶¶ 118-126). The key point here is this: what makes Father Carrier the linchpin of the case in some ways, and what distinguishes him from the many other officers and directors of the Haiti Fund, Inc. who also had responsibilities for the management of that corporation, fundraising for the Project, and so forth, and who are not defendants here, is that *he was in Haiti,* and that (according to them) he didn't just have an *opportunity* to see the red flags they claimed existed but that he *actually saw* problems (see, for example, the account Mr. Vall gives in his interrogatory answer, which the Court must accept as true for present purposes). The plaintiffs weren't injured—if they were injured at all—because Father Carrier raised money for PPT or because Father Carrier handled some logistics in Connecticut. (Pl. Br. at 63-64). Father Carrier contributed to their injuries, if at all, because he failed to see that Mr. Perlitz posed a risk and failed to make necessary changes to what Mr. Perlitz was doing in Haiti or how PPT generally was run in Haiti. The weight of this factor thus favors Haitian law.

We can zoom out even further and look at the overarching factors of § 6(2). Many of these do not favor either jurisdiction over the other. It is clear from the material before the Court that *both* jurisdictions have a policy to compensate victims of sexual abuse, and indeed, to

---

[5] Complaint of Gervil St. Louis filed as ECF No. 1.

compensate victims of sexual abuse who were injured not just by the abuser but by the negligence of the abuser's ultimate employer. We agree with the plaintiffs that in the context of a tort case like this, the parties' expectations carry little if any weight. *See Restatement (Second) of Conflict of Laws* § 6 cmt. g (1971). The policies of *the United States* may well favor harsh criminal penalties for those involved with international sex trafficking (Pl. Br. at 64-65), but the plaintiffs have not demonstrated that this policy differs from the policy of Haiti, and in any event the plaintiffs' observation is hardly relevant to the question of compensatory damages. The relevant question is not the policy of the United States with respect to criminal law matters, but the policy of Connecticut with respect to civil law matters. The plaintiffs are wrong to argue (Pl. Br. at 65) that the policy of Haitian law is to protect *Haitians* from liability from the conduct of others. They cite no authority for that view. Haitian law would apply to negligent agents no matter their nationality. By the same token, principals of negligent agents would be liable under Haitian law no matter their nationality. The law of both countries provide for full compensation of victims of torts for their injuries; they simply allocate the liability differently.

The only real issue under § 6(2), in our view, is the supposed uncertainty of Haitian law. The plaintiffs' main argument on this point (Pl. Br. at 68) is that Mr. Succar's reference to Professor Curran's opinion shows that Haitian law is unclear. Not so. As Mr. Succar explains, he consulted French authorities *because they are a source of law in Haiti, and that is what Haitian lawyers do when researching a case.* (Second Succar Decl. ¶ 5). The Court has all the information it needs to evaluate the parties' respective presentations of Haitian law. We submit that the content of the law is very clear.

C.    <u>Under Haitian Law, Father Carrier Is Not Liable.[6]</u>

1.    <u>The Joseph Declaration[7] Is Flawed And Unpersuasive.</u>

The Joseph declaration suffers from the following serious defects.

- Mr. Joseph was asked to assume the truth of the allegations in the complaints, not the truth of the evidence the plaintiffs say supports their opposition to this motion. (Joseph Decl. ¶ 6). In contrast, our experts have assumed the truth of a set of facts that line up with what we assert are the undisputed facts of the case, supported by admissible evidence. (First Succar Decl. Ex. 1; First Curran Decl.[8] Ex. 1).

- Mr. Joseph focuses some of his attention of Articles 44 and 45 of the Haitian Penal Code. (Joseph Decl. ¶¶ 7-9, 26-28). This Court cannot consider whether Father Carrier might bear *criminal* liability under Haitian law. "A court in the United States may try a person only for violation of United States law, not for violation of the penal law of a foreign state." *Restatement (Third) of the Foreign Relations Law of the United States* § 422(1) (1987). It is true that in Haiti, as in civil law jurisdictions generally, a civil case can "piggyback" on a criminal proceeding, as described in the supplemental declarations submitted with this brief. But in that case, the criminal court would apply the provisions of the civil code, not the criminal code. *See* Code Pénal art. 56 ("In the cases that involve civil liability which may be part of criminal

---

[6] We make two basic arguments in the main brief: Father Carrier was not Mr. Perlitz's employer under Haitian law and thus cannot be liable; and Father Carrier was the agent of the Haiti Fund, Inc. for relevant purposes, and thus if he was negligent only the Haiti Fund, Inc., his principal, is liable under Haitian law. In this brief, primarily for reasons of space, we address only the second issue, because the facts are so clearly undisputed that it is not necessary to discuss them at length. The plaintiffs' denials of the facts that lead to the conclusion that the Haiti Fund, Inc., not Father Carrier, was Mr. Perlitz's employer do not hold water. We will address this point at argument.
[7] The Declaration of Mario Joseph is attached to Plaintiff's Brief and filed as ECF No. 900.
[8] Vivian Grosswald Curran's first Declaration was attached to Father Carrier's Motion for Summary Judgment and filed as ECF No. 856.

law cases, criminal offenses for a lower criminal tribunal, or police matters, the [criminal law] courts which adjudicate them shall apply the provisions of the Civil Code on Tort law."). (Second Succar Decl. ¶ 4; Second Curran Decl. ¶¶ 7-8).

- Mr. Joseph's discussion of Article 1170 is seriously flawed. He focuses (Joseph Decl. ¶¶ 17-19) on the part of the Article that provides liability for damages caused (in the plaintiffs' translation) by "the things that are under one's control" ("*des choses que l'on a sous sa garde*"). This provision applies only to cases involving an inanimate "thing" in the defendant's control, e.g., an automobile that causes injury, workplace equipment that causes injury, etc. (Second Curran Decl. ¶¶ 10-13; Second Succar Decl. ¶ 6). This is not such a case.

- There are serious problems with the English translation of Mr. Joseph's declaration. By way of introduction to this issue, the plaintiffs note that their translations are "certified." (Pls' Br. at 62 n. 18). The plaintiffs have offered a translation by an unknown translator apparently employed by United Language Group, certified by a Project Manager who may or may not have done the translation. The points about translations we make below are points made by Professor Curran, who is the author of *Learning French Through the Law: A French/English Comparative Treatment of Terms in a Legal Context* (1996) and *Comparative Law and Language,* in *The Oxford Handbook of Comparative Law* (Mathias Reimann & Reinhard Zimmerman, eds. 2006), as well as one of the translators of Gérard Cornu's *Vocabulaire Juridique,* France's equivalent of *Black's Law Dictionary,* into English. *See* Gérard Cornu *et al., Dictionary of the Civil Code* (2014). We will defend her translations over the "certified" translations of the plaintiffs' unknown translator any day of the week. The

12

two most significant problems are these: In paragraph 14 of Mr. Joseph's declaration,

Mr. Joseph's translator translated a portion of Article 1170 of the Civil Code

("*[dommage] causé par le fait des personnes don't on doit répondre*") as "the

damages caused by those who are under one's supervision or direction," when in fact

the phrase means "[the harm] caused by the act of those for whom one must answer."

(Second Curran Decl. ¶ 18). This is significant because the claim in this case is

negligent supervision; it is highly relevant that, contrary to the plaintiffs' translation,

the applicable provision of foreign law does not even use the word "supervision."

Second, and similarly, in ¶ 29 of his declaration, Mr. Joseph cites a scholar, Jean

Vandal, and translates Mr. Vandal's use of the word "*maître*" as, again "supervisor."

In fact, the word *maître* means "employer" or "master" (just as at common law, the

law of employment was once called the law of master and servant, *see* Black's Law

Dictionary 989 (7th ed. 1999)). (Second Curran Decl. ¶¶ 14-15). Again, this is highly

relevant. Our case rests in part on the claim that Father Carrier is not liable because

he was not Mr. Perlitz's employer under Haitian law.[9] "Supervision" is a different,

broader concept that does not apply here. Professor Curran's second declaration also

addresses, in a non-exhaustive way, other translation errors in the Joseph declaration.

(Second Curran Decl. ¶¶ 16-17, 19).

- Of course, the most significant failure of the Joseph declaration is the failure to

  address the key point—under Article 1170, the principal, not the agent, is liable for

  the agent's negligence. We discuss this below.

---

[9] As already noted in footnote 6, we made this argument in full in the main brief and reserve further discussion for argument.

      2.     <u>The Plaintiffs Concede Haitian Law Recognizes No Claim For Breach Of Fiduciary Duty.</u>

We demonstrated that Haitian law simply does not recognize a tort of breach of fiduciary duty. **The plaintiffs do not even attempt to rebut this showing.**

      3.     <u>The Plaintiffs Do Not Rebut Our Showing About The Non-Liability Of An Agent Such As Father Carrier For Negligence.</u>

We say that under Haitian law as under the civil law generally, when an agent is negligent within the scope of the agency, *the principal is liable but the agent is not.* (First Succar Decl. ¶¶ 21-23; First Curran Decl. ¶¶ 20-27). **Mr. Joseph does not dispute this critical assertion anywhere in his Declaration.** Our demonstration about the content of Haitian law is not a demonstration of fact that the Court is required to accept on summary judgment because it is unrebutted; but it bears repeating that on the main point, the point on which American law and Haitian law differ most clearly, the point that motivated us to assert the applicability of Haitian law in the first place, the plaintiffs are silent. *See Universe Sales Co. v. Silver Castle, Ltd.,* 182 F.3d 1036, 1038 (9th Cir. 1999) (error, on summary judgment, not to consider unrebutted declaration of foreign lawyer about the substance of the foreign law).

      4.     <u>It Is Undisputed That Father Carrier Was Acting As The Agent Of The Haiti Fund, Inc.</u>

Father Carrier was a member of the Board of Directors of the Haiti Fund, Inc., and according to the plaintiffs, "as … Chairman and then President," he was "obliged to supervise and monitor the program at PPT." He "acted as the eyes and ears of the Haiti Fund." The Haiti Fund, Inc., the plaintiffs say, was responsible for hiring, retaining, directing, and supervising him. These are the plaintiffs' own allegations. (Compl. ¶¶ 19, 32, 55, 93, 128).

We cite several concrete facts that support the truth of what the plaintiffs themselves have alleged. The plaintiffs admit that Father Carrier reported "regularly" to the Haiti Fund board and

that he was an intermediary between the Board and Mr. Perlitz. (Statement of Facts ¶ 25). They

admit that he brought cash and supplies from the Haiti Fund, Inc., to Mr. Perlitz and PPT.

(*Id.* ¶ 27).

The plaintiffs deny our assertion that the Haiti Fund Board knew of and approved all of

Father Carrier's travel to PPT. (Statement of Facts ¶ 26). None of the evidence the plaintiffs offer

to try to put this fact in dispute has anything to do with the Board's knowledge or approval. They

cite a letter from Mrs. Carter stating that the Order of Malta had covered Father Carrier's

expenses in Haiti; evidence showing that Father Carrier *also* had to and did obtain the approval

of the President of Fairfield; and the Haiti Fund, Inc.'s certificate of incorporation. Nothing they

cite begins to rebut our evidence. It is undisputed that the Board knew of and approved the

travel.

D.    The Plaintiffs' Claims That Father Carrier Had A Sexual Relationship With Mr. Perlitz
      Or Abused Any Of The Plaintiffs Are Unsupported By Any Admissible Evidence.

In this section, we address some claims the plaintiffs have made again and again that are

not at issue in Father Carrier's motion for summary judgment, but that compel a response

because they have been so extraordinarily damaging to Father Carrier. It's wrong that the

plaintiffs should continue to press them despite the utter lack of admissible evidence that their

papers reveal.

1.    Father Carrier Had No Sexual Relationship With Mr. Perlitz.

Very early in the first round of litigation, the plaintiffs' lawyers sent a proposed amended

complaint to defense counsel in which they proposed to allege that Father Carrier and a

"Fairfield freshman" (obviously Mr. Perlitz) had an "open and notorious" sexual relationship.

(Jean-Charles[10] ECF No. 125 Att. 4). We sent counsel an email asserting—in the language of Fed. R. Civ. P. 11—that their claim did not and could not have evidentiary support. (Jean-Charles ECF No. 125 Att. 5). They ultimately filed an amended complaint that omitted the allegation that the supposed relationship between Father Carrier and Mr. Perlitz was "open and notorious." (Jean-Charles ECF No. 105). They have continued to assert that Mr. Perlitz was Father Carrier's "sometime-lover" in recent filings. (ECF No. 885[11] at 15).

A look at the supposed evidentiary support for their continued insistence (Pl. Br. at 25-26) that there was a sexual relationship shows that the plaintiffs have no case to make. They point to the Defendant's Memorandum in Aid of Sentencing, in which Mr. Perlitz's lawyers state that while he was at Fairfield, "a priest began a relationship with Doug that would continue for many years … As Doug describes in his statement, this relationship with an authority figure ultimately took on a dark aspect, both physically and spiritually." This is not evidence of a sexual relationship for the following reasons:

First, the statement the plaintiffs refer to was written by Mr. Perlitz and filed under seal in the criminal case in connection with his sentencing. To the best of our knowledge no counsel in the civil cases have read it. No one knows whether it names Father Carrier or not. Especially because it is apparent that Mr. Perlitz's counsel were seeking to characterize whatever Mr. Perlitz had written in a way that would be of most help to him at sentencing, their characterizations are inadmissible; they are not the best evidence of what Mr. Perlitz wrote. *See* Fed. R. Evid. 1002; *Taylor v. Shippers Transport Exp., Inc.,* 2014 WL 7499046, at *7 (C.D. Cal. Sept. 30, 2014) (affidavit characterizing the deposition testimony of others was inadmissible in

_____

[10] The *Jean-Charles v. Perlitz et al* case is 3:11-CV-00614.
[11] Plaintiffs' Corrected Memorandum in Opposition to motion of Defendant Society of Jesus of New England to Further Seal is filed as ECF No. 885.

evidence because the transcripts of the testimony were the best evidence). There are, of course, exceptions to the best evidence rule, but none apply: Mr. Perlitz's statement still exists (as far as we know); it could be obtained by judicial process, though no one asked to have it unsealed; and Father Carrier never had the document. *See* Fed. R. Evid. 1004. The rationale of the best evidence rule—to require production of a document itself instead of a lawyer's self-serving characterization of what it contains—applies here with full force.

Even if the lawyer's statement could be treated as Mr. Perlitz's statement, the statement is hearsay. It could be offered against Mr. Perlitz as his own admission, but not against Father Carrier or any co-defendant unless an exception to the hearsay rule applies. *See* Fed. R. Evid. 801(d)(2)(A) (statement is not hearsay if "offered against an opposing party" and "was made by the party …"). As we conceded in the main brief, *some* of Mr. Perlitz's statements in the criminal case come within the hearsay exception for statements against interest, for example his statement concerning one date on which he admitted he had traveled to Haiti in order to engage in illicit sexual conduct. But the lawyer's statement about the "dark and stormy" relationship with an unnamed priest was not inculpatory. To the contrary: it was meant to try to *mitigate* the harshness of the sentence and is therefore not within the hearsay exception for statements against interest. *See United States v. Lowe,* 118 A.F.T.R.2d (RIA) 2016-6415, 2016 WL 6494742, at *2 (2d Cir. Nov. 2, 2016) (statements made after guilty plea that seek a lighter sentence are not admissible under Fed. R. Evid. 804(b)(3)); *accord United States v. Albert,* 773 F.2d 386, 389 (1st Cir. 1985); *see also Williamson v. United States,* 512 U.S. 594, 604 (1994) (opinion of O'Connor, J.) (statements during confession that were intended to decrease the declarant's exposure to criminal liability inadmissible). Again, this is a case where the policy of the hearsay rule applies with full force. We have reason to believe that Mr. Perlitz's statements against his

17

own interest are reliable—why else would he make them?—but we have no reason to believe

Mr. Perlitz's self-serving statements, at least without cross-examination.

Moreover, the lawyer's statements cannot be treated as Mr. Perlitz's statement for

hearsay purposes, since they are not "assertions of fact that are the equivalent of a testimonial

statement by the client" *and* "inconsistent with similar assertions in a subsequent trial." *See*

*United States v. Salerno,* 937 F.2d 797, 811 (2d Cir. 1991), *rev'd on other grounds,* 505 U.S. 317

(1992). That is, the lawyer's statements to the Court are hearsay within hearsay.

The plaintiffs' other evidence fares no better. ████████████████████

█████████████████████████████—a far cry from the "open and

notorious" sexual relationship they once were prepared to allege—but the only evidence they

offer on this point is inadmissible:

- ████████████████████████████████████
  ████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████
  ███████████████████ ███████████████
  ████████████████████████████████
  ██████████████████████.

- ████████████████████████████████
  ██████████████████████████████
  ████████████████████████████████████
  ███████████████████████████████

---

[12] Ellyn Hurd's Declaration was attached to Plaintiff's Brief and filed as ECF No. 914.

18



---

[13] Jo Anna Pollock's Declaration was attached to Plaintiff's Brief and filed as ECF No. 907.

That is the sum and substance of the evidence the plaintiffs cite to try to show that there was a sexual relationship. None of it is admissible. So it is no wonder that the plaintiffs are left to argue █████████████████████████████, or that his "mission" in Haiti was "to protect and take care of Doug." (Pl. Br. at 26). This testimony is what it is—we do not think it means much even if taken as true—but it is a far cry from evidence of a sexual relationship. It is unconscionable that despite the utter lack of admissible evidence, the plaintiffs continue to make this unfounded assertion.

2.  <u>Father Carrier Did Not Abuse Anyone, And No Student Ever Told Father Carrier Of Abuse.</u>

We asserted as an undisputed fact that no student ever told Father Carrier that any student had ever been sexually abused by Mr. Perlitz or by anyone else. To dispute this, the plaintiffs offer two documents. (Statement of Facts ¶ 48). First, they point to the interrogatory answer of Thony Vall, one of the first round plaintiffs whose case was settled. That answer could be read to support a circumstantial case that Father Carrier knew or should have known that Mr. Perlitz was abusing students, but it does not show that any student ever told Father Carrier that he or anyone else had been abused, which is what we assert to be the case.

Second, and outrageously, they point to the complaint of Bernard Michel, the one plaintiff in the entire case who asserted that Father Carrier himself committed sexual abuse.[14] This is a cheap shot, since the fact in question is not whether Father Carrier himself committed an act of sexual abuse, but whether any student ever told Father Carrier that he or anyone else had been abused. But in any case, the mere allegations of a complaint are insufficient to put a

---

[14] There was also Emmanuel Clervil; we will not repeat what we have said about his reasons for dismissing his own claim with prejudice because of his "limited education and understanding of legal procedures and the obligations that accompany them" (Motion to Dismiss Voluntary is filed as ECF No. 495 at 1).

fact in dispute on a motion for summary judgment. *See, e.g., Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir. 1997) (a "mere allegation" may be "sufficient to withstand a challenged for failure to state a claim," but "something more is required to avoid summary judgment," because "summary judgment is designed to pierce the pleadings to flush out those cases that are predestined to result in a directed verdict."); *Derisme v. Hunt Leibert Jacobson P.C.,* 880 F. Supp. 2d 339, 353 (D. Conn. 2012) ("On summary judgment, the Court's analysis is focused on the sufficiency of the evidence and not the sufficiency of the pleadings"). The plaintiffs know this, yet they cannot even produce a declaration from their own client, Mr. Michel. The only reason to put Mr. Michel's complaint before the court and the public is to harm Father Carrier, who has indeed been harmed by the unsworn, unproved, and untrue allegation.

In short, there is no evidence that any student ever told Father Carrier that he or anyone else had been sexually abused by Mr. Perlitz or anyone else, just as we asserted.

<u>CONCLUSION</u>

For these reasons and the reasons we gave in the main brief, Father Carrier is entitled to summary judgment on all claims.

Respectfully submitted,

PAUL E. CARRIER, S.J.

By his attorneys:


/s/ Theodore J. Folkman
Timothy P. O'Neill (phv04968)
Theodore J. Folkman (phv04969)
Amanda Moger Rettig (phv04967)
MURPHY & KING, P.C.
One Beacon St., 21st Fl.
Boston, Mass. 02108
(617) 423-0400
tpo@murphyking.com
tjf@murphyking.com
amr@murphyking.com

Gene S. Winter (ct05137)
Benjamin C. White (ct27211)
ST. ONGE STEWARD
JOHNSTON & REENS LLC
986 Bedford St. Stamford, Conn. 06905
(203) 324-6155
gwinter@ssjr.com
bwhite@ssjr.com

Dated: February 9, 2017

*721846v1/5623-004*

22

<u>CERTIFICATE OF SERVICE</u>

I certify that on February 9, 2017, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by first-class mail to all parties who are unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

I further certify that on February 9, 2017, I caused a copy of the foregoing document to be served by first-class mail, postage prepaid, on counsel for the defendant, Douglas Perlitz, who is unable to accept electronic service:

David T. Grudberg, Esq.                     Michael McCooey
Carmody & Torrance, LLP                  Chair, Haiti Fund, Inc.
195 Church Street, P.O. Box 1950       475 Polly Park Road
New Haven, Conn. 06509-1950          Rye, N.Y. 10580



/s/ Theodore J. Folkman_____

*721846v1/5623-004*

23