UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERVIL ST. LOUIS, a/k/a ST. LOUIS GERVIL, | Civil Action No.: 3:13-cv-01132 (RNC) |
| Plaintiff, | |
| v. | |
| DOUGLAS PERLITZ; FATHER PAUL E. CARRIER, S.J.; HOPE E. CARTER; HAITI FUND, INC.; FAIRFIELD UNIVERSITY; THE SOCIETY OF JESUS OF NEW ENGLAND; and SOVEREIGN MILITARY HOSPITALLER ORDER OF ST. JOHN OF JERUSALEM OF RHODES AND OF MALTA, AMERICAN ASSOCIATION, U.S.A., a/k/a ORDER OF MALTA, AMERICAN ASSOCIATION, USA, | |
| Defendants. | |
| This document applies to: | |
| *Lecenat v. Perlitz, et al.*, 3:13-cv-01633-RNC | |
| *Deriza v. Perlitz, et al.*, 3:14-cv-00668-RNC | May 23, 2019 |

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS AND
FINAL APPROVAL OF THE CLASS SETTLEMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES.......................................................................................... iii

INTRODUCTION ......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

    Overview ............................................................................................................. 2

    The Settlement ................................................................................................... 2

    The Notice Process and the Reaction of the Settlement Class .......................... 4

    The Claims Review Process ................................................................................. 5

THE PROPOSED CLASS ............................................................................................. 6

APPLICABLE LEGAL STANDARDS ............................................................................ 7

ARGUMENT ............................................................................................................... 8

I.     THE REQUIREMENTS FOR CERTIFICATION OF THE SETTLEMENT CLASS HAVE BEEN MET ............................................................................................................ 8

    A.    The Class Is Ascertainable ......................................................................... 9

    B.    The Class Is So Numerous that Joinder Is Impracticable ........................... 10

    C.    The Claims of the Class Members Present Common Questions ................. 11

    D.    The Representative Plaintiffs' Claims Are Typical ...................................... 12

    E.    The Representative Plaintiffs Will Fairly and Adequately Represent the Class ....................................................................................................... 12

    F.    The Requirements of Rule 23(b)(3) Are Satisfied ........................................ 13

        1.    Common Questions Predominate Over Individual Ones ............13

        2.    A Class Action Is the Superior Means of Adjudicating This Dispute ................................................................................................15

II.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE ........................................................... 15

i

A.     The Settlement is Procedurally Fair in that it is the Result of Well Grounded, Good Faith, Arm's-Length Negotiations by Experienced Counsel. ................................................................................................. 16

B.     The Settlement is substantively fair. ............................................. 17

**III.**   THE NOTICE TO THE CLASS WAS THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES ............................................................................................ 20

CONCLUSION ............................................................................................................ 23

## TABLE OF AUTHORITIES

## Cases

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000)......................... 13

*Brecher v. Republic of Argentina*, 806 F.3d 22 (2d Cir. 2015) ..................................... 9

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)................................... 17

*Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ................................. 11

*Dover v. British Airways, PLC (UK)*, 323 F. Supp. 3d 338 (E.D.N.Y. 2018)........................... 7

*General Telephone Co. v. Falcon*, 457 U.S. 147 (1982)................................................ 12

*In re Adelphia Communications Corp. Sec. & Derivative Litig.*, 271 F. App'x 41 (2d Cir. 2008)........................................................................................... 20

*In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997) ........................... 8

*In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017)....................................... 8, 9, 10, 14

*In re Sturm, Luger, & Co., Sec. Litig.*, No. 03-Civ-1293, 2012 WL 3589610 (D. Conn. Aug. 20, 2012) ................................................................................. 18

*Kiefer v. Moran Foods, LLC*, Case No. 12-CV-756(WGY), 2014 WL 3882504 (D. Conn. July 31, 2014) ........................................................................ 16, 18

*Lemire v. Wolpoff & Abramson, LLP*, No. 3:08-CV-00249 (CSH), 2009 WL 10689105 (D. Conn. Dec. 8, 2009) ........................................................................... 8

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ............................................ 8, 9

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) .................................................. 13

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ............................................... 11, 12

*Toure v. Amerigroup Corp.*, No. 10 Civ 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 201) ............................................................................................. 16

*U.S. Tr. Co. of New York v. Exec. Life Ins. Co.*, 791 F.2d 10 (2d Cir. 1986) ........................... 7

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)......................................... 11, 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005)........................... 16, 20

*Weigner v. City of N.Y.*, 852 F.2d 646 (2d Cir. 1988)............................................... 20

## Statutes and Rules

Connecticut General Statutes § 52-251c ......................................................... 3

## Other Authorities

*Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010)................................................................................................ 20

Manual for Complex Litigation § 21.632 (4th Ed. 2004) ....................................... 7

McLaughlin on Class Actions § 6:7 (8th Ed.) ........................................................ 7, 8

**Rules**

Fed. R. Civ. P. 23 (b)(3) ........................................................................................... 9

Fed. R. Civ. P. 23(a) .................................................................................................. 8

Fed. R. Civ. P. 23(a)(1) ........................................................................................... 11

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 11

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 12

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 13

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................. 20, 21

Fed. R. Civ. P. 23(e) ........................................................................................... 7, 21

Fed. R. Civ. P. 23(e)(1)(A) ....................................................................................... 7

Fed. R. Civ. P. 23(e)(2) ..................................................................................... 8, 16

Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of the Settlement Class and Final Approval of the Class Settlement previously submitted to the Court.

## INTRODUCTION

This Court preliminarily approved the Class Settlement[1] and conditionally certified a class of victims of sexual abuse perpetrated by anyone affiliated with Project Pierre Toussaint ("PPT").  In that order, the Court directed the court-appointed Claims Administrator, KCC LLC, and court-appointed Class Counsel, Simmons Hanly Conroy ("SHC") and Law Offices of Mitchell Garabedian ("LOMG"), to serve notice to all class members, including the right to object to or opt out of the Settlement.  After notice was served according to the Court's order, 206 people submitted claims to KCC, and no one opted out of or objected to the Settlement.   Plaintiffs Gesner Lecenat and Jason Maxwel Deriza, individually and on behalf of all others similarly situated ("Representative Plaintiffs"), now seek final certification of the Settlement Class and final approval of the Class Settlement.

In order to effectuate this Settlement, the Representative Plaintiffs ask that the Court enter an Order: (a) finally certifying the Settlement Class (as defined in the Settlement Agreement) under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only; (b) granting final approval of the settlement embodied in the Settlement Agreement; (c) finding that the manner of notice to the Settlement Class implemented was the best notice practicable under the circumstances; (d) awarding Class Counsel's fees and expenses; and (e) staying all proceedings, other than proceedings as may be necessary to carry out the terms and conditions of the Settlement Agreement and

---

[1] All terms in this Memorandum not defined herein shall have the meanings set forth in the Settlement Agreement (Doc. No. 1063), which previously received preliminary approval from this Court by Order dated February 11, 2019. (Doc. No. 1068, the "Preliminary Approval Order.")

such further relief as identified in the Proposed Order, which will be submitted to the Court before the hearing scheduled for June 5, 2019.

## STATEMENT OF FACTS

**Overview**

The Court is respectfully referred to prior filings for a full discussion of, *inter alia*, the factual background, procedural history of the Action and a discussion of the negotiations leading to this Settlement and request for Final Approval.  *See* Plaintiffs' Motion and Memorandum of Law in Support for Motion for Preliminary Approval of Class Settlement, Doc. 1063 ("Plaintiffs' Motion for Prelim. Approval") and Class Counsel's Motion for Award of Attorneys' Fees and Expenses, Doc. 1076 ("Class Counsel's Motion for Fees and Expenses").

In short, Gesner Lecenat commenced his action in November 2013; Jason Maxwel Deriza commenced his in May 2014. They alleged that Douglas Perlitz sexually abused them when they were minors attending PPT.  They further alleged that the other Defendants failed to properly supervise Perlitz; failed to put in place appropriate safeguards to prevent a pedophile like Perliz from preying on minor children at PPT; failed to properly supervise Father Carrier, who was charged with supervising Perlitz; and either knew or should have known of Perlitz's improper relations with the minors in his care.  The Representative Plaintiffs' actions were assigned to this Court and consolidated, for pretrial purposes, with other similar cases under the caption of the lead case, *St. Louis v Perlitz.*  After nearly six years of hard-fought litigation and multiple mediations, the parties reached a settlement.

**The Settlement**

The Settlement Agreement ("Settlement Agmt."), which was submitted to the Court (*See* Doc. No. 1063-10) and preliminarily approved on February 11, 2019 (Doc. No. 1068), resolves all claims arising from the sexual abuse by Douglas Perlitz, over an approximately ten-year period, of minor boys, primarily at a school in Haiti known as

PPT with which the Defendants who have appeared in this case, Father Paul E. Carrier, S.J.; Hope E. Carter; Fairfield University; The Society of Jesus of New England; and Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes and of Malta, American Association, U.S.A., a/k/a Order of Malta, American Association, USA, (collectively, "Defendants") were affiliated. The Settlement Agreement provides final resolution for the Defendants with respect to all claims of Sexual Abuse perpetrated by anyone affiliated with PPT.

The Settlement Agreement calls for certification of a Settlement Class that includes all of the victims of sexual abuse perpetrated on the island of Hispaniola by anyone affiliated with PPT, and provides appropriate mechanisms and safeguards for assessing the claims submitted—the process of which has been underway. It provides streamlined procedures for claimants who have already filed their own lawsuits in this Court and for other claimants represented by the same counsel. It further provides a process for new claimants to submit claim forms, which are being reviewed and evaluated by the court-appointed Claims Assessor, the Honorable John M. Greaney (Ret.). It provides for Defendants collectively to pay $60 million, which has already been deposited into an escrow account. After subtraction of attorneys' fees and costs as awarded by this Court in connection with final approval of this Settlement,[2] all of that money will be distributed in equal shares to Qualifying Settlement Class Members under the terms of the Settlement Agreement.

Pursuant to the Preliminary Approval Order, Class Counsel are the law firms of Simmons Hanly Conroy and Law Offices of Mitchell Garabedian, and Plaintiffs Gesner Lecenant and Jason Maxwel Deriza are the Representatives Plaintiffs. Both

---

[2] The agreement provides that Class Counsel may seek a fee award of up to one-third of the settlement proceeds, and may seek an award of their actual costs in prosecuting this action, as limited by and consistent with the provisions of Connecticut General Statutes § 52-251c. Class Counsel's detailed fee and costs application was filed April 29, 2019. *See* Motion for Award of Attorneys' Fees and Expenses, Doc. No. 1076.

3

Representative Plaintiffs have reviewed the Settlement Agreement and accompanying Release in Haitian Kreyol with Class Counsel, and they approved and executed the Release in both Haitian Kreyol and English. *See* Jo Anna Pollock Dec. dated May 23, 2019 ("Pollock May 23, 2019 Dec.") at ¶3.

**The Notice Process and the Reaction of the Settlement Class**

As set forth in the accompanying declarations of Carla Peak ("Peak Dec. on Notice Implementation") and Matt Neylon ("Neylon Dec."), the Claims Administrator, KCC LLC, implemented the notice program as set forth in the Preliminary Approval Order.

Because KCC became involved in this matter relatively early in the process while the parties were negotiating the Settlement Agreement, KCC had  time to acquaint itself with the conditions in Haiti and to begin formulating a plan to effectively implement the notice and claims administration programs in Haiti well before the program began. Neylon Dec. at ¶¶2-3.  In addition to its internal team, KCC took the extra step of retaining an outside expert consultant, J.  Christopher Kovats-Bernat, Ph.D., ("Kovats") a specialist in Haitian culture, society, and anthropology.  Neylon Dec. at ¶5. Kovats took the lead on the ground in Haiti and worked to assemble a team of Haitian nationals who were chosen to assist with the notice and claims administration program in Haiti based upon their skill, reliability, motivation, and knowledge of the local population and its language, customs, practices, and mores. *Id.* According to KCC, these were important considerations, given the sensitive subject matter of sexual abuse involved in this litigation and the cultural attitudes toward this subject matter in Haiti. *Id.*

Based on this work, KCC assisted counsel in preparing the notice plan that was submitted to the Court in connection with the Motion for Preliminary Approval, and, after the Court approved this plan, KCC carried out the plan.  This included individual notice, where possible, as well as radio announcements, newspaper notice, and poster notice. Peak Dec. on Notice Implementation at ¶¶5-7.  In addition to these notices, KCC also issued a Text Notice to twenty-three records of potential Settlement Class Members

4

with at least a phone number.  Neylon Dec. at ¶11.  Finally, KCC endeavored to deliver claim forms to three incarcerated Haitian nationals who were identified as potential Settlement Class Members so that those men could, and did, submit claims. *Id.* at ¶25.

**The Claims Review Process**

A total of 206 claims were received by KCC by the close of the claims period. Neylon Dec. ¶29.  These claims consist of 133 claims submitted by Vetted Settlement Class Members and 73 additional claims. *Id.*

Accompanying this motion is the Interim Report of the Claims Assessor, which is incorporated fully herein, that explains the Claims Assessor's review in more detail. *See* Pollock May 23, 2019 Dec. at ¶2 ("Claims Assessor's Interim Report"). The Claims Assessor was tasked with evaluating these additional claims, determining their validity, and finding whether claimants should also be recognized as Qualifying Settlement Class Members entitled to a Settlement Payment. *Id.* at p. 2.  To do so, the Claims Assessor and counsel conferred to determine an efficient, thorough, and fair procedure for receiving claims and deciding them on their merits. *Id.* at p. 3. A Working Group, which consisted of two representatives selected by Class Counsel and two representatives selected by Defendants' counsel, was established. *Id.* The Claims Assessor familiarized himself with the facts of the case through documents and photographs provided by the Working Group. *Id.*

When claims were received, and consistent with the requirements of the Settlement Agreement, the Claims Assessor examined the claims in a non-technical way. *Id.* at p.4. For example, if the description of Sexual Abuse was reasonably detailed, and the claim corroborated by other information in the Claim Form, it was accepted notwithstanding the inability of the claimant to identify the particular date or dates on which the Sexual Abuse took place.  *Id.*  Claims that clearly fall outside the class definition, such as claims by former employees at PPT for unpaid wages, rather than any

abuse, or by claimants who already received compensation in connection with the prior *Jean-Charles* settlement (who were specifically excluded from the Class) were rejected. *Id*.

The validity of all claims was determined only after consultation with counsel in the Working Group. *Id*.  Throughout the process, the Claims Assessor conferred with the Working Group and the Claims Administrator on a weekly, or biweekly, basis to review particular claims, relevant developments in Cap Haitien, logistical issues, and other matters pertinent to the assessment of the claims. *Id*.

Claims have been sorted into three categories: accepted, rejected or deficient (the latter are claims that are, at this time, incomplete in some respect; the claimant will be afforded an opportunity to correct the deficiency, as provided for in the Settlement Agreement). *Id*. The Claims Assessor has decided that there may be a small number of claims the validity of which cannot be determined from the face of the documents submitted. *Id*. Once the number of these claims is quantified, the Claims Assessor will interview them by means of Skype to make a final decision on whether their claims should be accepted or rejected. *Id.* at pgs. 4-5.

## THE PROPOSED CLASS

Plaintiffs seek final certification, for settlement purposes only, of the following Settlement Class, which was conditionally certified by the Court:

> All persons who, during the Class Period, were subject to Sexual Abuse on the island of Hispaniola by Douglas Perlitz, Father Carrier, or any other person affiliated with the school, programs, facilities, or orphanage commonly known as "Project Pierre Toussaint" or "PPT" and who claim that such Sexual Abuse was caused by or related to any act or omission of any Defendant.

For purposes of this class definition, "Sexual Abuse" means all forms of sexual-related contact, molestation, touching, fondling, behavior, activity, interaction, exploitation, coercion, threats, and/or grooming; included in this definition are physical assault and/or battery in connection with such abuse.  Excluded from the Settlement Class are all persons who settled their claims in the cases consolidated with *Jean-Charles v. Perlitz*,

No. 3:11-cv-00614-RNC or in connection with those consolidated cases; and all persons who both (1) filed an action consolidated with the action styled *Gervil St. Louis, a/k/a St. Louis Gervil v. Perlitz et al.*, No. 3:13-cv-01132-RNC and (2) whose claims were dismissed in their entirety.  Also excluded from the Settlement Class above are the Defendants and any of their officers or directors and immediate families and the Court and its immediate family.

## APPLICABLE LEGAL STANDARDS

Rule 23 requires that "[t]he claims, issues, or defenses of a certified class -- or a class proposed to be certified for purposes of settlement -- may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e); *see also U.S. Tr. Co. of New York v. Exec. Life Ins. Co.*, 791 F.2d 10, 13 (2d Cir. 1986).  Because the parties here propose to settle these lawsuits through certification of a settlement class, court approval of this settlement is required.  Such approval typically proceeds in a two-step process.  *See* 2 McLaughlin on Class Actions § 6:7 (8th Ed.) ("McLaughlin"); *see also* Manual for Complex Litigation § 21.632 (4th Ed. 2004); *Dover v. British Airways, PLC (UK)*, 323 F. Supp. 3d 338, 348 (E.D.N.Y. 2018). "First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation." McLaughlin § 6:7. Under the newly amended version of Rule 23(e)(1)(A), this is referred to as the court determining "whether to give notice of the [settlement] proposal to the class." Once the court grants preliminary approval and notice is provided to the class, the court conducts a fairness hearing to consider final approval of the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2); McLaughlin § 6:7; *see also Lemire v. Wolpoff & Abramson, LLP*, No. 3:08-CV-00249 (CSH), 2009 WL 10689105, at *6 (D. Conn. Dec. 8, 2009); *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

**ARGUMENT**

The Representative Plaintiffs seek final certification of the Settlement Class and final approval of the Settlement. All of the requirements for this relief are met as set forth below.

## I.   THE REQUIREMENTS FOR CERTIFICATION OF THE SETTLEMENT CLASS HAVE BEEN MET

Rule 23(a) sets forth four requirements for certification of a class: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a);[3] *see also Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997). The Second Circuit has also recognized an "implied requirement of ascertainability" in Rule 23. *See In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017).

Rule 23(b) specifies the types of class actions that may be certified and the additional requirements for each type. In this case, the Representative Plaintiffs seek certification under Rule 23(b)(3), which requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23 (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in applying it. *Giuliani*, 126 F.3d at 377. As explained in detail below, the "implied requirement of ascertainability" plus all of the requirements of Rule 23(a) and (b)(3) are satisfied here.

---

[3] "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### A.     The Class Is Ascertainable

"[A] class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries." *Petrobras*, 862 F.3d at 264.  These requirements are designed to ensure that "it is administratively feasible for the court to determine whether a particular individual is a member" and that "it will not be necessary to hold a mini-hearing on the merits of each case." *Id.* at 266-67, *quoting Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).[4]  Nonetheless, the actual administrative process for identifying class members is not part of the ascertainability inquiry, but is, rather addressed, where applicable, through the requirements of predominance (ensuring that any individual inquiry needed to ascertain class membership does not predominate over the individual questions) and manageability. *Petrobras*, 862 F.3d at 267-268.  Moreover, "'identifiable' does not mean 'identified'; ascertainability does not require a complete list of class members at the certification stage." *Id.* at 266 n.16.  Rather, the "modest threshold requirement" of objective criteria and definite boundaries "will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *Id.* at 269.

The Settlement Class meets the requirements of objective criteria and definite boundaries as illustrated by the claims review process being implemented here.  First, the criteria for class membership are (i) that the Settlement Class Member was subject to Sexual Abuse on the island of Hispaniola by Douglas Perlitz, Father Carrier, or any other person affiliated with the school, programs, facilities, or orphanage commonly known as "Project Pierre Toussaint" or "PPT" during the Class Period and (ii) that Class Member "claim[s] that such Sexual Abuse was caused by or related to any act or omission of any

---

[4] In *Petrobas,* the Second Circuit explained that administrative feasibility and the avoidance of mini-hearings are not independent requirements for ascertainability, but rather the reasons for the twin elements of "objective criteria" and "definite boundaries," which the Court in *Petrobas* made clear are the only requirements for ascertainability.  862 F.3d at 266-67.

Defendant."  Settlement Agmt. at ¶ II.KK.  Both "Class Period" and "Sexual Abuse" are defined terms based on objective criteria.[5]  Together, these definitions provide objective criteria – actual sexual abuse, specified abusers, and a claim by the plaintiff of responsibility by the Defendants – for membership in the class.  The Settlement Class also has definite boundaries, in time (the Class Period), space (the island of Hispaniola), identification of perpetrators (Perlitz, Father Carrier, or other persons affiliated with PPT) and type of conduct involved (Sexual Abuse as defined in the Settlement Agreement).  Settlement Agmt. at ¶¶ II.N, Q, PP.

    As discussed below, procedures established by the Settlement Agreement and implemented here by the Claims Assessor in consultation with the Working Group and the Claims Administrator have ascertained whether particular claimants are Settlement Class Members. *See* Claims Assessor's Interim Report at p. 4.  As the Second Circuit made clear in *Petrobas,* however, the need for such procedures does not render a class unascertainable, so long as the criteria are objective and the boundaries are definite. 862 F.3d at 266-269. Even though such procedures require individualized inquiry to identify claimants, the common questions nonetheless predominate over the individual ones, and the procedures for ascertaining the class members during the settlement process are manageable.  As discussed below, both of these requirements are met.

    **B.    The Class Is So Numerous that Joinder Is Impracticable**

    Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).  Impracticability does not mean impossibility of joinder, but refers to the difficulty of joinder. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Determination of practicability depends on all the circumstances

---

[5] The class period is "the period from January 1, 1996 through July 1, 2009."  Settlement Agmt. at ¶ II.N.  Sexual abuse is defined in the Settlement to mean "all forms of sexual-related contact, molestation, touching, fondling, behavior, activity, interaction, exploitation, coercion, threats, and/or grooming; included in this definition are physical assault and/or battery in connection with such abuse."  Settlement Agmt. at ¶ II.PP.

surrounding a case, not on mere numbers. The Second Circuit has held that a prospective class of forty of more raises a presumption of numerosity. *See Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the Settlement Class is known to include at least 133 persons and based on the claims assessment process to date appears to contain even more. This Court has already experienced the difficulty of adjudicating the individual claims of the more limited number of plaintiffs who filed their own lawsuits, and created a bellwether process to manage these consolidated cases.  To add to those cases the claims of *all* of the Settlement Class Members would be an impractical burden on the Court.  In addition, because the sexual abuse in this case took place on the island of Hispaniola, the difficulties of identifying all of Perlitz's victims and joining their claims with these consolidated cases without a class notice procedure makes individual joinder impracticable separate and apart from the sheer numerosity of the claims.

### C.    The Claims of the Class Members Present Common Questions

Rule 23(a)(2) requires that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). As the Supreme Court recently explained, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, the *Wal-Mart* standard is easily met because the claims of all the Settlement Class Members turn on, *inter alia,* common questions including: (a) whether Defendants owed a duty to the minor children at PPT; (b) whether Defendants were negligent in failing to protect the minor children at PPT from Perlitz's conduct; (c) whether Defendants were negligent in hiring Perlitz; (d) whether Defendants were negligent in supervising Perlitz; (e) whether the Defendants who supervised Father Carrier were negligent in supervising Father Carrier; (f) whether the Defendants were in a fiduciary relationship with the minor children at PPT; (g) whether Connecticut law applies to the claims against Father Carrier; (h) whether any Defendant is entitled to volunteer

immunity; and (i) whether it was foreseeable that, in the absence of safeguards, impoverished minor children in Haiti would be sexually abused. Not only are these questions common to the claims of all class members, the answers are common as well, *see Wal-Mart,* 564 U.S. at 350. That is so because these issues pertain to the relationship among Perlitz, Father Carrier, and the other Defendants, rather than to the relationship with any particular Settlement Class Member of the class, and thus are the same for all of Perlitz's victims.

### D.    The Representative Plaintiffs' Claims Are Typical

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. *See* Fed. R. Civ. P. 23(a)(3). The commonality and typicality requirements of Rule 23(a) tend to merge, as "both serve as guideposts for determining whether… the named plaintiff's claim and the class claims are so-interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. v. Falcon*, 457 U.S. 147, 157 (1982). Typicality is met "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936. Here, again, the claims of the Representative Plaintiffs are typical of the claims of the Settlement Class Members. Like the rest of the Settlement Class, the Representative Plaintiffs were abused at PPT when they were minors. Notably, their individual complaints filed with this Court raise the same factual and legal allegations as the other victims with complaints on file.

### E.    The Representative Plaintiffs Will Fairly and Adequately Represent the Class

For the same reason that the claims of Mr. Lecenant and Mr. Deriza are typical of the claims of the absent Settlement Class Members, Plaintiffs submit that they are adequate representatives. Generally, the adequacy requirement asks whether the proposed representatives' "interests are antagonistic to the interest of other members of

the class." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).[6] Both Mr. Lecenant and Mr. Deriza have the same interests and suffered the same injuries as the Settlement Class Members.  Moreover, they have no conflicts with the class they seek to represent.

### F.    The Requirements of Rule 23(b)(3) Are Also Satisfied

The Representative Plaintiffs seek final certification under Rule 23(b)(3), which requires the Court to determine "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). Here, both inquiries are satisfied.

#### 1.    Common Questions Predominate Over Individual Ones

"The 'predominance' requirement of Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010), *citing Amchem*, 521 U.S. at 623.  The predominance requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Myers*, 624 F.3d at 547. "Rule 23(b)(3) does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class wide proof. What the rule does require is that common questions predominate over any questions affecting only individual [class] members." *Petrobras*, 862 F.3d at 268.

In this case, the common questions identified above predominate over the individual inquiries. As discussed above, the most significant issues in these cases pertain

---

[6] Adequacy also requires the Court to confirm the adequacy of class counsel. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).  The Court already found Class Counsel to be "competent and capable of exercising their responsibilities as Class Counsel…" in its Preliminary Approval Order.  Doc. 1068 at ¶5.

to the relationships between the Defendants, on the one hand, and Perlitz, on the other, and the degree to which Defendants may be held liable for their conduct.  Indeed, Plaintiffs' claims turn largely on the extent to which the Defendants properly supervised Perlitz and Father Carrier, and whether the institutional Defendants may be held liable for Perlitz's abuse of the minors at PPT. As set forth in detail in Section I(F)(1) of Plaintiffs' Motion for Preliminary Approval (Doc. No. 1063-1), such issues overwhelm the purely individualized issues pertaining to the details of the abuse suffered by each Settlement Class Member.

The individualized inquiries necessary, during the settlement process, to determine whether specific claimants are members of the Settlement Class were easily handled in the claims review process. *See generally* Claims Assessor's Interim Report. But the particular individualized issues these procedures addressed were significantly less complicated than the common questions described above that have occupied the time and attention of the parties and this Court.  Determining Defendants' liability for Perlitz's crimes has been – and would continue to be – an arduous process involving voluminous, disputed evidence about the Defendants and their relationship to Perlitz, to PPT, and to each other.  By contrast, determination of whether a particular individual was among the minor boys abused during the approximately 11-year period surrounding PPT's operation can be made through the streamlined procedures set forth in the Settlement Agreement, ¶ II.FF, which have been and continue to be successfully implemented by the Claims Assessor.  *See generally* Claims Assessor's Interim Report.

As the Settlement Agreement provides, class members who have not already been vetted by Class Counsel submitted a court-approved Claim Form, which were reviewed by the Claims Assessor, who determined whether the claimant has sufficiently established his membership in the Settlement Class. Settlement Agmt. at ¶ III.D.1, 2.  The Claim Form required claimants to provide details of the abuse they suffered, to submit any supporting documents they have establishing attendance at PPT or some other

14

relationship to PPT staff members, and to submit other documentary or photographic evidence to support the claim.  Settlement Agmt., Exhibit C.  *See also* Neylon Dec., Exhibit C, for a true and accurate copy of the claim form in both English and Haitian Kreyol. Thus, claimants need only establish a credible claim of Sexual Abuse by a person affiliated with PPT to establish their membership in the Settlement Class. These procedures demonstrate that resolution of any remaining individualized issues in no way predominates over the common questions that are at the heart of this litigation.

2.    *A Class Action Is the Superior Means of Adjudicating This Dispute*

Plaintiffs refer the Court to their Motion for Preliminary Approval, which set forth in detail the reasons why a class action is the superior means of adjudicating this dispute. (*See* Doc. No. 1063-1 at Section I(F)(2)).  Indeed, now that the court-approved notice plan has been implemented and the Claims Assessor's claims review process been well underway, Plaintiffs maintain that the class action is easily managed in the context of settlement.  As described above, the procedures for identifying class members not previously identified was streamlined and easily managed given the expertise of the Claims Administrator and the Claims Facilitator and given the involvement of the Claims Assessor—all of whom have worked separately and collectively through the Working Group.

Because the "implied requirement of ascertainability" and the requirements of both Rule 23(a) and (b)(3) have been established, the Court should certify the Settlement Class.

## II.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE

Pursuant to Rule 23(e)(2), the Court may approve a settlement "only on finding that it is fair, reasonable, and adequate" after considering four factors: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the

15

proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). This Court, in interpreting this requirement, explained that Rule 23(e) requires that the settlement be both procedurally and substantively "fair, reasonable and adequate." *Kiefer v. Moran Foods, LLC,* Case No. 12-CV-756(WGY), 2014 WL 3882504 at *4 (D. Conn. July 31, 2014). "Courts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits." *Id.* citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores,* 396 F.3d at 116.

>    **A.    The Settlement Is Procedurally Fair in that it is the Result of Well Grounded, Good Faith, Arm's-Length Negotiations by Experienced Counsel.**

District courts in the Second Circuit evaluate procedural fairness by examining the circumstances from which a settlement was reached.  *See, e.g. Kiefer v. Moran Foods, LLC,* Case No. 12-cv-756(WGY), 2014 WL 3882504, at *4 (finding procedural fairness where agreement "reached through vigorous, arm's-length negotiations" after experienced counsel evaluated merits of claims and participated in two-day mediation between the parties); *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 201) (finding settlement procedurally fair, reasonable and adequate where plaintiffs "conducted a thorough investigation…" and enlisted experienced mediator's services).

Here, the Settlement was reached only after completion of extensive motion practice on issues of fact and law; extensive discovery including depositions of numerous plaintiffs, and numerous other party and non-party witnesses; extensive productions of documents; and prolonged negotiations over approximately two years.    Thus, the settlement was not achieved until the settling parties had sufficient familiarity with the

issues in the case to evaluate its merits and agree on a settlement framework that was both acceptable to Defendants and reasonable, fair and adequate to the Settlement Class. Indeed, this Court is well aware of the extent to which these cases were hard-fought by experienced, capable counsel on both sides.  In addition, the parties negotiated the Settlement over a period of years, assisted by two different mediators, and spent several months even after an agreement-in-principal had been reached negotiating the details of the Settlement.  As the multitude of the parties' previous court filings document, the requirement of procedural fairness clearly has been met.

**B.     The Settlement Is Substantively Fair.**

According to the Second Circuit, the so-called *Grinnell* factors provide the analytical framework for evaluating the substantive fairness of a class action settlement. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).   The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.*

Here, the first *Grinnell* factor weighs in favor of final approval because this international case involves complex issues of law, such as whether and to what extent each Defendant is responsible for the sexual abuse committed by Douglas Perlitz. Moreover, given the multitude of victims who have come forward, this litigation will be pending for a long time even excluding likely appeals.

The second *Grinnell* factor, the reaction of the Settlement Class, also weighs in favor of final approval because the class' reaction to the Settlement was positive.  As set forth in the declaration of Matt Neylon, the Class Notice informed the Settlement Class

17

Members of their right to object to or exclude themselves from the Settlement and explained how to do so. Neylon Dec. at ¶¶27-28. No one submitted an objection, and no one opted-out of the Settlement. *Id.* This Court has previously found that the lack of objections or opt-outs was a "favorable response" demonstrating that the class approved the Settlement, which further supported final approval. *Kiefer,* 2014 WL 3882504 at *5 citing *In re Sturm, Luger, & Co., Sec. Litig.,* No. 03-Civ-1293, 2012 WL 3589610, at *5 (D. Conn. Aug. 20, 2012) ("[T]he absence of objectants may itself be taken as evidencing the fairness of a settlement.") Here, the Court should similarly find that the lack of objections and opt outs weighs in favor of final approval.

The third *Grinnell* factor, the stage of the proceedings, also weighs in favor of final approval. Again, a settlement was not reached in this case until after the completion of extensive motion practice on issues of fact and law; extensive discovery including depositions of numerous plaintiffs, and numerous other party and non-party witnesses; extensive productions of documents; briefing and argument of summary judgment motions; and prolonged negotiations over approximately two years.[7] Because extensive discovery was completed, the parties were well-situated to recommend settlement and, therefore, the Court should find that the third factor also weighs in favor of final approval.

The fourth and fifth factors, the risks of establishing liability and damages, were fully addressed in Class Counsel's Motion for Award of Attorneys' Fees and Expenses. *See* Doc. 1076 at Sections I(B)-(C). Because the parties were faced with uncertainty in whether both liability and damages could be proven against the Defendants who appeared in this case, the Court should find that both the fourth and fifth *Grinnell* factors weigh in favor of final approval.

---

[7] Class Counsel's Motion for Attorneys' Fees and Expenses sets forth in great detail the amount of work performed by Class Counsel at the various stages of proceedings. *See* Doc. No. 1076.

The sixth *Grinnell* factor, the risk of obtaining class certification, is neutral in this case as Plaintiffs did not pursue the case as a class action until the Settlement was negotiated and finalized.   Similarly, the seventh factor, the Defendants' ability to withstand a greater judgment, is neutral and does not preclude granting final approval.

Finally, the eighth and ninth *Grinnell* factors, the range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation, also weigh in favor of final approval.  The amount of damages to be paid to the Settlement Class, a gross settlement of $60 million for a class containing fewer than 200 individuals, is comparable to, or exceeds, recoveries in other sex abuse cases, including the $10,000,000 settlement for 86 plaintiffs and the $85,000,000 settlement for 551 victims described in the Garabedian Declaration.  Garabedian Counsel Dec., Doc. No. 1063-12 at ¶ 4.

While the final number of Qualifying Settlement Class Members has not been determined as the Claims Assessor's review and final determination of claims is ongoing, this Settlement will provide significant, six-figure recovery in equal settlement payments for Settlement Class Members, payable following final approval of the Settlement. Settlement Agmt. at ¶ III.A.1. Moreover, the Settlement provides that Qualifying Settlement Class Members may elect to receive their awards in the form of a structured settlement, to ensure that they will continue to have funds available to them over a period of many years.  Settlement Agmt. at ¶ III.B.4. The parties recognize that this process may be prolonged and that it would be unfair to the impoverished class members in Haiti to make them wait until all claims have been determined before any funds are disbursed. Accordingly, the Settlement Agreement provides that, if and when the Settlement receives final approval, and that approval becomes final so that the Settlement Agreement becomes effective, Settlement Class Members whose claims have already been approved will receive a payment in an amount that the Representative Plaintiffs

believe will be significant to these Class Members, pending final computation of the awards to all class members. Settlement Agmt. at ¶ III.F.18.

In conclusion, the Court should grant final approval of the Settlement because the Settlement meets the express requirements of Rule 23(e).  Moreover, application of the *Grinnell* factors establishes that the Settlement is substantively fair, reasonable and adequate.  The fact that these requirements were met coupled with the work performed by the Claims Assessor and Claims Facilitator in Haiti, set forth in detail below, ensured that the settlement fairly and reasonably protected the interests of the Settlement Class.

## III.   THE NOTICE TO THE CLASS WAS THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES

Rule 23(c)(2)(B) provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

Fed. R. Civ. P. 23(c)(2)(B). "It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Communications Corp. Sec. & Derivative Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)). Under the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), reaching 70% of class members with notice is sufficient to meet the reasonableness requirement. *Id.* at 3.

The content of the notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.*, 396 F.3d at 114. Under Rule 23(c)(2)(B), the notice must include:  (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class members may enter an appearance through an attorney; (v) that the court will exclude from the class any

20

member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment. *Id.* In addition, with respect to any proposed settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.*

Whether judged under Rule 23(c)(2)(B) or under Rule 23(e), the court-approved notice plan, which was fully implemented, was the best notice practicable under the circumstances. As described in the Declaration of Andrea Bierstein dated January 25, 2019 ("Bierstein Dec.") (Doc. No. 1063-9) and in the Declaration of Carla Peak in Support of Settlement Notice Plan ("Peak Dec.")(Doc. 1063-16), the notice plan was arrived at by the parties in consultation with KCC LLC, an experienced class administration firm with expertise in providing notice to class members. *See* Bierstein Dec. at ¶ 4; Peak Dec. at ¶ 9. The plan recognizes that, as detailed in the Declaration of G. Michael Stewart ("Stewart Decl.") (Doc. No. 1063-15) and the Declaration of Attorney Mitchell Garabedian in Support of Motion for Preliminary Approval of Class Settlement ("Garabedian Preliminary Approval Dec."), SHC and LOMG made extensive efforts over a period of years to identify and interview possible victims of abuse by Perlitz or other persons affiliated with PPT, making it likely that they have identified either all or virtually all potential Settlement Class Members. *See* Stewart Decl. at ¶¶ 2-9; Garabedian Preliminary Approval Dec. ¶¶ 3-8; Garabedian Counsel Dec. ¶¶ 8, 14; *see also* Peak Dec. at ¶¶ 9-16.

Although the parties believe that it is likely by far the majority of the potential Settlement Class Members were given individual notice, they agreed that additional notice to reach unknown Settlement Class Members was also appropriate. In light of the difficulties of locating such unknown Settlement Class Members in Haiti and of delivering materials to them, the Settlement Agreement provided for notice to the Settlement Class in the form of radio announcements directing potential class members to a more complete class notice posted on a dedicated website on the Internet. Settlement Agmt. at ¶ III.E.3; III.E.4(c). In addition, the Settlement Agreement called for at least one

thousand (1,000) posters to be distributed and posted publicly throughout Cap Haitien, Haiti and published in the newspaper(s) in the island of Hispaniola as determined appropriate by the Claims Administrator. *Id; ¶* III.E.4(e). The broadcast notice, the poster notice, and newspaper notice were provided in Haitian Creole.  Peak Dec. on Notice Implementation at ¶ 7.  In addition, the Claims Administrator established an international, toll-free telephone number that provided information in Haitian Creole to Settlement Class Members, including details related to membership, claim recovery and exclusion. *Id.*  at ¶ 9. The toll-free number was included in the notice posted on the website, and announced as part of the radio-broadcast notice. *Id.* at ¶9.  *See also* Neylon Dec. at ¶12 (attaching Class Notice as Exhibit C, which was posted on the website and identified the toll-free number).

The notice program recognized the importance of radio communications in Haiti,[8] and the poster notice was specifically designed to reach poor Haitians who may not see a newspaper or listen to the radio.  The notice program also recognized the role that word-of-mouth plays in Haiti, and the likelihood that once notice was broadcast, those who heard the radio announcement would inform others who may not have.  Finally, the notice program recognized that the events at PPT, and the lawsuits arising from them, have been well-known in Haiti for approximately a decade, that word-of-mouth has already travelled over the years and that many individuals in Cap Haitien, especially those with former ties to PPT, have been kept apprised of developments through the efforts of SHC and LOMG and their agents in Haiti.  *See* Stewart Decl. at ¶¶ 7, 10-12.  The presence of the Claims Facilitator, which operated an office in Cap Haitien that met with 73 individuals about the claims process, further guaranteed that those who learned of the

---

[8] The Court may recall that reports of Perlitz's abuse of children at PPT were aired on the radio in Cap Haitian, and that reports played a part in the various investigations of Perlitz that led to his departure from Haiti. *See, e.g.*, Doc. 906 at 34-35.

Settlement had easy access to the information they needed to complete and submit a claim form.

The results of the notice program confirm its effectiveness:  206 claims were received all together, including many claims from persons who did not receive individual notice, but who heard about the settlement and the claims process through the other forms of notice.  The fact that 73 claims have been received in addition to the claims of the 133 Pre-Vetted Class Members shows that the various forms of notice were widely received.

Because the Court-approved Notice Plan was the best notice practicable under the circumstance and "each element of the Court-approved Notice Plan was implemented" (Peak Dec. on Notice Implementation at ¶4), the Court should so find.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion for Certification of the Settlement Class and Final Approval of the Class Settlement.

Dated: May 23, 2019

Mitchell Garabedian (phv04676)

William H. Gordon (phv04677)
wgordon@garabedianlaw.com
LAW OFFICES OF MITCHELL GARABEDIAN
100 State Street, 6th Floor
Boston, MA 02109
Phone:  (617) 523-6250

/s/ Andrea Bierstein
Paul J. Hanly, Jr. (phv04680)
phanly@simmonsfirm.com
Jayne Conroy (phv04679)
jconroy@simmonsfirm.com
Andrea Bierstein (phv04678)
abierstein@simmonsfirm.com
SIMMONS HANLY CONROY

23

112 Madison Ave., 7th floor
New York, New York 10016
Phone:  (212) 784-6400

Attorneys for Plaintiffs and the Putative Class

Steven J. Errante (ct04292)
SErrante@ltke.com
Marisa A. Bellair (ct23802)
MBellair@ltke.com
LYNCH, TRAUB, KEEFE, & ERRANTE, P.C.
P.O. Box 1612
52 Trumbull Street
New Haven, CT 06510
Phone:  (203) 787-0275
Fax:  (203) 782-0278

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on May 23, 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by first-class mail to all parties who are unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

I further certify that on May 23, 2019, the foregoing document was sent by first-class mail, postage prepaid, to:

(1) Counsel for Defendant Douglas Perlitz at the below address:
David T. Grudberg, Esq.
Carmody & Torrance, LLP
195 Church St.
PO Box 1950
New Haven, Conn. 06509-1950

(2) Defendant Haiti Fund, Inc. at the below address:
Haiti Fund, Inc.
c/o Mr. Michael McCooey
Chairman
475 Polly Park Road
Rye, NY 10580

/s/    Andrea Bierstein
Andrea Bierstein